UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | |
| VS | : | CR 06-02-T |
| | : | |
| ROBERT A. URCIUOLI, | : | |
| FRANCES P. DRISCOLL, | : | |
| PETER J. SANGERMANO, JR., and | : | |
| ROGER WILLIAMS MEDICAL CENTER | : | |

**DEFENDANT FRANCES P. DRISCOLL'S MOTION FOR SEVERANCE**

Now comes the Defendant, Frances P. Driscoll, and hereby moves this Honorable Court, pursuant to Rule 14 of the Federal Rules of Criminal Procedure, for severance. The trial of Defendant Frances P. Driscoll with Co-Defendant Robert A. Urciuoli will result in clear prejudice to Defendant Driscoll.

In support of this Motion, Defendant relies upon the attached Memorandum of Law.

Respectfully submitted
FRANCES P. DRISCOLL
By her Attorney,

KEVIN J. BRISTOW, ESQ. #3984
505 Turks Head Building
Providence, RI 02903
(401) 521-2800; fax (401) 521-2812

**Certification of Service**

I hereby certify that on the 23rd day of May, 2006, I mailed a copy of the within Motion to Assistant United States Attorney Luis Matos, United States Attorneys Office, Fleet Center, 50 Kennedy Plaza, Providence, RI 02903, Michael J. Connolly, Esq., Hinckley, Allen & Snyder LLP, 1500 Fleet Center, Providence, Rhode Island 02903, and James P. Redding, Esq., Greenberg Traurig, LLP, One International Place, Boston, Massachusetts 02110.

______________________________

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | CR 06-02-02-T |
| | : | |
| ROBERT A. URCIUOLI, | : | |
| FRANCES P. DRISCOLL, | : | |
| PETER J. SANGERMANO, JR., and | : | |
| ROGER WILLIAMS MEDICAL CENTER | : | |

**DEFENDANT FRANCES P. DRISCOLL'S**
**MEMORANDUM IN SUPPORT OF MOTION FOR SEVERANCE**

## I. INTRODUCTION

Defendant Frances P. Driscoll seeks a severance from codefendant Robert A. Urciuoli ("Urciuoli"). Mrs. Driscoll avers that a severance is required because: 1) essential exculpatory evidence will not be available to her defense if she is tried with codefendant Urciuoli; 2) prior sworn testimony of codefendant Urciuoli, inadmissible against, but incriminatory of Mrs. Driscoll, may be proffered by the Government at the trial of the of the unsevered defendants; 3) there is a danger of guilt by association resulting from Mrs. Driscoll being charged with 2 counts in the indictment, while her codefendants are charged with all 38 counts; and (4) antagonistic defenses exist between Mrs. Driscoll and codefendant Urciuoli.

## II. RELEVANT FACTS

Defendant Frances P. Driscoll is a former Senior Vice-President of Roger Williams Medical Center ("RWMC"). She held that position on February 1, 1998, the

date that former state senator John Celona began to perform work pursuant to a consulting agreement, until her resignation from RWMC on May 5, 2000. Celona continued to work pursuant to the consulting agreement until December 31, 2004.

Celona was hired after consultation with the medical center's legal counsel. During that consultation, a decision was made to seek an opinion from the Rhode Island Ethics Commission prior to hiring Celona. Mrs. Driscoll was involved in the hiring process and she urged that legal counsel be consulted and an ethics opinion sought prior to Celona commencing his employment.

In May of 1998, the Executive Committee of the Board of Trustees of RWMC hired an independent attorney to conduct a review of certain allegations made against RWMC's president and CEO, codefendant Robert A. Urciuoli. To investigate the validity of these allegations, RWMC hired an expert criminal attorney named F. Dennis Saylor IV. Attorney Saylor was recommended to the RWMC Board based upon his background as a former Assistant U.S. Attorney in the District of Massachusetts and his service as the Chief of Staff to the Chief of the Criminal Division for the U.S. Department of Justice.

Among the allegations Attorney Saylor investigated was a specific assertion that Celona was hired for a "no show" job and was, in reality, being paid to operate as an undisclosed lobbyist for RWMC in the Rhode Island General Assembly. This allegation was brought forth in a May 7, 1998 memo authored by Dr. Philip O'Dowd, M.D., then the president of Roger Williams Hospital's Medical Society. A copy of the second page of Dr. O'Dowd's memorandum is attached as Exhibit "A" (with emphasis added).

During his investigation, Attorney Saylor received and reviewed this memorandum and interviewed Dr. O'Dowd and others regarding its contents.

In connection with the allegations regarding Celona's hiring, Attorney Saylor requested and received documents relating to Celona's work. Many of these documents were faxed communications from Celona to Mrs. Driscoll. Specifically, Attorney Saylor reviewed a February 17, 1998 fax from Celona in which he advises Mrs. Driscoll that he will "work to defeat" a particular piece of legislation "before it moves anywhere". Attached as Exhibit "B". The communication and alleged action by Celona constitutes the charged "Overt Acts" contained in Paragraph 33 and Paragraph 34 of the Indictment.

Attorney Saylor also reviewed memoranda from Celona to Mrs. Driscoll relating to the issue of rescue runs to RWMC from municipal public safety agencies. Attached as Exhibit "C" and Exhibit "D". The actions cited by Celona in the memoranda constitute the charged "Overt Acts" contained in Paragraph 35, Paragraph 37, and Paragraph 38 of the Indictment.

At the conclusion of his investigation, Attorney Saylor drafted and delivered an 87 page report to the Executive Committee of RWMC's Board of Trustees.

As to the allegations regarding Celona's hiring, Attorney Saylor concluded: "Under the circumstances, we find no basis for concluding that the contract was illegal or unethical".

Mrs. Driscoll read this report immediately after it was released on July 2, 1998,

and she relied upon Attorney Saylor's conclusions in all of her future dealings and interactions with Celona.

In 2004, codefendant Urciuoli testified before a state grand jury regarding the hiring of and his interaction with John Celona. Urciuoli states under oath that: 1) he was not involved in the details of the hiring of John Celona and that he left that responsibility to Mrs. Driscoll and RWMC's legal counsel; 2) Mrs. Driscoll and legal counsel recommended that John Celona work for the Village at Elmhurst rather than for RWMC; 3) once hired, John Celona met much more often with Mrs. Driscoll than with codefendant Urciuoli; 4) Mrs. Driscoll "was comfortable with what he was doing"; and (5) it was Mrs. Driscoll who prepared John Celona's consulting agreement with legal counsel and codefendant Sangermano.

On January 5, 2006, Frances P. Driscoll was indicted with codefendants Urciuoli and Sangermano. Mrs. Driscoll was charged with one count of conspiracy and one count of mail fraud. She was not charged with the remaining 36 counts of the indictment.

## III. LEGAL STANDARD

Rule 14 of the Federal Rules of Criminal Procedure gives the trial court the authority to sever trials to protect specific trial rights of defendants and to ensure that juries can make reliable judgments as to guilt or innocence. Zafiro v. U.S., 506 U.S. 534 (1993). "[W]hether to grant or deny a severance is a matter committed to the trial court's sound discretion." United States v. Boylan, 898 F.2d 230, 246 (1st Cir. 1990). While there is a presumption that "those who are indicted together should be tried together," United States v. Baltas, 236 F.3d 27, 33 (1st Cir. 2001) (internal quotation omitted), and

"severance is especially disfavored in conspiracy cases," United States v. Pẽna-Lora, 225 F.3d 17, 33 (1st Cir. 2000), this is merely where the analysis begins, and not where it ends. See Zafiro v. United States , 506 U.S. 534, 545 (1993) ("And in all cases, the ***Court should be mindful of the serious risks of prejudice and overreaching that are characteristic of joint trials, particularly when a conspiracy count is included*** in the indictment.") (Stevens, J., concurring) (emphasis added).

In a criminal trial, where powerful liberty interests are at stake and the need for protective trial rights and safeguards at its apex, individualized fairness must not be sacrificed at the alter of efficiency. As one court cautions in connection with the efficiency gains of joint trials: "At the same time, Rule 14 directs the court to ask, in effect - at what price judicial economy? - particularly with respect to individual defendants. There is no question that joint trials, involving defendants with different degrees of culpability, can raise a substantial risk of prejudice, that evidence of a codefendant's wrongdoing might erroneously lead the jury to convict the defendant, that exculpatory evidence that would be available to a defendant tried alone may well be unavailable in a joint trial." United States v. Green, 324 F.Supp.2d 311, 319 (D. Mass. 2004) (footnote omitted). Accordingly, Rule 14(a) provides that:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial ***appears to prejudice*** a defendant or the government, the Court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. Pro. 14(a) (emphasis added).

In addition to its wide discretion under Rule 14, the Court enjoys independent authority to grant severance under its case management authority, even absent trial prejudice. "The power to order separate trials rests within the broad discretion of the District Court as an aspect of its inherent right and duty to manage its own calendar." United States v. Leichter, 160 F.3d 33, 35-36 (1st Cir. 1998) (internal quotations omitted); see also, United States v. DeCologero, 364 F.3d 12, 25 (1st Cir. 2004).

On appeal, rulings on severance are subject to review "for any manifest abuse of discretion which deprived appellant of a fair trial or resulted in a miscarriage of justice." United States v. Baltas, 236 F.3d 27, 33 (1st Cir. 2001).

## IV. ARGUMENT

### A. Frances Driscoll's Trial Should Be Severed From That of Urciuoli To Prevent Unfair Prejudice And To Enable A Prospective Jury To Render A Reliable Judgment As To Innocence or Guilt.

#### 1. Specific Exculpatory Evidence Directly Relating to the Issue of Intent Is Only Available to Defendant Frances P. Driscoll If Her Trial is Severed From That of Codefendant Urciuoli.

In early July of 1998, Mrs. Driscoll read a detailed investigative report written by attorney F. Dennis Saylor ( "the Saylor Report"). This report was written approximately five months after John Celona began his employment relating to RWMC. The Saylor Report advised Mrs. Driscoll and others that Attorney Saylor had investigated the allegations regarding John Celona's hiring, had reviewed correspondence and communications between Celona and Mrs. Driscoll regarding the work Celona was performing, and determined that, under the circumstances, there was no reason to conclude that Celona's contract was illegal or unethical.

At the time that Mrs. Driscoll read the Saylor Report, she was already acting with the knowledge that the hiring of Celona had been reviewed by and effectuated through RWMC's legal counsel and had been vetted through the R.I. Ethics Commission. The unequivocal language used by attorney Saylor and read by Mrs. Driscoll is direct evidence that she lacked the intent to perpetrate or involve herself in a fraudulent scheme. Moreover, it is direct evidence that she had no reason to believe that she was doing anything wrong or illegal. Frances Driscoll is not an attorney and has no legal training. The Report advised her that attorney Saylor had reviewed John Celona's activities and the correspondence which existed between her and Celona. The existence of the Report and her reading of the Report is highly exculpatory evidence which she must have the ability to utilize to its fullest for her to receive a fair trial.

It is of great importance to this Motion to Sever that the Report, read in its entirety, is an exhaustive document

Anyone reading this report in its entirety would realize that it was not a "whitewashing" of allegations against a chief executive by an investigator hired by a compliant board of trustees. The hard-hitting and critical nature of the Saylor Report makes the conclusions reached regarding the Celona contract much more credible.

There are other aspects of the Report which are extremely significant as to the effect the conclusions in the Celona contract section had on Mrs. Driscoll's state of mind. Specifically, when reviewing the allegations of favoritism by codefendant Urciuoli in awarding RWMC's vendor contracts, Attorney Saylor concluded that there was no evidence of direct impropriety. However, he added that the vendor contract situation

deserved future attention from RWMC's management. (Saylor Report, pages 82-83). The failure of Attorney Saylor to make any similar notation in connection with the Celona contract greatly enhanced the significance and effect of his unequivocal language regarding the legality and ethical appropriateness of that relationship. The jury at Mrs. Driscoll's trial must be allowed to fully and objectively assess the effect that reading this entire report had on Mrs. Driscoll's state of mind.

Despite the critical importance of the Saylor Report to Mrs. Driscoll's defense against the charges in the indictment, Rule 403 of the Federal Rules of Evidence and general principles of relevance and fundamental fairness would not allow the entire report to be admitted in a trial involving codefendant Urciuoli. The events which are the subject of the highly critical determinations and fact finding regarding Urciuoli occurred at a much earlier time and are not in any way related to the charges in the indictment. As to codefendant Urciuoli, the report is highly prejudicial and not relevant.

Courts have granted severance where specific exculpatory evidence will not be available to a defendant in a joint trial. Most of these cases involve a codefendant who has indicated by affidavit that they will not testify at their own trial but will testify as to exculpatory matters at the trial of the codefendant seeking severance. *See e.g.*, Tifford v. Wainwright, 588 F.2d 954 (5th Cir. 1979). The case involving Mrs. Driscoll is much more compelling than those involving a codefendant's potential testimony. Here, the exculpatory evidence is fully known. It is tangible and is not subject to the vagaries of changing minds or evolving positions. This Court can examine the Saylor Report and fully understand the exculpatory impact of the language regarding the Celona hiring. The

introduction of the entire report is essential to the jury's assessment of Mrs. Driscoll's state of mind.

In essence, Frances Driscoll cannot receive a fair trial without the ability to introduce the Saylor Report in its entirety and Robert Urciuoli cannot receive a fair trial with the introduction of this highly inflammatory document. In order for each of them to see the face of justice, they must be tried separately.

### 2. The Introduction of Codefendant Urciuoli's Facially Incriminating Testimony Before a State Grand Jury in a Joint Trial Would Deprive Frances Driscoll of Her Right of Confrontation and Cause Undue Prejudice under *Bruton*.

The right of the accused to confront witnesses against him is a bedrock trial right, expressly protected in the Confrontation Clause of the Sixth Amendment. Crawford v. United States , 541 U.S. 36, 42 (2004). "It is well-established that the out-of-court statements of a non-testifying defendant, even if admissible against the declarant, may not be used against a jointly tried codefendant unless otherwise independently admissible against that codefendant." United States v. Vega Molina, 407 F.3d 511, 522 (1st Cir. 2005). In Bruton v. United States , 391 U.S. 123 (1968), the Supreme Court held that the statements of a non-testifying, declarant codefendant, inadmissible as to but incriminatory of defendant, could not be introduced at trial with an instruction to the jury to consider the statements only as against the declarant codefendant, without unfair prejudice resulting to the defendant. Id. at 135-37. Even though juries are presumed to follow instructions, the situation presented in such instances posed too great a risk of jury confusion and prejudice to the non-declarant defendant. Id., at 135-36.

Usually, the response to a Bruton problem is to redact the statements to remove information identifying the non-declarant codefendant. See Richardson v. Marsh, 418 U.S. 200, 211 (1987); Vega Molina, 407 F.3d at 519 (defendant declarant's out-of-court statement "generally will be admitted if it is redacted to delete the codefendant's name and any reference, direct or indirect, to his or her existence") (citing Richardson).

"In the ordinary course, the court is to grant severance 'if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" United States v. Green, 324 F.Supp.2d 311, 324 (2004) (quoting Zafiro, 506 U.S. at 539).

In the instant case, the introduction at trial of the statements of Urciuoli, facially incriminating of, but inadmissible against Mrs. Driscoll, inescapably compromises Mrs. Driscoll's trial right of Confrontation as against the declarant, and operates to prevent the jury from making a reliable judgment as to her innocence or guilt. It is anticipated that Urciuoli will not testify at trial, precluding his cross-examination with respect to any of the statements incriminatory of Mrs. Driscoll. Accordingly, her trial must be severed from that of Urciuoli to prevent unfair prejudice.

a. The unfair prejudice arising from Urciuoli's testimony is not curable by redaction and limiting instructions.

The subject statements here, in view of their specificity, and the fact there are but two individual defendants other than the declarant, precludes resort to redaction of Mrs. Driscoll's name and the use of neutral phrases such as "another person" to overcome this Bruton problem. It would be impossible for the prospective jurors not to replace such

unavailing attempts at neutrality with Mrs. Driscoll's identity. As the First Circuit has explained, while in a case with "numerous events and actors" it is possible "that no direct inference plausibly can be made that a neutral phrase like 'another person' refers to a specific codefendant," before Your Honor is a "different case" that "involve[s] so few defendants that the statement leaves little doubt in the listener's mind about the identity of 'another person.'" Vega Molina, 407 F.3d at 520 (citations omitted); see also United States v. Suplimet Corp., 366 F.Supp.2d 1175, 1178 (S.D. Fla. 2005) (court tentatively determined hearsay statements, while admissible against declarants, "probably not admissible in a joint trial even in a redacted version with limiting instructions because they tend to implicate at least some of the Codefendants").

Neither are limiting instructions curative in view of the unavoidable inference as to the identity of Mrs. Driscoll. First, such limiting instructions would do nothing to overcome the Confrontation problem, for to accept the proposition that the statements remain facially incriminatory as to Mrs. Driscoll even following their redaction, is to accept that the Right to Confrontation remains implicated. Limiting instructions -- that Urciuoli's remarks incriminating Mrs. Driscoll should be considered solely against the declarant -- provides no comfort in this scenario, because the jury will ineluctably infer from the statements that the redacted individual was Mrs. Driscoll.

These circumstances invite unfair prejudice, undermine Mrs. Driscoll's fundamental trial right to Confrontation, and inject into the proceedings a palpable concern that a jury will be unable to provide a reliable judgment as to the guilt or innocence of the respective defendants. Recall the specific language of Rule 14(a) for

when severance may be appropriate -- where joinder "appears to prejudice." However specific the showing of likely prejudice, there is, and can be, no absolute certainty until it is manifest, and then it is too late. "Finally, and most importantly, without the benefit of hindsight, severance ensures that the end result will be impartial and reliable." United States v. Ayala Lopez, 319 F.Supp.2d 236, 240 (D.P.R. 2004).

### 3. Severance is Required Because of the Disparity in the Number of Charges Facing the Defendant and the Disparity in the Period of Time in Which She was Interacting With Celona.

Mrs. Driscoll left her employment at RWMC on May 5, 2000. The Government alleges that the illicit activities involving Celona continued through 2003. There is a great deal of testimonial and documentary evidence involving alleged criminal activity after Mrs. Driscoll ceased all contact with Celona upon leaving her position at RWMC. Amongst these allegations in the indictment are purported activities involving Blue Cross and United Health. These allegations are a significant part of the indictment and do not involve any action on the part of Mrs. Driscoll.

Courts have recognized the potential problems with jointly trying a defendant who is charged in only a few of many counts of an indictment. United States v. Branker, 395 F.2d 881 (2d Cir. 1968). The problem with a joint trial of these defendants is compounded when these defendants are not involved in a majority or significant parts of the Government's evidence. Id. Mrs. Driscoll confronts both of these problems and this, taken with all of the other grounds for severance, requires that she be given a trial separate from that of codefendant Urciuoli.

**4. Mrs. Driscoll and Urciuoli Will Present Antagonistic Defenses that are Irreconcilable in Their Fundamental Disagreements Over Core and Basic Facts so as to Prevent a Jury From Rendering a Reliable Judgment as to Guilt or Innocence.**

During his Rhode Island Grand Jury testimony, Urciuoli has falsely and fraudulently implicated Mrs. Driscoll in acts and events relating to the charges of the Indictment, constituting disagreements over core, basic facts, central to the presentation of each defendant's defense. For this reason, it is evident that an irreconcilable defenses issue, one where to believe Urciuoli's defense, the jury would necessarily have to disbelieve Mrs. Driscoll's defense, may well arise.

To support severance, the antagonistic defenses must be "so irreconcilable as to involve fundamental disagreement over core and basic facts." United States v. Pẽna-Lora, 225 F.3d 17, 34 (1st Cir. 2000) (citations omitted). Put another way, the antagonism between defenses must be such that a prospective jury will inappropriately infer that either or both of the proponents are guilty. United States v. Talavera , 668 F.2d 625, 630 (1st Cir. 1982); United States v. Green, 324 F.Supp.2d 311, 324 (2004) (same). Put differently, 'the antagonism . . . must be such that if the jury believes one defense, it is compelled to convict the other defendant." United States v. Woods, 210 F.3d 70, 79 (1st Cir. 2000) (internal quotation and citation omitted).

"However, we are not blind to the fact that 'the dangers inherent in joint trials become intolerable when the codefendants become gladiators [. . . . ] [and in their] antagonism, each lawyer becomes the government's champion against the codefendant [. . . .]' This danger is heightened given that no due process or prior notice requirements attach to Co-defendants, resulting essentially in the trial by ambush that the modern

discovery procedure rules and court orders to that effect were explicitly designed to prevent." United States v. Ayala Lopez, 319 F.Supp.2d 236, 238-39 (D.P.R. 2004) (quoting United States v. Romanello, 726 F.2d 173, 182 (5th Cir. 1984)).

In Green, the court found that the antagonistic defenses advanced by two defendants, that the other was the sole shooter in a murder, required severance under Rule 14 as the defenses were mutually exclusive. "There is a considerable risk that each defendant, ably throwing pot-shots at the other, would make the government's case for it. Specifically, in the din, a juror could say: 'I cannot figure out who did the shooting, given the defendants' mutual accusations, but it doesn't matter. They were involved somehow and that is enough.' That conclusion would redound to the government's benefit." Green, 324 F.Supp.2d at 325.

Here, there are fundamental differences as to core and fundamental facts: Celona's hiring was either a decision made by Urciuoli himself or, as he previously testified, a decision made by Mrs. Driscoll with RWMC's legal counsel; the decision to make Celona an employee of the Village at Elmhurst was made by Urciuoli or, as he testified, by Mrs. Driscoll and legal counsel; and, whether Mrs. Driscoll was comfortable with Celona's hiring and what he was doing pursuant to his consulting agreement as Urciuoli testified, or whether an entirely different situation existed. It is clear that Mrs. Driscoll and Urciuoli have diametrically opposed views on these central, basic facts which will inevitably compel the mounting of highly antagonistic defenses.

Even if the Court determines that the antagonistic defenses "may not fully meet the mutually exclusive standard, there will be substantial and significant differences in the

tactical approaches taken by their respective counsel. At times they will have different positions on evidentiary objections, and different approaches to the cross-examination of the government's witnesses and in the presentation of defense witnesses." United States v. McVeigh, 169 F.R.D. 362, 370 (D. Colo. 1996) (severing trials of defendants in capital case). The Court, in its broad discretion, and pursuant to its case management powers, may nevertheless order severance.

**B. Discovery is Incomplete and the Defendant Reserves the Right to Put Forth Additional Grounds for Severance.**

It is clear to all parties in this case that discovery has not yet been completed. An example of this is the Government's need to provide all counsel with the discovery resulting from recently obtained computer hard drives of codefendant Urciuoli. Accordingly, Mrs. Driscoll expressly reserves her right to supplement and renew this Motion to Sever.

## V. CONCLUSION

WHEREFORE, defendant Frances P. Driscoll respectfully requests that her trial be severed from that of codefendant Robert A. Urciuoli. Individually and in the aggregate, the interests of justice require that this Motion be granted.

Respectfully submitted
FRANCES P. DRISCOLL
By her Attorney,

KEVIN J. BRISTOW, ESQ. #3984
505 Turks Head Building
Providence, RI 02903
(401) 521-2800; fax (401) 521-2812

**Certification of Service**

I hereby certify that on the 23rd day of May, 2006, I mailed a copy of the within Memorandum of Law to Assistant United States Attorney Luis Matos, United States Attorneys Office, Fleet Center, 50 Kennedy Plaza, Providence, RI 02903, Michael J. Connolly, Esq., Hinckley, Allen & Snyder LLP, 1500 Fleet Center, Providence, Rhode Island 02903, and James P. Redding, Esq., Greenberg Traurig, LLP, One International Place, Boston, Massachusetts 02110.