**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **CR 06-02-3T** |
| | : | |
| **ROBERT A. URCIUOLI,** | : | |
| **FRANCES P. DRISCOLL, and** | : | |
| **PETER SANGERMANO, JR.,** | : | |

**UNITED STATES' OBJECTION TO DEFENDANT**
**DRISCOLL'S MOTION FOR SEVERANCE**

Defendant Frances Driscoll has filed a motion to sever her trial from that of her codefendants, Robert Urciuoli and Peter Sangermano. For the reasons stated in the accompanying memorandum of law being filed simultaneously herewith, the United States objects to Driscoll's motion.

Respectfully submitted,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

[signature]

LUIS M. MATOS
DULCE DONOVAN
Assistant U.S. Attorneys

Dated: May 30, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of May, 2006, I caused to be sent by first class regular mail a true copy of the within United States' Objection to Defendant Driscoll's Motion for Severance to:

Richard M. Egbert, Esq.
99 Summer Street
Suite 1800
Boston, MA 02110

Kevin J. Bristow, Esq.
501 Turks Head Building
Providence, RI 02903

John A. Pappolardo, Esq.
James P. Redding, Esq.
Greenburg Traurig LLP
One International Place
Boston, MA 02110

Michael J. Connolly
Hinckley Allen Snyder LLP
28 State Street
Boston, MA 02109

K Anderson

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **CR 06-02-3T** |
| | : | |
| **ROBERT A. URCIUOLI,** | : | |
| **FRANCES P. DRISCOLL, and** | : | |
| **PETER SANGERMANO, JR.,** | : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT DRISCOLL'S MOTION FOR SEVERANCE**

## I. Introduction

On May 23, 2006, Defendant Frances Driscoll filed a motion to sever her trial from that of her codefendants, Robert Urciuoli and Peter Sangermano.[1] Driscoll contends that severance is appropriate because if she and Urciuoli are tried together, evidence exculpatory of her contained in the so-called "Saylor" report would be inadmissible in a trial involving Urciuoli. In addition, the United States "may" proffer Urciuoli's state grand jury testimony at trial and thus a potential issue pursuant to Bruton v. United States, 391 U.S. 123 (1968), might exist. Def.'s Mem. in Supp. of Mot. for Severance (hereinafter "Supp. Mem.") at 1, 10-11. Driscoll also argues that severance is appropriate because of the disparity in the number of charges against her compared with that of her codefendants and the fact she and Urciuoli may present antagonistic defenses at trial.

[1] As the Court is aware, Defendant Driscoll originally filed her motion on April 7, 2006. The instant motion represents Driscoll's attempt to reduce the extent to which she relies on exhibits filed under seal in requesting that the Court sever her trial from Defendants Urciuoli and Sangermano. Defendant Sangermano has also filed a motion to sever his trial from that of his codefendants. All three Defendants have filed motions to dismiss the Indictment.

Driscoll's motion is premature. The admissibility of the Saylor report has yet to be decided by the Court. As a result, the potential inadmissibility of the entire report cannot serve as basis upon which to sever Driscoll's trial from that of her codefendants. In addition, whether a Bruton issue truly exists depends upon whether the United States intends at trial to introduce Urciuoli's grand jury testimony and whether he will testify at trial. Severance is an "extreme" remedy, United States v. Neal, 36 F.3d 1190, 1207 (1st Cir. 1994), reserved only for instances where a defendant can demonstrate that a joint trial would in fact "compromise a specific trial right, . . . or prevent the jury from making a reliable judgment about guilt or innocence," Zafiro v. United States, 506 U.S. 534, 539 (1993). Driscoll's speculation about what evidence will be presented at trial does not suffice to overcome the "intentionally high" "hurdle" of demonstrating that severance is appropriate. United States v. Flores-Rivera, 56 F.3d 319, 325 (1st Cir. 1995).

Moreover, the fact that Driscoll is charged in only two counts in the Indictment, while her codefendants are charged in thirty-seven, does not warrant trying her separately. Count 1 of the Indictment charges Driscoll, Urciuoli and Sangermano with conspiracy. Severance is disfavored in conspiracy cases. United States v. DiMarzo, 80 F.3d 656, 659 (1st Cir. 1996). Moreover, "disparity in the quantity of evidence and of proof of culpability are inevitable in any multidefendant trial, and by themselves do not warrant a severance." United States v. Cardascia, 951 F.2d 474, 482 (2d. Cir. 1991).

Driscoll's claim that she and Urciuoli will present antagonistic defenses at trial is also premature. Neither Driscoll nor Urciuoli have yet articulated their theories of defense. Driscoll points to Urciuoli's state grand jury testimony to illustrate that their potential, as-yet-unstated, defenses are irreconcilable. Quite simply, Urciuoli's grand jury testimony does not lead to that

conclusion. The mere possibility that Driscoll will claim her innocence and point the finger at Urciuoli, or vice-versa, does not justify severance. See United States v. Angiulo, 897 F.2d 1169, 1195 (1st Cir. 1990). Accordingly, Driscoll's motion should be denied.

## II. Factual Background

On January 5, 2006, a federal grand jury returned an indictment charging Defendants Robert A. Urciuoli, Frances P. Driscoll, and Peter J. Sangermano with conspiracy to commit honest services mail fraud.[2] The Indictment also charges Driscoll with one count of honest services mail fraud and Defendants Urciuoli, Sangermano and Roger Williams Medical Center with thirty-six counts of honest services mail fraud.

Generally, the Indictment charges that from August of 1997 through January 8, 2004, Defendants conspired with John Celona, a former Rhode Island State Senator, to defraud the citizens of the State of Rhode Island of their intangible right to the honest services of Celona, and to have those services performed free from deceit, favoritism, bias, conflict of interest and self-enrichment. Indictment (hereinafter "Indict.") ¶ 14. The objects of the conspiracy were: (1) to pay money to Celona, pursuant to a consulting agreement, "so as to improperly influence and affect the official actions of Celona, specifically, to cause him to use his influence, power and authority as a State Senator to benefit the political and financial interests of RWMC and its affiliates; and (2) to deceive the State of Rhode and its citizens concerning Celona's relationship with RWMC in order for Celona to continue to promote the political interests of RWMC and its

---

[2] As the Court is aware, the Indictment also named Roger Williams Medical Center ("RWMC"). On April 8, 2006, the Court dismissed RWMC from the case pursuant to a Motion to Dismiss based on RWMC entering into a Deferred Prosecution Agreement with the United States.

affiliates." Id. ¶¶ 15, 16.

The Indictment sets forth the process by which Defendants caused Celona to enter into a consulting agreement with the Village to work on issues relating to senior affairs while their true purpose was to have Celona perform duties for RWMC and report to Frances Driscoll. Id. ¶¶ 21-25. Celona's consulting agreement with the Village was a way of hiding Celona's relationship with RWMC from the State of Rhode Island and its citizens, allowing Celona to promote RWMC's political interests in his official capacity without revealing the true nature of Celona's work relationship to RWMC and the attendant conflict of interest. Defendants also hid Celona's relationship with RWMC by requesting an opinion from the Rhode Island Ethics Commission based on false and misleading information concerning Celona's relationship with RWMC. Indict. ¶¶ 41-44. For approximately six years, Defendants directed Celona to use his "influence, power and authority" to take official actions which benefitted RWMC and its affiliates. Id. 14, 19.

## III. Argument

### A. Standard for Severance

Defendant Driscoll does not contend that the criminal charges against her were improperly joined with that of her codefendants under Federal Rule of Criminal Procedure 8(b).[3]

---

[3] Rule 8(b) provides:

> **Joinder of Defendants**. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Indeed, "[j]oint trials play a vital role in the criminal justice system . . . ." Richardson v. Marsh, 481 U.S. 200, 209 (1987). "They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Zafiro, 506 U.S. at 537 (internal quotations omitted). Nevertheless,

> [i]f the joinder of offenses or defendants appears in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(b). A court should grant a severance under Rule 14(b) "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. "Incidental spillover prejudice . . . does not suffice" to make out a case for severance. United States v. Yefsky, 994 F.2d 885, 896 (1st Cir. 1993). A defendant must make a "strong showing of prejudice" by articulating "specific ways" in which he would be prejudiced. Id. Moreover, "[s]everance is only one remedy - and certainly the most extreme- in the federal courts' remedial arsenal." United States v. Leichter, 160 F.3d 33, 36 n.4 (1st Cir. 1998). Often, "less drastic measures, such as limiting instructions, . . . will suffice to cure any risk of prejudice." Zafiro, 506 U.S. at 539. This Court's severance rulings are reviewed for "manifest abuse of discretion," United States v. DeLeon, 187 F.3d 60, 63 (1st Cir. 1999), reversed only upon a "strong showing of evident prejudice," United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993).

**A. Driscoll's Claims That she Will be Prejudiced Due to the Inadmissibility of the Saylor Report is Speculative and her Motion is Premature**

Driscoll claims that introduction of the entire report completed by District Court Judge Dennis Saylor is "critical" to her defense against the charges in the Indictment. Supp. Mem. at 9. She maintains, however, that the entire report would be inadmissible against her codefendant, Urciuoli. Thus, Driscoll argues, if she and Urciuoli are tried together, Driscoll will be unable to receive a fair trial because she will be deprived of evidence which is essential to the jury's assessment of her state of mind.

The admissibility of the Saylor report, either in whole, or in part, has yet to be determined by the Court. Until that time as the Court rules on its admissibility, likely in the context of the remaining pretrial motions to be filed in the ensuing weeks, Driscoll's motion to sever based on this issue is premature.

That said, it is unlikely that the Saylor report, or any portion of it, is admissible. First, the section of the report dealing with John Celona is not exculpatory of Driscoll. At the time that the Saylor report was authored, July 2, 1998, Driscoll and her codefendants had already devised and were executing the scheme to defraud. See Indictment ¶¶ 22, 23 25. Celona started working for RWMC in February of 1998, and immediately thereafter Driscoll began using his services on behalf of RWMC to "kill" legislation and increase the number of ambulance runs to the Hospital. ¶¶ 35-40. In addition, in March and April of 1998, Driscoll and her codefendants submitted the false and fraudulent letter to the Ethics Commission in order to deceive the public about Celona's relationship with RWMC and permit him to continue to work on RWMC's behalf without an apparent conflict of interest. Id. ¶¶ 41-44. The Saylor report notes that it relied upon the Ethics

Opinion decision in its review. Hence, because the Ethics Opinion was obtained fraudulently, any conclusion that was based upon review of the Ethics Commission decision could not exculpate Fran Driscoll of her criminal intent. The possibility that Driscoll read something in July which stated that Celona's contract was neither "illegal or unethical" does not exculpate Driscoll.

Moreover, the admissibility of the Celona section of the Saylor report is highly questionable because it speaks to the ultimate questions before the jury. Saylor's conclusion concerning the Celona contract was that "[u]nder the circumstances, we find no basis for concluding that the contract was illegal or unethical." The jury in this case will be faced with determining whether the Village's hiring of Celona was merely a ruse designed to hide the nature of the work Celona was performing, the fact that he was working for RWMC, and that RWMC was paying his salary. Saylor's pronouncement regarding the legality of Celona's consulting agreement removes this issue from the jury's hands.

Furthermore, the admissibility of the John Celona portion of the Saylor report which Driscoll represents she read, depends upon Driscoll taking the stand in her own defense and stating that she read the report and relied on its contents. At present, Driscoll's representation that she read and relied upon the report is unsupported by the record. At the very least, in moving to sever her trial from that of her codefendants, Driscoll should be required to support her motion with an affidavit attesting to her reliance on the report and the fact that if tried separately she would testify on her own behalf, thus possibly justifying the report's admissibility. See United States v. Font-Ramirez, 944 F.2d 42, 45-46 (1st Cir. 1991) (denial of motion to sever not abuse of discretion where codefendant's affidavit failed to state substance of testimony

he would proffer at separate trial of moving defendant and how testimony would benefit defense). Since she has failed to proffer such an affidavit, Driscoll's motion should be denied.

**B. Driscoll's Claim of a Bruton Issue is Also Premature and Speculative**

Driscoll also argues that severance from her codefendants is appropriate because of potential Bruton-based problems. Driscoll contends that Urciuoli's state grand jury testimony "may be proffered by the Government" and, thus, presents a problem under Bruton because Driscoll would be unable to cross-examine Urciuoli about his statements implicating her. Supp. Mem. at 1. Further, although she states that "it is anticipated" that Urciuoli will not testify at trial, Driscoll does not represent that she knows this to be the case, nor does she support her motion with an affidavit from Urciuoli representing this to be the case. Id. at 11.

The Bruton-based portion of Driscoll's motion is premature and speculative. The United States may not introduce Urciuoli's grand jury testimony at trial and Urciuoli may testify. Either of these events would eliminate any possible Bruton problem and one of the bases for Driscoll's motion. Accordingly, Driscoll cannot meet the high hurdle she must overcome to justify severance and her motion should be denied without prejudice to renew her motion if it becomes clear that a Bruton problem truly exists. See United States v. Webb, 827 F. Supp. 840, 842-43 (D. Mass. 1993) (denying without prejudice as premature defendant's motion to sever based on Bruton where government might not introduce codefendant statements or might be able to adequately redact them). See also United States v. York 1988 WL 34822, * 1 (S.D.N.Y. March 31, 1988) (denying severance motion as premature where codefendant might testify and thus, no Bruton problem would exist).

In addition, it is difficult to discern the basis for Driscoll's position that Urciuoli's

statements in his grand jury testimony "facially incriminate" her. Supp. Mem. at 11. Driscoll does not support her motion with excerpts from Urciuoli's state grand jury testimony, but merely summarizes Urciuoli's testimony as stating that: "(1) he was not involved in the details of hiring John Celona and that he left that responsibility to Mrs. Driscoll and RWMC's legal counsel; (2) Mrs. Driscoll and legal counsel recommended that John Celona work for the Village at Elmhurst rather than for RWMC; (3) once hired, John Celona met much more often with Mrs. Driscoll than with codefendant Urciuoli; (4) Mrs. Driscoll 'was comfortable with what he was doing'; and (5) it was Mrs. Driscoll who prepared John Celona's consulting agreement with legal counsel and codefendant Sangermano." Supp. Mem. at 4. In arguing for severance, Driscoll fails, other than in conclusory fashion, to articulate how or why Urciuoli's statements are incriminatory of her.[4] Indeed, it appears from Driscoll's motion to dismiss that at least one of her theories of defense is that she cannot be guilty of honest services fraud because she was "directed" to prepare a "job description for Celona," and that the consulting agreement which "she prepared disclosed the relationship between Celona and RWMC." Def.'s Mem. In Supp. of Mot. To Dismiss at 2. In that case, Urciuoli's grand jury testimony to which Driscoll points is not necessarily inconsistent with Driscoll's theory of the case, let alone incriminatory.

Furthermore, Driscoll concedes that the preferred method of curing a true Bruton problem is to redact the statements or testimony at issue to remove any reference to the non-testifying

[4] Whether a Bruton problem is truly presented by the testimony which Driscoll summarizes is open to question. Bruton involved a codefendant's confession which directly implicated a nontestifying codefendant. 391 U.S. at 125-26. Its application includes other "powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant." Id. at 135-36. The Urciuoli testimony cited by Driscoll does not meet this standard.

codefendant. Supp. Mem. at 14-15. Still, without providing the Court with the portions of testimony she maintains are problematic, Driscoll argues that if that were the remedy ordered by the Court in this case "[i]t would be impossible for the prospective jurors not to replace such unavailing attempts at neutrality with Mrs. Driscoll's identity." Id. at 11-12. It is impossible to assess the truth of this statement without a review of the relevant portions of testimony. It is unlikely that deleting Driscoll's name would necessarily leave jurors with the inescapable conclusion that it was Driscoll's name which was deleted nor is this the sole means of redacting the offending testimony. Accordingly, because it is speculative whether a Bruton problem truly exists, and if one does exists there are alternative means of addressing the problem, Driscoll's Motion for Severance should be denied.

### C. Severance Is Not Warranted Based on the Disparity in the Number of Counts in the Indictment

Driscoll also moves to sever her trial from her codefendants based on the fact she is named in only two counts in the Indictment whereas Urciuoli and Sangermano are named in thirty-seven and the fact that she left RWMC in May of 2000. Driscoll is not entitled to severance on either basis.

The first Count in the Indictment charges all Defendants with conspiracy. Severance is especially disfavored in conspiracy cases. United States v. DiMarzo, 80 F.3d 656, 659 (1st Cir. 1996). In addition, the mere fact that the Indictment charges Driscoll with less counts than her codefendants does not warrant severing her trial. Generally, "differences in degree of guilt" among defendants does not warrant separate trials. United States v. Aloi, 511 F.2d 585, 598 (2d Cir. 1975). In this case, the fact that Driscoll fortuitously did not participate in some of the later

acts committed in furtherance of the conspiracy because she left the Hospital's employ does not lessen her role in orchestrating the scheme to defraud and extensively using Celona's services in the early years of the conspiracy. Furthermore, "disparity in the quantity of evidence and of proof of culpability are inevitable in any multi-defendant trial, and by themselves do not warrant a severance." Cardascia, 951 F.2d at 482. Driscoll is not entitled to a separate trial simply because evidence will be presented relating to the criminal charges against her codefendants. United States v. Henry, 861 F. Supp. 1190, 1200 (S.D.N.Y. 1994). In this case, because Driscoll is charged with conspiracy, the majority of the evidence admitted against her codefendants in a separate trial would also be admissible against her if she were tried separately. Id. Any concern Driscoll has over being named in less counts in the Indictment compared with Urciuoli and Sangermano can be dealt with by instructing the jury that they should consider the evidence separately against each defendant.[5]

**D. Driscoll Cannot Demonstrate that She and Defendant Urciuoli Will Present Defenses So Antagonistic to One Another to Justify Severance**

Driscoll claims that at trial she and Defendant Urciuoli will present antagonistic defenses thus, warranting separate trials. Driscoll contends that severance is appropriate because in Urciuoli's grand jury he "falsely and fraudulently implicate[s] Mrs. Driscoll in acts and events

---

[5] Driscoll cites United States v. Branker, 395 F.2d 881 (2d Cir. 1968), in support of her position that a joint trial with her codefendants who are named in more counts than she warrants severance. Branker is distinguishable from the instant case. In Branker, the court found that four of the codefendants were prejudiced by having their cases joined with other codefendants after the trial court had dismissed the conspiracy count which had initially served as a basis for trying all the defendants together. The simple nature of the cases against the improperly joined defendants compared with that of their codefendants, the fact that two of them were charged with the repetition of one criminal act several times, and their "very little connection" with the other defendants made improper their continued joinder after the dismissal of the conspiracy count. Id. at 888.

relating to the charges of the Indictment."[6] Supp. Mem. at 14. As a result, Driscoll argues that "an irreconcilable defenses issue . . . may arise." Id.

"Antagonism of defenses requires severance only where the defenses are so inconsistent that the jury would have to believe one defendant at the expense of the other; the conflict alone establishes the guilt of a defendant. It is not enough that the defendants are hostile, casting blame on one another; the antagonism in defenses must be such that if the jury believes one defense, it is **compelled** to convict the other defendant. Angiulo, 897 F.2d at 1194-95 (internal quotations omitted) (emphasis added). Merely claiming that one was not involved in the crimes charged, does not justify severing trials. Id. at 1195. "Fingerpointing and tattling" does not entitle a defendant to a trial separate from his codefendants pursuant to Rule 14. Id.

Although Driscoll claims that she and Urciuoli "may" present antagonistic defenses, nowhere does she posit what her, or Urciuoli's, defense might be. See e.g. Supp. Mem. at 15 (stating that either "Mrs Driscoll was comfortable with Celona's hiring and what he was doing pursuant to his consulting agreement as Urciuoli testified, or . . . an entirely difference situation existed.") It is impossible to assess whether the jury would be unable to reconcile Driscoll's and Urciuoli's defenses without knowing what they are. Accordingly, her motion to sever should be denied. See United States v. Sciandra, 529 F. Supp. 320, 323 (S.D.N.Y. 1982) ("The mere possibility of a conflict . . . does not entitle a defendant to a separate trial.)

---

[6] Counsel for the United States is aware that a joint defense agreement exists between the codefendants. A joint defense agreement "protects communications between an individual and an attorney for another when the communications are part of an ongoing and joint effort to set up a common defense strategy." In re Grand Jury Subpoena, 274 F.3d 563, 572 (1st Cir. 2001) (internal quotations omitted) (emphasis added). Thus, Driscoll's argument that severance is warranted based on the existence of antagonistic defenses between herself and Urciuoli is questionable in light of this fact.

In an attempt to convince the Court that severance is warranted, Driscoll points to several "core and fundamental facts" which, she claims, demonstrate that she and Urciuoli have "diametrically opposed views" of the case. Supp. Mem. at 15. For example, Driscoll asserts: (1) either Celona's hiring was a decision made by Urciuoli himself or, a decision made by Driscoll with RWMC's legal counsel; and (2) either the decision to make Celona an employee of the Village was Urciuoli's or Driscoll's and RWMC's legal counsel. Id. Differences over these issues does not lead to the type of incompatibility warranting severance. The jury could believe Urciuoli's version as to some of these events, and Driscoll's, as to others. In sum, nothing at this stage in the proceeding illustrates a conflict in Driscoll's and Urciuoli's defenses such that the jury would be compelled to convict Driscoll. United States v. Pena-Lora, 225 F.3d 17, 33 (1st Cir. 2000) ("In order to gain a severance based on antagonistic defenses the antagonism must be such that if the jury believes one defense, it is **compelled** to convict the other defendant.") (internal quotations omitted) (emphasis added). Because Driscoll has failed to overcome the presumption in favor of joinder, her motion should be denied.

## IV. Conclusion

Based upon the foregoing, the United States respectfully requests that the Court deny Defendant Driscoll's motion for severance.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

LUIS M. MATOS
DULCE DONOVAN
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of May, 2006, I caused to be sent by first class regular mail a true copy of the within United States' Memorandum in Support of its Objection to Defendant Driscoll's Motion for Severance to:

Richard M. Egbert, Esq.
99 Summer Street
Suite 1800
Boston, MA 02110

Kevin J. Bristow, Esq.
501 Turks Head Building
Providence, RI 02903

John A. Pappolardo, Esq.
James P. Redding, Esq.
Greenburg Traurig LLP
One International Place
Boston, MA 02110

Michael J. Connolly
Hinckley Allen Snyder LLP
28 State Street
Boston, MA 02109

K Anderson