UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | CR 06-02-01-T |
| | : | |
| ROBERT A. URCIUOLI, | : | |
| FRANCES P. DRISCOLL, | : | |
| PETER J. SANGERMANO, JR., and | : | |
| ROGER WILLIAMS MEDICAL CENTER | : | |

**DEFENDANTS' MOTION TO DISMISS THE INDICTMENT DUE TO PROSECUTORIAL MISCONDUCT AND FOR OTHER RELIEF**

NOW COME Defendants Robert A. Urciuoli ("Urciuoli"), Frances P. Driscoll ("Driscoll"), and Peter J. Sangermano ("Sangermano") (collectively, the "Defendants") and respectfully move to dismiss the Indictment in this matter due to prosecutorial misconduct. In the alternative to dismissal, the Defendants request that the Court otherwise sanction the Government, continue the trial in this matter which is currently scheduled for September 6, 2006, and compel the Government to produce all investigative notes and un-redacted versions of John Celona's FBI 302 Reports. The Defendants hereby request oral argument in connection with this Motion. Counsel for the Defendants estimate that one hour will be required for same. In support of this Motion, the Defendants rely on their accompanying Memorandum of Law, submitted herewith and incorporated herein by reference.

WHEREFORE, Defendants Robert A. Urciuoli, Frances P. Driscoll, and Peter J. Sangermano respectfully request that this Court dismiss the Indictment with prejudice, or, in the alternative, otherwise sanction the Government, continue the trial, and compel discovery.

Respectfully submitted,

ROBERT A. URCIUOLI

By his Attorneys,

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020 (fax)
mconnolly@haslaw.com

Richard M. Egbert (MA BBO #151800)
*Pro Hac Vice Counsel*
Richard Egbert Law Offices
99 Summer Street
Suite 1800
Boston, Massachusetts 02110
(617) 737-8222
(617) 737-8223 (fax)
regbert@egbertlaw.com

FRANCES P. DRISCOLL

By her Attorney,

/s/ Kevin J. Bristow
Kevin J. Bristow, Bar No. 3984
1309 Turks Head Building
Providence, RI 02903
(401) 521-2849
kjbristowlaw@verizon.net

PETER J. SANGERMANO

By his Attorneys,

/s/ A. James Pappalardo___________________
James P. Redding, Esq.
A. John Pappalardo, Esq.
Greenburg Traurig LLP
One International Place
Boston, MA 02110
reddingj@gtlaw.com
pappalardoj@gtlaw.com

Dated: August 30, 2006

## CERTIFICATION

I hereby certify that on August 30, 2006, a copy of the foregoing Defendants' Motion to Dismiss the Indictment due to Prosecutorial Misconduct and For Other Relief was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | CR 06-02-01-T |
| | : | |
| ROBERT A. URCIUOLI, | : | |
| FRANCES P. DRISCOLL, | : | |
| PETER J. SANGERMANO, JR., and | : | |
| ROGER WILLIAMS MEDICAL CENTER | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE INDICTMENT DUE TO PROSECUTORIAL MISCONDUCT AND FOR OTHER RELIEF**

NOW COME Defendants Robert A. Urciuoli ("Urciuoli"), Frances P. Driscoll ("Driscoll") and Peter J. Sangermano ("Sangermano") (collectively, the "Defendants") and respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Indictment due to prosecutorial misconduct or, in the alternative, to otherwise sanction the Government, continue the trial and compel discovery. As set forth more fully below, the Indictment must be dismissed because the Government has engaged in a pattern of discovery abuses that reflects blatant and outrageous prosecutorial misconduct and undermines the integrity of the judicial process in this case. The misconduct has involved concealing exculpatory information, omitting exculpatory witness statements from formal reports and investigative notes, mischaracterizing witness' statements, delaying the production of exculpatory information and generally obstructing justice.

In the alternative to immediate dismissal, the Defendants request that the Court otherwise sanction the Government, continue the trial in this matter, which is scheduled for September 6,

2006, and compel the Government to produce all investigative notes and un-redacted versions of John Celona's FBI 302 Reports.

## RELEVANT FACTS

From the outset of this investigation, the Government has engaged in a series of discovery abuses designed to conceal exculpatory information from the Defendants, re-characterize evidence to fit its theory of the case, and generally obstruct justice -- all in violation of the Defendants' constitutional rights and the mandates of Brady v. Maryland, Giglio v. United States, and their progeny. Recent events and developments have come to light that underscore the Government's ongoing attempts to intentionally conceal exculpatory information from the Defendants. The Government's outrageous misconduct calls into question the fairness of the entire investigation and court proceedings to date and warrants the immediate dismissal of the Indictment as a sanction of the Government.

### A. The Government Has Intentionally Omitted Exculpatory Information From its Reports and Notes

The Government has intentionally concealed from the Defendants and their counsel material, exculpatory information to which the Defendants are constitutionally entitled. The Government has done this by, among other things, omitting from its formal FBI 302 reports and investigative notes exculpatory witness statements and other information. The Defendants are aware that the Government has intentionally omitted exculpatory evidence and statements given by at least two witnesses – John Celona and Representative Vincent Mesolella.

Upon information and belief, John Celona and his counsel have met with federal prosecutors and agents on at least five or six occasions and Celona has provided information to the Government pertaining to key issues in this case, including the nature of his consulting

relationship with Roger Williams Medical Center ("RWMC") and its affiliates, his interactions with the Defendants in connection with legislation, and other matters.

Through conversations with Celona's counsel[1] (with Celona's knowledge), counsel for the Defendants have learned that John Celona made statements to federal prosecutors and other federal agents that are exculpatory to the Defendants. These statements include, among other things, that:

> He thought the substance of the letter request from James McGuirk to the Ethics Commission for an Advisory Opinion was accurate at the time it was sent;
>
> In regard to setting up meetings between representatives from Blue Cross/Blue Shield and Roger Williams on reimbursement issues, he provided similar assistance to Fatima Hospital; and
>
> In response to the question: "What was Bob Urciuoli's most significant bill?", his reply was "None, really," or words to that effect.

Thereafter during the interview, he, in essence, denied that any crime had been committed. For example, he stated that:

> He and Roger Williams did not hide his connection to Roger Williams;
>
> He felt he could not vote on any bills specific to Roger Williams but he could vote if a bill was general as to all hospitals; and
>
> Although the Ethics Commission letter was factual when it was filed, things changed, but he never brought it up because it seemed to him not to be an issue since he never had a bill or vote specific to Roger Williams, and he had recused himself on any issues related to assisted living facilities.

When then asked about reimbursement, he responded that the reimbursement issue between Roger Williams Hospital and Blue Cross did not involve legislation and was resolved without legislation.

[1] Counsel for Urciuoli has subpoenaed Celona's counsel in connection with the August 30, 2006 hearing on this motion.

Taken collectively, these statements undermine the Government's theory or prosecution. An honest services fraud case requires the Government to prove that the Defendants knowingly and willfully participated in a scheme to defraud the citizens of Rhode Island of John Celona's honest services. It must prove that the Defendants knew that they were committing a crime or violating the law. The Government must prove that the Defendants intended to influence the legislator in his official action. Good faith is a complete defense. These statements undermine the essence of the Government's case because they demonstrate that neither Celona nor the Defendants intended to deceive or defraud the public concerning Celona's relationship with RWMC or believed that they were breaking the law or committing a crime.

Despite counsel's knowledge that these statements had been made, counsel did not have proof in the form of admissible evidence that these statements had been made. Rather, all counsel had was multi-tiered hearsay that it could not rely upon at trial. Therefore, on April 12, 2006, counsel for Urciuoli propounded to the Government a very detailed and specific request for information pursuant to Rule 16 and Brady v. Maryland (the "Request"), a copy of which is attached hereto as Exhibit A. Among other things, the Request sought any information indicating that John Celona made the above-described statements. See Exhibit A.[2] In response, the Government stated merely that the documents it had produced to date were produced "in accordance with the Court's pre-trial Order and Rule 16." See Exhibit B. The Government's response further stated, "At this time, we are unaware of additional information which falls within the scope of Rule 16 and the Court's pre-trial Order." Id.

[2] Urciuoli specifically requested that, in the event the Government did not produce information in response to any of his requests, it state whether it has such information in its possession, custody or control and, if so, the reason(s) for the Government's refusal to disclose it. See id. The request for statements of witnesses was not limited to formal interview reports and grand jury transcripts; it expressly sought "any form of writing reflecting such information, as well as information not reduced to writing (i.e. information verbally conveyed to the Government), for the reason that exculpatory information must be disclosed to the Government regardless of whether it has been reduced to writing at the time it is requested." See id. Thus, the Request contemplated all writings possessed by the Government, including notes of agents and Government attorneys, as well as information not reduced to writing.

The FBI 302s produced by the Government and, in particular, John Celona's 302s, failed to reflect any of the exculpatory statements described above, despite counsel's confirmation that John Celona made these statements to the Government. Further, counsel has been told by the Government that such information does not exist in any federal prosecutors' or agents' investigative notes, including the notes of FBI Agent Dennis Aiken ("Agent Aiken").

The Government has engaged in similar misconduct with respect to Representative Vincent Mesolella ("Mesolella"). Celona has stated to the FBI and also testified before the grand jury that he spoke to Mesolella about 98-H 8229, a bill relating to residential care and assisted living facilities that, if passed, would prohibit health facilities, such as the Village at Elmhurst, from holding themselves out as offering Alzheimer's care to patients unless the facilities were licensed as nursing homes or hospitals. See excerpts from Celona 302 Report dated 10/6/05 and transcript from Celona's grand jury testimony on 12/8/05, attached hereto as Exhibit C.

Mesolella was elected representative of the Rhode Island General Assembly in 1998. See Declaration of Vincent Mesolella attached hereto as Exhibit D [hereinafter "Mesolella Dec."], ¶ 2. In that capacity, he filed 98-H 8229. Id. Mesolella knows John Celona and has a friendly, professional relationship with him. Id. ¶ 3. In the fall of 2005, Mesolella was interviewed by Agent Aiken, Rhode Island State Police Detective Shari Russell, and another FBI agent believed to be Russell Griffiths. Id. ¶ 4. Mr. Griffiths was taking notes of the interview. Id. During that interview, Mesolella was shown a copy of 98-H 8229, which he told the interviewers he had filed on behalf of the nursing home industry. Id., ¶ 5. During that interview, he was asked if he had spoken to then Senator John Celona in 1998 about 98-H 8229. Id. ¶ 6. He responded that he had general discussions with Celona concerning legislation during their years of service on the Rhode Island General Assembly, but never specifically discussed 98-H 8229. Id. Mesolella was

asked if Celona ever discussed the motivations or purpose of 98-H 8229 with him, and he responded, "no." Id. ¶ 7. Mesolella was asked during the interview whether Celona ever asked him to defeat or kill 98-H 8229, and he responded, "absolutely not." Id. ¶ 8. During the interview, Mesolella was told by Agent Aiken that Celona specifically recalled discussing 98-H 8229 with him. Id. ¶ 9. Mesolella denied that any such conversation took place. Id. Mesolella filed 98-H 8229 as a representative who strongly supported the nursing home association, believing it to be a meritorious bill. Id. ¶ 10. Mesolella never spoke to Celona about this legislation at any time and was unaware of his interest, if any, in this bill. Id. Mesolella was never subpoenaed to testify before a Grand Jury after this interview. Id.¶ 11.

The Indictment alleges that Driscoll and Sangermano directed Celona to work to "defeat" 98-H 8229 because, if enacted into law, the act would have a negative impact on the finances of the Village at Elmhurst in that the Village at Elmhurst would not be allowed to offer Alzheimer's care to patients without being licensed as a nursing home or hospital. See Indictment, ¶ 33. The Indictment further alleges that Celona discussed 98-H 8229 with other legislators and advocated that the legislation be "held," which would effectively prevent the legislation from advancing. Id. ¶ 34. The statements described above made by Mesolella to the FBI and the Rhode Island State Police are clearly exculpatory. They not only undermine the credibility of Celona, the Government's key witness, by indicating that Celona may have lied to the FBI about having discussions with Mesolella about 98-H 8229, but also they negate the Government's allegations that Driscoll and Sangermano directed Celona to defeat legislation on behalf of the Village at Elmhurst. The Government has produced no evidence reflecting that Mesolella made these material, exculpatory statements. There is no grand jury transcript reflecting these exculpatory statements because the Government never subpoenaed Mesolella to testify. This is consistent

with the Government's pattern of concealing, manipulating and otherwise withholding exculpatory evidence from the Defendants.

**B. The Government Has Intentionally Mischaracterized Witnesses' Statements**

As part of its pattern of misconduct, the Government has also intentionally mischaracterized statements of witnesses in order to manipulate the evidence to conform to the Government's theory of the case. On September 9, 2005, Agent Aiken interviewed Edward Quinlan ("Quinlan"), the President of the Hospital Association of Rhode Island ("HARI"). See Declaration of Edward Quinlan attached hereto as Exhibit E [hereinafter "Quinlan Dec."], ¶ 4. Quinlan has known Urciuoli for approximately 11 years and worked closely with Urciuoli on HARI-related issues when Urciuoli served as the Chief Executive Officer of Roger Williams Hospital from 1988 through January of 2006. Id. ¶ 2. Urciuoli served as Chairman of HARI during the years 1994 to 1996 and January 1, 2001 through March 31, 2001. Id. During the interview of Quinlan, Agent Aiken leaned over the table toward him and asked, "Would you feel betrayed if you learned that Bob Urciuoli had paid a $50,000 bribe to a member of the Senate? Id. ¶ 4. Quinlan responded that he would be "shocked" and said that the hypothetical he posited was not reflective of anyone he knew. Id. Quinlan's response indicating that he would be "shocked" referred to Agent Aiken's use of the word "bribe." Id. ¶ 5.

On August 23, 2006, counsel for Urciuoli met with Quinlan. Id. ¶ 6. During that meeting, counsel for Urciuoli showed Quinlan the FBI 302 Report (the "Report") of his September 9, 2005 interview by Agent Aiken. Id. The Report stated in part:

> Quinlan was asked what his thoughts would be if he learned that RWMC was funding the consulting payments to Senator Celona at the same time that they were asking Senator Celona to support their position on certain bills. Quinlan responded, "I guess I'd be shocked." Quinlan was then asked if Urciuoli or Driscoll told him that was true. Quinlan responded, "Oh, gosh no."

Id.

The Report substantially misstates the question that Agent Aiken posed to Quinlan during the interview and makes the above-quoted section of the Report inaccurate and misleading. Id. ¶ 7. If, in fact, Quinlan had been asked the question that was stated in the Report, his answer would have been words to the effect of, "I was aware that Roger Williams was funding consulting payments to Senator Celona at the same time that Roger Williams representatives were urging Senator Celona to support the positions advocated by Roger Williams Hospital and HARI on certain bills." Id. ¶ 8. Indeed, Quinlan urged Urciuoli, along with other hospital CEOs, to advocate HARI's positions on certain bills – which would also have been the position of Roger Williams Hospital – to Senator Celona at the same time that he knew Senator Celona had a business relationship with Roger Williams Hospital. Id. ¶ 9. It was Quinlan's understanding that Celona's position with Roger Williams was publicly disclosed and that Senator Celona was permitted to participate in general health care and hospital legislation during that time frame. Id. ¶ 10. Agent Aiken never showed Quinlan a copy of the Report to confirm its accuracy. Id. ¶ 11. Quinlan has submitted a Declaration accompanying this motion indicating that the 302 does not accurately reflect the statements he made during the interview.

### C. The Government Has Repeatedly Misrepresented the Nature of the Redacted Portions of John Celona's FBI 302 Reports

The Government has also repeatedly mischaracterized the nature of redacted portions of John Celona's FBI 302 Reports and failed to disclose exculpatory evidence contained therein. The Government has declined to voluntarily disclose redacted portions of John Celona's FBI 302 Reports. The Celona 302s produced by the Government contained multiple pages of statements that had been electronically redacted. The Government contended that the redacted excerpts

pertained to its investigation regarding BC/BS, CVS and others, and, therefore, were not discoverable by the Defendants.

The Defendants have raised the issue of the redacted Celona 302s to the Court on numerous occasions, and each time the Government has stridently informed them and the Court that the redacted sections do not contain statements to which the Defendants are entitled. Following a hearing on July 19, 2006, the Court ordered the Attorneys for the Government to review the notes of the agents who interviewed John Celona and to interview those agents in order to determine whether Celona made any statements to agents that may constitute Brady material that were not reflected in the redacted 302s previously provided. See Order dated July 24, 2006.[3] The Government subsequently produced to the Defendants copy of Celona's 302s with additional un-redacted items. See August 2, 2006 letter from Assistant U.S. Attorney Luis Matos enclosing copy of Celona 302s with additional un-redacted items, attached hereto as Exhibit F. Among other things, the newly-un-redacted sections of the 302 revealed that Celona admitted the following:

> That he lied to the FBI about why he changed his vote on the pharmacy freedom of choice issue by stating that his change of heart involved not only his financial relationship with CVS but also the fact that CVS allowed independent pharmacies into their network, when, in fact, his financial relationship with CVS was the sole reason why he changed his position;
>
> That he lied to the FBI on September 1, 2004 by stating that his failure to disclose income from CVS on his 2000, 2001 and 2002 financial statements filed with the Ethics Commission was unintentional when, in fact, it was intentional; and
>
> That he lied to the press concerning his involvement with Blue Cross and Blue Shield by stating that he knew nothing of Blue Cross' sponsorship of Rhode Island Health Update until after he taped the first few episodes of the show, that he had no recollection of

---

[3] The Order also required the Government to review the notes of the agents who interviewed Vincent Mesolella and to interview those agents in order to determine whether Mesolella denied having had discussions with John Celona and/or whether Mesolella made any other statements to agents that may constitute Brady material that were not reflected in the redacted 302s previously provided. See id.

> talking to anyone at Blue Cross about sponsoring or airing the show, and that he was never paid by anyone in connection with the show.

This evidence, which is clearly exculpatory since it undermines Celona's credibility, should have been produced to the Defendants in February pursuant to the Court's discovery order.

Thereafter, without the assistance or knowledge of the Government, counsel obtained un-redacted versions of the Celona 302s. From these un-redacted 302s, counsel has discovered further evidence that the Government has concealed exculpatory information despite its constitutional disclosure obligations and in violation of specific orders from the Court to produce any exculpatory information contained in Celona's 302s that was previously redacted. Specifically, the completely un-redacted 302s revealed that Celona admitted to lying to the Rhode Island Ethics Commission. This evidence, which is clearly exculpatory, was not produced to the Defendants by the Government in connection with its "re-review" of the Celona redactions, despite the Government's representation to the Defendants and the Court that it would produce any exculpatory statements that had previously been redacted.

### D. The Government Has Intentionally Concealed or Delayed the Production of Exculpatory Evidence

The Government has delayed disclosure of exculpatory evidence. Following the Court's July 24 Order, the Government produced excerpts of agent notes taken on October 25, 2004. See August 2, 2006 letter from Assistant U.S. Attorney Luis Matos enclosing excerpt of notes, attached hereto as Exhibit G. Although the notes purported to be seven pages long, only two pages were produced and only half of one page contained information that had not been redacted. Id. The notes revealed that Celona made statements to the federal agent to the effect of the following:

That Urciuoli saw how active Celona was with seniors;

That Celona asked Urciuoli for a job in his office;

That Urciuoli said Celona could not get hired until he obtained an ethics opinion; and

That Celona was supposed to be working for the Village at Elmhurst and Roger Williams.

Id.

Counsel for the Defendants have learned that these notes reflect the first day and time that the Government ever asked Celona anything about RWMC. Incredibly, this information never made it into any 302 report.

**ARGUMENT**

The Indictment must be dismissed because the Government misconduct described above reflects a pattern a discovery abuses on the Government's part designed to obstruct justice and thwart the Defendants' constitutional right to receive exculpatory evidence. The extreme nature of the Government's misconduct, which, in essence, amounts to destruction of evidence, completely undermines the integrity of this case and warrants extreme relief by the Court in the form of dismissal of the Indictment.

**A. The Legal Standard**

It is well-settled that prosecutorial misconduct that deprives a defendant of a fair trial is grounds for a new trial. United States v. Casas, 425 F.3d 23, 38 (1st Cir. 2005). Similarly, a federal court has the authority to dismiss criminal charges against a defendant as a sanction for government misconduct. United States v. Russell, 411 U.S. 423, 431-32 (1973); United States v. Guzman, 282 F.3d 56, 59 (1st Cir. 2002). Federal courts, in their discretion, may dismiss indictments where the Government's misconduct violates commonly accepted norms of

fundamental fairness and is shocking to the universal sense of justice. Russell, 411 U.S. at 432; United States v. Nunez, 146 F.3d 36, 38 (1st Cir. 1998); United States v. Matiz, 14 F.3d 79, 82 (1st Cir. 1994). Dismissal of the indictment is also warranted in the presence of blatant prosecutorial misconduct that distorts the integrity of the judicial process. United States v. Giorgi, 840 F.2d 1022, 1030 (1st Cir. 1988) (citations omitted); United States v. Ogden, 703 F.2d 629, 636 (1st Cir. 1983) (citations omitted). The remedy is invoked as a prophylactic tool to discourage further misconduct of a like nature. See United States v. Houghton, 554 F.2d 1219, 1224 (1st Cir.) (citations omitted), cert. denied, 434 U.S. 851 (1977).

It is also well-settled that the bad faith destruction of evidence is a constitutional violation that warrants extreme relief from the Court, such as dismissal. See Arizona v. Youngblood, 488 U.S. 51, 58 (1988) (holding that bad faith destruction of evidence constitutes a due process violation); Goldberg v. United States, 425 U.S. 94, 111, n.21 (1976) ("Since courts cannot speculate whether [Jencks material] could have been utilized effectively at trial, the harmless error doctrine must be strictly applied in Jencks Act cases."); United States v. Diabate, 90 F.Supp.2d 140, 144 (D. Mass 2000) (dismissing indictment as sanction to government for government's pattern of failing to satisfy its discovery obligations, including the late disclosure of exculpatory material and destruction of other exculpatory evidence).

**B. The Government's Intentional Concealment, Omission and Manipulation of Exculpatory Evidence Warrants the Dismissal of the Indictment as a Sanction of Government**

The Government's intentional concealment, omission and manipulation of clearly exculpatory evidence amounts to obstruction of justice and warrants the immediate dismissal of the Indictment as a sanction of the Government. As described above, the Government – in blatant disregard of its obligations under the Constitution and explicit orders from this Court –

has failed, repeatedly, to produce to the Defendants material, exculpatory information that it knew existed. Likewise, federal agents have failed to reflect in their formal reports and investigative notes the existence of exculpatory statements made by John Celona and other witnesses. In essence, this conduct amounts to destruction of evidence[4] and warrants extreme relief from the Court. See United States v. Diabate, 90 F.Supp.2d at 144.

The Constitution requires the Government to produce all "evidence favorable to an accused upon request…where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). Evidence is "favorable" if it tends to exculpate the accused or is useful to impeach the credibility of a Government witness. United States v. Wong, 78 F.3d 73 (2d Cir. 1996). The Government's obligation under Brady v. Maryland extends to all information in its possession, custody or control. Thus, the "prosecutor must disclose information maintained by Government agents even if the prosecutor herself does not possess the information." United States v. Hall, 434 F.3d 42, 55 (1st Cir. 2006). Exculpatory evidence falls into two general categories – evidence that affects the credibility of the Government's witnesses and evidence that negates guilt. United States v. Wong, 78 F.3d 73 (2d Cir. 1996). Thus, any information tending to show that Celona lied about the nature of his relationship with RWMC, Blue Cross and CVS, to the press, to the Rhode Island Ethics Commission or to anyone, or tending to show that the Defendants were open and transparent in the way that they dealt with Celona with respect to the conduct alleged in the Indictment, is exculpatory because it negates guilt, undermines the elements of honest services fraud and seriously impeaches the Government's key witness, Celona.

[4] Indeed, had it not been for conversations with Celona's counsel, the Defendants would have no way of knowing that such evidence ever existed.

The information that the Government has concealed from the Defendants and omitted from its formal reports and investigative notes is clearly exculpatory as it not only calls into question the credibility of Celona, but also reflects on the Defendants' openness and transparency in his dealings with the public concerning Celona. That evidence undermines the essence of the Government's theory of the case. Concealment or non-preservation of such evidence completely undermines the integrity and fairness of the criminal justice system and threatens to make a trial more a "sporting event" than a "quest for truth." See United States v. Bryant, 439 F.2d 642, 644 (D.C. Cir. 1971). Indeed, as the Brady court explained:

> A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with the standards of justice…

373 U.S. at 87-88.

In Diabate, the court dismissed the indictment as a sanction for the government's violation of its discovery obligations to the defendant. 90 F.Supp.2d at 140. The court held that the defendant was prejudiced by the government's very late disclosure of exculpatory material and destruction of other exculpatory evidence as a result of its failure to advise agencies and agents of their obligation to preserve notes and other records. Id. In Diabate, none of the three Assistant United States Attorneys who represented the government advised agents of the Secret Service and Fall River Police Department to keep their notes rather than destroy them. Id. at 142. The prosecutors also did not review any materials from the Fall River Police Department until the Court ordered them to do so. Id. The court found that no sanction less than dismissal was fair and feasible, in part because it had no way of knowing what evidence was contained in notes that were improperly destroyed. Id. The Court noted that but for defense counsel's alertness, documents very valuable to the defendant would not have been disclosed to him and,

as it was, they were not disclosed in a manner that gave him an adequate opportunity to do the investigation that would be reasonably necessary to use those documents to the maximum effect or to determine whether there were witnesses who could be called to enhance the value of those documents to the defense. Id. at 142-43. The Court noted that the situation was "fraught with the potential for prejudice" and could not satisfy itself that prejudice did not actually exist. Id. at 143.

Here, the Government's conduct is even more outrageous than the conduct in Diabate, as the withholding or destruction of evidence was not a result of the Government's failure to advise agencies and agents of their obligation to preserve contemporaneous notes and other investigative records, but, rather, a result of federal agents' intentional failure to include exculpatory information in their notes and records. Here, the Government has taken actions which, in effect, amount to the intentional, bad faith destruction of evidence. Were it not through other sources, the Defendants and their counsel would not have learned of the existence of the exculpatory evidence described above. In such circumstance, courts have routinely imposed sanctions. See United States v. Lieberman, 608 F.2d 889, 896 (1st Cir. 1980) ("lower courts have held that the intentional destruction, even if in good faith, of a government witness' statements can violate the Jencks Act and warrant sanctions); United Stated v. Bufalino, 576 F.2d 446, 448-50 (2d Cir.), cert. denied, 439 U.S. 928 (1978) (intentional destruction, even in good faith, of a government witness' statement can violate the Jenks Act and warrant sanctions); United States v. Well, 572 F.2d 1383, 1384-85 (9th Cir. 1978) (routine destruction of interview tapes justified a mistrial and suppression of testimony); United States v. Carrasco, 537 F.2d 372, 375-77 (9th Cir. 1976) (routine good faith destruction of informant's diary called for a new trial).

The Government's misconduct has been extremely prejudicial to the Defendants. The Defendants and their counsel have been forced to spend countless hours chasing after evidence that should have been produced by the Government as a matter of course. The Government's tactics have forced the Defendants to misdirect their energy and effort at a time when they should be preparing for trial in this matter, which is imminent. In Diabate, the Court dismissed in the indictment, in part, because it found that the Government had not proven that the defendant had not been prejudiced by the Government's failure to review and produce agents' notes and the late disclosure of exculpatory evidence. 90 F.Supp.2d at 150. Although prejudice is certainly not required in order for dismissal to be an appropriate sanction, it is clear that the Defendants have suffered substantial prejudice. Indeed, counsel for the Defendants have been forced to prepare the instant motion, serve subpoenas and conduct an evidentiary hearing on discovery issues merely six days before trial.

**CONCLUSION**

For all of the foregoing reasons, Defendants Robert A. Urciuoli, Frances P. Driscoll and Peter J. Sangermano respectfully request that the Court Dismiss the Indictment. In the alternative, the Defendants respectfully request that the Court otherwise sanction the Government, continue the trial in the matter, which is currently set for September 6, 2006, and compel the Government to produce all investigative notes from witness interviews and un-redacted versions of John Celona's FBI 302 Reports, so that the Defendants may be certain that they have received all exculpatory evidence to which they are constitutionally-entitled.

Respectfully submitted,

ROBERT A. URCIUOLI

By his Attorneys,

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020 (fax)
mconnolly@haslaw.com

Richard M. Egbert (MA BBO #151800)
*Pro Hac Vice Counsel*
Richard Egbert Law Offices
99 Summer Street
Suite 1800
Boston, Massachusetts 02110
(617) 737-8222
(617) 737-8223 (fax)
regbert@egbertlaw.com

FRANCES P. DRISCOLL

By her Attorney,

/s/ Kevin J. Bristow________________________
Kevin J. Bristow, Bar No. 3984
1309 Turks Head Building
Providence, RI 02903
(401) 521-2849
kjbristowlaw@verizon.net

PETER J. SANGERMANO

By his Attorneys,

/s/ A. John Pappalardo____________________
James P. Redding, Esq.
A. John Pappalardo, Esq.
Greenburg Traurig LLP
One International Place
Boston, MA 02110
reddingj@gtlaw.com
pappalardoj@gtlaw.com

Dated: August 30, 2006

**CERTIFICATION**

I hereby certify that on August 30, 2006, a copy of the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss Indictment due to Prosecutorial Misconduct and For Other Relief was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com