UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | CR 06-02-02-T |
| | : | |
| ROBERT A. URCIUOLI, FRANCES P. DRISCOLL, PETER J. SANGERMANO, JR., and ROGER WILLIAMS MEDICAL CENTER | : : : | |

**DEFENDANT FRANCES P. DRISCOLL'S**
**PRE-TRIAL MEMORANDUM**

In accordance with the Court's Pre-trial Order dated August 4, 2006, Defendant Frances P. Driscoll ("Driscoll") submits the following Pre-trial Memorandum. The issues and arguments addressed in this Memorandum are both factual and legal.

## A. ISSUES

1. Whether an agreement to commit an offense against the United States, specifically, to devise or intend to devise a scheme and artifice to defraud the State of Rhode Island and its citizens of their intangible right to the honest services of John Celona, existed between Driscoll and at least one other person.

2. Whether Driscoll knowingly, willfully and voluntarily joined in an unlawful agreement or plan.

3. Whether Driscoll acted with the specific intent to deprive the State of Rhode Island and its citizens' right to the honest services of John Celona.

4. Whether Driscoll intended to agree with one or more people to engage in a scheme to defraud the citizens of Rhode Island of John Celona's honest services.

5. Whether Driscoll conspired to disguise the nature of Celona's relationship with Roger Williams Medical Center by having the Village at Elmhurst hire and pay Celona.

6. Whether Driscoll conspired to fail to disclose Celona's conflict of interest, including to the Rhode Island Ethics Commission.

7. Whether Driscoll conspired to provide false and misleading information to the Rhode Island Ethics Commission.

8. Whether Driscoll conspired to seek an advisory opinion from the Ethics Commission based on false, misleading and incomplete information.

9. Whether, at some point during the existence of the alleged agreement to commit honest services mail fraud, Driscoll knowingly and willfully committed at least one of the overt acts charged in the Indictment.

10. Whether Driscoll knowingly and willfully, i.e., with bad faith or evil intent, committed at least one of the overt acts charged in the Indictment in furtherance of the alleged conspiracy to commit honest services mail fraud.

11. Whether Driscoll devised a scheme or artifice to defraud the State of Rhode Island and its citizens of their intangible right to the honest services of John Celona by knowingly and willfully failing to disclose to the public that John Celona had an improper conflict of interest in that John Celona obtained money from Roger Williams Medical Center in exchange for his political support.

12. Whether Driscoll participated in any alleged scheme to commit honest services mail fraud knowingly, willfully, i.e., in purposeful disregard of the law, and with specific intent to defraud.

13. Whether Driscoll possessed specific intent to influence official action and specific intent to deceive the public.

14. Whether any alleged failure to disclose on Driscoll's part related to a material fact or matter.

15. Whether Driscoll acted voluntarily and deliberately rather than mistakenly or inadvertently.

16. Whether Driscoll acted with an intent to do something that the law forbids, that is to say, with bad purpose either to disobey or to disregard the law.

17. Whether Driscoll believed she was committing a crime or violating any state laws.

18. Whether Driscoll used or caused the use of the mails or a private commercial interstate carrier as specified in the Indictment in execution of that scheme.

19. Whether Driscoll believed in good faith that her actions complied with the law.

20. Whether Driscoll relied upon the advice of Attorney James McGuirk in seeking an advisory opinion from the Rhode Island Ethics Commission.

21. Whether all decisions as to what should or should not be included in that request were made by Attorney James McGuirk.

22. Whether Rhode Island law permits its public officials to perform their official duties with favoritism and bias.

23. Whether John Celona's involvement in one or more of the legislative bills referenced in the Indictment affected Roger Williams Hospital to no greater extent than other hospitals.

24. Whether John Celona's involvement in one or more of the legislative bills referenced in the Indictment affected Elmhurst Extended Care Facilities, Inc. to no greater extent than other extended care facilities.

25. Whether Driscoll relied on the findings of Attorney F. Dennis Saylor, IV regarding Roger Williams Medical Center's relationship with John Celona.

## B. ARGUMENTS

Inasmuch as the statutes, opinions and other authorities cited herein mirror those contained in the Pre-Trial Memorandum of Co-Defendant Urciuoli, additional copies of such authorities are not submitted with this Memorandum.

1. The Government's theory of prosecution fails because the Government cannot establish the elements of honest services mail fraud.

2. The facts alleged in the Indictment do not establish that Driscoll intended to deceive the public. To establish specific criminal intent to deceive the public, the government must show the defendant knew that her actions were fraudulent and, despite this knowledge, proceeded to take steps designed to conceal these fraudulent actions. United States v. Sawyer, 239 F.3d 31, 47 (1st Cir. 2001 (Sawyer II) ; see also United States v. Grandmaison, 77 F.3d 555, 558

(1st Cir. 1996) (after defendant recused himself from local governing board based on a conflict of interest, the defendant "secretly took steps to manipulate the contracts" by giving other board members information tapes, gifts, and gratuities); United States v. Silvano, 812 F.2d 754, 756-58 (1st Cir. 1987) (defendants continually made intentional and knowing false statements to other public officials with the specific intent to deceive them).

3. Celona's alleged conflict of interest was disclosed. McGuirk's letter to the Ethics Commission clearly disclosed that Celona would be working for affiliates of RWMC, and that Celona expected to "debate" and "vote" on legislation involving "hospital regulation," "hospital reorganizations" and "nursing home issues," among other issues. See April 6, 1998 letter from McGuirk to Rhode Island Ethics Commission. McGuirk went so far as to state in the letter that these facts "raise issues of conflict" for Celona. Id. Thus, McGuirk, acting at the direction of Urciuoli and Driscoll, not only did not conceal Celona's conflict issues in his new position, he flagged them and sought authoritative guidance from the Ethics Commission.

4. For purposes of conducting its conflict of interest analysis, the Ethics Commission was made fully aware of Celona's financial ties to RWMC. Any further disclosure as to the source of the funds paid to Celona would not have made a material difference to the Ethics Commission. Accordingly, omitting that information cannot amount to fraud, as the omission could not be considered material, as a matter of law. See Neder v. United States, 527 U.S. 1, 25 (1999) ("we hold that materiality of falsehood is an [essential] element of the federal mail

fraud, wire fraud, and bank fraud statutes"); United States v. Colon-Munoz, 192 F.3d 210, 221 (1st Cir.1999) (an indictment charging mail or wire fraud must contend that the alleged scheme or artifice to defraud "involved *material* falsehoods") (emphasis added); U.S. v. Gaudin, 515 U.S. 506, 509 (1995) (statement must have a natural tendency to influence, or be capable of influencing, the decision or the decision-making body to which it was addressed).

5. Celona's participation in legislation regarding hospitals, nursing homes and general health care issues was approved by the Ethics Commission and thus cannot form the basis of an honest services fraud prosecution of Driscoll. Driscoll, through McGuirk, made full disclosure to the Ethics Commission of the potential for conflicts of interest in Celona's legislative duties stemming from the Consulting Agreement. Under Rhode Island law, the citizens of Rhode Island are entitled to no less and no more. The Ethics Commission expressly permitted Celona to "*fully participate and vote*" on matters concerning "broad-based legislation involving general health care issues of public interest," so long as he filed a § 6 Notice disclosing the potential conflict of interest. See Advisory Opinion 98-59. The Ethics Commission determined that participation in "[g]eneral legislation relating to elderly affairs, nursing home issues and hospital regulations" was permissible under R.I. Gen. Laws § 36-14-7(b), because "any benefit or detriment accruing to the Senator and/or the Village/affiliates would affect them to no greater extent than any other similarly situated members of a significant and definable group." Id. Celona was expressly permitted by the Ethics Commission to fully participate and vote on the legislation described in the

Indictment, provided he made Section 6 disclosures when necessary. Thus, the allegations in the Indictment with respect to Celona's involvement with these bills simply cannot support an honest services fraud case.

6. The Indictment fails to allege a scheme to defraud under 18 U.S.C. §1346. The rights of the citizens of Rhode Island to Celona's disinterested and honest service were limited to *official* legislative action. Id. (the public's right is limited to disclosure of "the official's potential motivation behind *an official act*") (emphasis added); Silvano, 812 F.2d at 759; United States v. Bloom, 149 F.3d 649, 656 (7th Cir. 1998) (reversing the honest services fraud conviction of a Chicago alderman who, in his private capacity as a lawyer, advised a client to use a proxy bidder at a tax scavenger sale at which the client's property was being auctioned, thereby depriving the city of tax revenues; and finding that the scheme did not involve anything that the defendant did in his *official capacity* as an alderman) (emphasis added).

7. Celona's efforts to increase rescue runs did not involve any type of official decision-making or participation in the legislative process, nor does the Indictment make that allegation. Thus, Celona's efforts to increase rescue runs to Roger Williams Hospital cannot – as a matter of law – serve as the basis of an honest services fraud prosecution of Driscoll. See United States v. Sawyer, 85 F.3d 713, 724-25 (1st Cir. 1996) (Sawyer I); United States v. Bloom, 149 F.3d at 656.

8. Celona's involvement with contract negotiations between RWMC, on the one hand, and Blue Cross or United, on the other, cannot serve as the basis

of an honest services fraud prosecution of Driscoll. The Indictment does not allege that Driscoll requested or sought legislative action from Celona in connection with Blue Cross and United. As such, Celona's involvement with contract negotiations between the Hospital and Blue Cross and United cannot – as a matter of law – serve as the basis of an honest services fraud prosecution of Driscoll.

9. Prosecuting Driscoll for honest services mail fraud would be, in essence, federalizing misdemeanor state ethics laws, and is precisely the situation cautioned against by Judge Harrington and the First Circuit. Judge Harrington, the former United States Attorney for the District of Massachusetts, warned that the elastic nature of the Honest Services Doctrine threatens the liberty and reputation of individuals undeserving of criminal prosecution under a federal felony statute:

> This court re-emphasizes the threat to liberty and reputation of individuals which occurs when federal prosecutors selectively transform state ethics violation…typically enforced by the imposition of civil penalties, into serious federal felonies. The government should be wary of the broad language and elastic interpretation of the federal criminal fraud statute, and refuse to engage in the innovative prosecutorial process of 'federalization' of state laws.

United States v. Sawyer, 74 F.Supp.2d 88, 105 (Harrington, J.) (D. Mass. 1999), rev'd, 239 F.3d 31, 49 (1st Cir. 2001) (supporting Judge Harrington's cautionary note).

## C. PENDING MATTERS

1. Defendants' Motion to Dismiss Indictment Due To Prosecutorial Misconduct and For Other Relief.

2. The Defendant maintains her right to renew her Motion to Sever if the Government introduces certain prior statements of Co-Defendant Urciuoli. The Defendant relies upon the factual and legal arguments advanced in her Motion to Sever.

**D. ESTIMATED TIME OF TRIAL**

Counsel for Driscoll estimates that the presentation of evidence on behalf of defendant Driscoll will last two days. It is estimated that the entire trial will last five weeks.

**E. QUESTIONS FOR THE JURY**

Driscoll submitted her questions to the jury on July 31, 2006.

Respectfully submitted,
FRANCES P. DRISCOLL
By her attorney,

KEVIN J BRISTOW, ESQ., #3984
505 Turks Head Building
Providence, Rhode Island 02903
(401) 521-2800; fax (401) 521-2812

Certification

I hereby certify that on the 1st day of September, 2006, I mailed a copy of the within Pre-Trial Memorandum to Assistant U.S. Attorney Luis Matos, U.S. Attorneys Office, 50 Kennedy Plaza, 8th Floor, Providence, RI 02903; Michael J. Connolly, Esq., Hinckley, Allen & SnyderLLP, 1500 Fleet Center, Providence, Rhode Island 02903, and to A. John Pappalardo, Esq., Greenberg Traurig, LLP. One International Place, Boston, Massachusetts 02110