**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **CR 06-02-T** |
| | : | |
| **ROBERT A. URCIUOLI, and** | : | |
| **FRANCES P. DRISCOLL** | : | |

**UNITED STATES' OBJECTION TO DEFENDANT DRISCOLL'S MOTION FOR A RULE 29 POST-VERDICT JUDGMENT OF ACQUITTAL AND A NEW TRIAL PURSUANT TO RULE 33**

On November 7, 2006, Defendant Frances Driscoll filed a Motion For a Rule 29 Post-Verdict Judgment of Acquittal and New Trial Pursuant to Rule 33. For the reasons stated in the accompanying memorandum of law filed simultaneously herewith, the United States objects to the motion.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

Dated: November 30, 2006

/s/ LUIS M. MATOS
LUIS M. MATOS
Assistant U.S. Attorney
Chief, Criminal Division

/s/ DULCE DONOVAN
DULCE DONOVAN
Assistant U.S. Attorney

## CERTIFICATE OF E-SERVICE

I hereby certify that on this 30th day of November, 2006, I caused the United States Objection to Defendant Driscoll's Motion for a Rule 29 Post-Verdict Judgment of Acquittal and a New Trial Pursuant to Rule 33 to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Richard M. Egbert, Esq.
99 Summer Street
Suite 1800
Boston, MA 02110

Kevin J. Bristow, Esq.
501 Turks Head Building
Providence, RI 02903

Michael J. Connolly
Kristie Passalacqua, Esq.
Hinckley Allen Snyder LLP
28 State Street
Boston, MA 02109

/S/ DULCE DONOVAN
DULCE DONOVAN
ASSISTANT U.S. ATTORNEY

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **CR 06-02-T** |
| | : | |
| **ROBERT A. URCIUOLI, and** | : | |
| **FRANCES P. DRISCOLL** | : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT DRISCOLL'S MOTION FOR A RULE 29 POST-VERDICT JUDGMENT OF ACQUITTAL AND A NEW TRIAL PURSUANT TO RULE 33**

## I. Introduction

On October 13, 2006, after a three-and-a-half week trial, a jury convicted Defendant Frances Driscoll on Count 2 of the Indictment, honest services mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346. Presently, Driscoll moves for acquittal under Federal Rule of Criminal Procedure 29 and for a new trial pursuant to Rule 33. Driscoll contends that the jury's verdict is barred by the statute of limitations. Because Driscoll's claim is completely lacking in merit – the mailing of which the jury convicted her falls within the statute of limitations – the United States objects to her motion.

## II. Factual and Procedural Background

The Indictment charged Defendants Robert A. Urciuoli, Frances P. Driscoll, and Peter J. Sangermano with conspiracy to commit honest services mail fraud, Defendant Driscoll with one count of honest services mail fraud and Defendants Urciuoli and Sangermano with thirty-six counts of honest services mail fraud. Generally, the Indictment charged that from August 1997, through in or about January 8, 2004, Defendants devised a scheme and artifice to defraud the State of Rhode Island and its citizens of their intangible right to the honest services of John

Celona and to have those services performed free from deceit, favoritism, bias, conflict of interest and self-enrichment. Indict. ¶ 96. Specifically, John Celona was to be paid on a monthly basis in order to carry out Roger Williams Medical Center's ("RWMC") political bidding as directed by Driscoll and later Urciuoli. The jury convicted Defendant Urciuoli of conspiracy and thirty-five counts of honest services mail fraud. The jury acquitted Defendant Sangermano of all counts and convicted Defendant Driscoll of the one count of mail fraud with which she was charged, Count 2.

Count 2 charged a scheme to defraud occurring from August 1997 through January 8, 2004. Indict. ¶ 96. Count 2 also described the objects of the scheme which were: (1) to pay money to Celona, pursuant to a consulting agreement, so as to improperly influence and affect his official actions, specifically, to cause him to use his influence, appointment power, and authority as a State Senator to benefit the political and financial interests of RWMC and its affiliates; and (2) to deceive the State of Rhode Island and its citizens concerning Celona's relationship with RWMC in order for Celona to continue to promote the political interests of RWMC and its affiliates from which Celona was receiving money. Id. ¶¶ 97, 98.

Count 2 further alleged that the manner and means by which Driscoll accomplished the scheme was to cause the Village to enter into a consulting agreement with Celona in order to provide him money in exchange for his ongoing political support. Id. ¶ 99. The means by which Driscoll was alleged to have accomplished the scheme also included failing to disclose to the public that Celona had an improper conflict of interest which deprived the State of Rhode Island and its citizens of their intangible right to his honest services in that Celona obtained money from RWMC in exchange for his political support. Id. ¶ 100. Count 2 specifically incorporated

numerous actions undertaken by Driscoll throughout the existence of the scheme which were alleged in previous paragraphs in the Indictment. Id. ¶¶ 103 and 22, 23 25, 28, 29, 32, 33, 35, 37-40, 41-44, 51, 53-71, 73. Finally, Count 2 charged that:

> On or about May 4, 2000, in the District of Rhode Island, **for the purpose of executing the scheme and artifice to defraud described in paragraphs 95-103**, DRISCOLL did knowingly cause to be placed in an authorized depository for mail matter a check, No. 1054, drawn from the Village's Capital Account, Fleet Bank Account No. 93921-05389 from the Village made payable to John Celona, in the amount of $2,800, for consulting fees for the month of April, 2000, to be sent and delivered by the United States Postal Service.

Indict. ¶ 104 (emphasis added).

The evidence at trial proved that Driscoll carried out or participated in many of the acts she was alleged to have undertaken in furtherance of the scheme.

For example, the evidence showed that at the commencement of the scheme, Driscoll assisted in the drafting of Celona's consulting agreement with the Village at Elmhurst, despite being aware that Urciuoli intended to hire Celona to work for RWMC and that Sangermano did not want to hire him to work at the Village. Driscoll also reviewed the April 6, 1998, letter to the Rhode Island Ethics Commission and permitted its submission knowing that Celona was already reporting to her and working on behalf of RWMC's political interests.

For example, the evidence at trial demonstrated that in early 1998, at a time when RWMC was pursuing mergers with non-profit hospitals, John Celona testified that Driscoll spoke to him about Senate Bill S-2796 and asked him to "kill" the legislation because she and Urciuoli wanted to maintain the same board of directors if the hospital merged. On March 16, 1998, Celona faxed a memorandum to Driscoll's home in which he informed her he was making calls to "kill the bill in committee." GX 137. Celona continued to update Driscoll on the status

of S-2796 through the end of March 1998. GX 142, 147.

The evidence at trial also showed that in early 1999, House Bill H-5220 was introduced which would have established a statewide Cancer Council responsible for, among other things, promoting the development and coordination of effective and efficient statewide public and private policies for the treatment of cancer. Indict. ¶¶ 54, 55. Several witnesses at trial, John Celona, Maureen McNamara and Chris Reilly, testified that Driscoll was opposed to the Cancer Council for various reasons, including but not limited to the fact that she was "leery" of the direction the commission would take and whether RWMC would have a role. On February 23, 1999, Driscoll instructed Celona to "subtly" check on the Cancer Council bill, "where it is going. Who's supporting in Senate and . . . Reps." GX 272.

Furthermore, Celona testified that in July 1999, Driscoll asked him to obtain minutes of a commission meeting on a proposed merger between Lifespan and Care New England. GX 320. Subsequently, in early 2000, the Rhode Island Attorney General was addressing the proposed merger and Celona asked Driscoll whether he should oppose the merger. On February 14, 2000, in a fax to Celona, Driscoll instructed him to oppose the merger. GX 364.

On March 7, 2000, Celona informed Driscoll that Senate bill S-2701, dealing with prompt payment issues, was being held for further study in the Senate Corporations Committee. GX 374. The evidence at trial demonstrated that if enacted the bill would have required health care entities operating health plans to pay providers within thirty days of receiving a claim. Also, on April 16, 2000, Celona faxed a memorandum to Urciuoli and informed him that he was scheduled to be a panelist at a forum sponsored by Blue Cross and asking Urciuoli if he had any issue which he would like addressed. GX 383. Celona also informed Urciuoli that he had

"cleared [his] participation with Fran." Id. After attending the forum, on April 20, 2000, Celona informed Urciuoli that while in attendance, he had raised several issues of importance to RWMC, specifically the issue of prompt payment legislation. GX 385. Urciuoli routed Celona's report to all of the vice-presidents at the Hospital, including Driscoll. Driscoll's last day at RWMC was May 5, 2000.

## III. Argument

### A. Rule 29 Standard

As this Court is well aware, in evaluating a defendant's Rule 29 motion for judgment of acquittal, the Court must "survey the totality of the evidence, scrutinizing the record in the light most favorable to the prosecution and drawing all reasonable inferences in favor of the verdict. So long as the record, read in this fashion, would have allowed a rational jury to conclude beyond a reasonable doubt that [the defendant] was guilty of the offenses charged," the motion must be denied. United States v. Amparo, 961 F.2d 288, 290 (1st Cir. 1992) (citations omitted). See also United States v. Hernandez, 146 F.3d 30, 32 (1st Cir. 1998).

### B. Rule 33 Standard

If the Court finds the evidence presented at trial sufficient to sustain the jury verdict against Driscoll, she asks the Court alternatively pursuant to Rule 33 to grant her a new trial because "the interest of justice so requires." Fed. R. Crim. P. 33(a). The Rule 33 remedy of a new trial is "rarely used." United States v. Andrade, 94 F.3d 9, 14 (1st Cir. 1996). Granting a Rule 33 motion is "warranted only where there would be a miscarriage of justice or where the evidence preponderates heavily against the verdict." Id. (internal quotations omitted).

### C. The Jury's Verdict Finding Driscoll Guilty of Count 2 of the Indictment Is Not Barred by the Statute of Limitations

The parties agree that the statute of limitations for mail fraud is five years. 18 U.S.C. § 3282. Driscoll's last day at RWMC was May 5, 2000. But for the tolling agreements which Driscoll executed, it could be argued that the statute of limitations on bringing mail fraud charges against her would have run on May 5, 2005. As Driscoll notes in her motion, however, on April 21, 2005, she executed her first tolling agreement with the United States which extended the statute of limitations up to and including August 15, 2005. The agreement stated that the tolling implemented by the agreement did not apply to claims already barred by the statute of limitations, i.e. charges which would have occurred more than five years prior to April 21, 2005. Thereafter, Driscoll executed additional agreements on July 14, 2005, which tolled the running of the statute until November 15, 2005, on October 26, 2005 which tolled the statute until December 15, 2005, and on December 8, 2005, until January 15, 2006.[1] Accordingly, the tolling agreements which Driscoll executed tolled the statute of limitations for charges occurring from April 21, 2000 to May 5, 2000.

The statute of limitations begins to run when every element of the crime is complete. Toussie v. United States, 397 U.S. 112, 115 (1970). The crime of mail fraud is complete at the time that the mailing occurred. United States v. Read, 658 F.2d 1225, 1240 (7th Cir.1981). Assuming that the statute of limitations began to run on May 5, 2000, Count 2 of the Indictment charges Driscoll with conduct occurring after April 21, 2000, and **before** May 5, 2000, and thus, is not statutorily barred.

[1] The grand jury returned the Indictment in this case on January 5, 2006.

Moreover, it is well-established in mail fraud cases that acts which comprise the scheme to defraud may extend back before the statute of limitations period. See United States v. Eisen, 974 F.2d 246, 263-64 (2d Cir. 1992); United States v. Ashdown, 509 F.2d 793, 797-99 (5th Cir. 1975) (conspiracy); United States v. Gross, 416 F.2d 1205, 1210 (8th Cir. 1969) ("The fact a scheme may extend back beyond the limitations period does not outlaw an offense committed in furtherance of that scheme within the period."). See also e.g. United States v. Crossley, 224 F.3d 847, 857-59 (6th Cir. 2000).[2] The Indictment alleged, and the facts adduced at trial proved, that while Driscoll devised the scheme to defraud the public of its right to the honest services of John Celona more than five years prior to April 21, 2000, her participation in the scheme continued up to at least May 5, 2000. Thus, pursuant to the terms of the tolling agreement her conviction on Count 2 of the Indictment, which alleges mail fraud which was executed on May 4, 2000, is timely.

Furthermore, the fact that the jury acquitted Driscoll of the conspiracy count with which she was charged does not alter the legitimacy of the jury's verdict. As this Court is aware, when considering whether there exists sufficient evidence to support Driscoll's conviction on the mail fraud count, the Court is prohibited from considering the jury's acquittal of Driscoll on Count 1, conspiracy. See United States v. Cianci, 378 F3d 71, 91-92 (1st Cir. 2004), citing Dunn v. United States, 284 U.S. 390 (1932) and United States v. Powell, 469 U.S. 57 (1984). The charges of conspiracy and mail fraud are separate offenses.

---

[2] Even a defendant found guilty of mail fraud on the theory that he aided and abetted the commission of the crime who "performed all of his acts in relation [to the fraud] prior to the mailing and outside the limitations period nonetheless may be prosecuted for his role where the fraud was completed inside the limitations period." United States v. United Medical and Surgical Supply Corp., 989 F.2d 1390, 1398 (4th Cir. 1993).

Finally, the May 4, 2000, mailing demonstrated Driscoll's execution of the scheme which she had devised commencing in or about August of 1997 and furthered through numerous actions throughout 1998, 1999, and 2000, some of which are described above. All of the actions which she was proven to have committed demonstrated the existence of the scheme and her intent to defraud. As part of the scheme, Celona was to be paid on a monthly basis in order to further his continued participation in the scheme. See GX 2-79. The May 4, 2000, mailing constitutes just one of the mailings which executed the scheme. Driscoll's argument to the contrary focuses "too narrowly" on each mailing and "assumes that a new fraudulent scheme" began and ended with every invoice from Celona and subsequent check mailed to him. United States v. Woodward, 149 F.3d 46, 64-65 (1st Cir. 1998) (rejecting claim that monthly Citibank Visa mailing three to four weeks after purchase of meals and entertainment was not for purpose of executing scheme). The evidence at trial demonstrated that the scheme which Urciuoli, Driscoll and Celona participated in was ongoing and lasted from August of 1997 through January 2004. The evidence of Driscoll's continued participation in the scheme from August of 1997 through May 5, 2000 was overwhelming. The monthly checks mailed to Celona were a necessary part of the scheme to pay Celona "in order to coax **ongoing** favorable official action in derogation of the public's right to impartial official services." United States v. Sawyer, 85 F.3d 713, 730 (1st Cir. 1996) (emphasis added). Thus, the evidence of records fully supports Driscoll's conviction on Count 2 of the Indictment.

## IV. **Conclusion**

Based upon the foregoing, the United States respectfully requests that the Court deny Defendant Driscoll's post-trial motion.

Respectfully submitted,
ROBERT CLARK CORRENTE
United States Attorney

Dated: November 30, 2006

/s/ LUIS M. MATOS
LUIS M. MATOS
Assistant U.S. Attorney
Chief, Criminal Division

/s/ DULCE DONOVAN
DULCE DONOVAN
Assistant U.S. Attorney

**CERTIFICATE OF E-SERVICE**

I hereby certify that on this 30th day of November, 2006, I caused the United States Memorandum in Support of its Objection to Defendant Driscoll's Motion for a Rule 29 Post-Verdict Judgment of Acquittal and a New Trial Pursuant to Rule 33 to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Richard M. Egbert, Esq.
99 Summer Street
Suite 1800
Boston, MA 02110

Kevin J. Bristow, Esq.
501 Turks Head Building
Providence, RI 02903

Michael J. Connolly
Kristie Passalacqua, Esq.
Hinckley Allen Snyder LLP
28 State Street
Boston, MA 02109

/S/ DULCE DONOVAN
DULCE DONOVAN
ASSISTANT U.S. ATTORNEY