IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CR No. 06-02-T |
| vs. | : | |
| | : | |
| ROBERT A. URCIUOLI, | : | |
| FRANCES P. DRISCOLL | : | |

# SENTENCING MEMORANDUM OF FRANCES P. DRISCOLL

## I. INTRODUCTION

On October 13, 2006, the jury returned a verdict finding Mrs. Driscoll guilty of a single count of mail fraud, alleged to have occurred one day before she left her employment at Roger Williams Medical Center. She was acquitted of the broader charge that she conspired with Robert Urciuoli and John Celona to commit honest services mail fraud.

### The Presentence Investigation Report

The Presentence Investigation Report ("PSR") has recommended an Offense Level of 18. This conclusion is based on a Base Offense Level of 10, § 2C1.7, and an 8-point Specific Offense Characteristic because the offense involved an elected official. § 2C1.7(1)(B). Mrs. Driscoll has no quarrel with this calculation as far as it goes. She asks, however, that this Court consider decreasing this total offense score by two levels as a minor participant under § 3B1.2(b). The *Application Notes* define a minor participant as one "who is less culpable than most other participants, but whose role could not be described as minimal."

Mrs. Driscoll meets this definition based on the trial evidence. With this adjustment, the Guideline range in this matter should be a Level 16, which, given a Criminal History Category of I, leads to a normative sentencing range of 21 to 27 months.

## II. LEGAL STRUCTURE

### A. The Role of Guidelines

In *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738 (2005) (*Booker II*), a majority of the Supreme Court severed and excised portions of 18 U.S.C. § 3553(b)(1), thereby "mak[ing] the Guidelines effectively advisory." *Booker II, supra* at 756-7. According to the Court, § 3553 still "requires a sentencing court to consider Guideline ranges, . . ., but it permits the court to tailor the sentence in light of other statutory concerns as well ...." *Id.*

In the time since the *Booker II* ruling, federal courts have split on the degree of deference which a sentencing court should give to the now-advisory Guidelines. In *United States v. Jimenez-Beltre,* 440 F.3d 514, 518 (1st Cir. *en banc* 2006), the First Circuit concluded that the Guidelines were "an important consideration in sentencing," but not "'presumptively' controlling" or "*per se* reasonable." The *Jimenez-Beltre* court explained that the Guidelines could not be considered just "another factor" because "they are the only integration of the multiple factors and, with important exceptions, their calculations were based upon the actual sentences of many judges." *Id.* Nevertheless, the "guidelines are still generalizations that can point to outcomes that may appear unreasonable to sentencing judges in particular cases." *Id.* Consequently, while trial courts should "'give them substantial weight, . . . they don't have controlling weight; and if there are clearly identified and persuasive reasons why [a District Court] should not impose a Guidelines sentence, [it should] consider those and impose a sentence accordingly.'" *Id.* at 516-517, quoting with approval Saylor, U.S. District Judge. Consequently, "*Booker's* remedial solution makes it possible for courts to impose non-guideline sentences that override the guidelines, subject only to the ultimate review of reasonableness." *Id.* at 518.

*Jimenez-Beltre* went on to outline an approach for trial judges to use in sentencing. *Id.* at 518-519. The Circuit suggested that the process begin with an assessment of the Guidelines' sentencing range, including a consideration of any applicable departures. *Id.* Once a Guideline range is established, the trial court should move on to an evaluation of the sentencing factors set out in 18 U.S.C. § 3553(a), along with any other relevant considerations. *Id.* Finally, the sentencing judge is to determine, in light of his/her assessment of those statutory factors, whether a sentence above, within, or below the sentencing range is warranted. *Id.*

**B. Departures from the Guideline Range**

Parts H and K of the Sentencing Guidelines describe a variety of factors which the Sentencing Commission either favored or disfavored, or even rejected, as a basis for a sentence departing from the Guideline range. After *Booker,* these factors too, and the weights ascribed to them, are advisory only. Thus, the First Circuit has observed "that a factor which is discouraged or forbidden under the Guidelines does not automatically make it irrelevant when a court is weighing the statutory factors apart from the Guidelines. The Guidelines -- being advisory -- are no longer decisive as to factors any more than as to results." *United States v. Smith,* 445 F.3d 1, 5 (1st Cir. 2006).

**C. 18 U.S.C. § 3553**

In a post-*Booker* world, sentencing ultimately turns on § 3553(a)'s command that the court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." On its face, this provision creates an independent limitation on every sentence this Court may impose. The First Circuit has termed it the "'parsimony' principle, that is, the statutory guidance that a sentence should be no higher than needed to meet statutory goals." *United States v. Scherrer,* 444 F.3d 91, 95 (1st Cir. 2006).

Subsection (2) requires sentences:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; ....

In addition to this limiting principle of minimum necessity, § 3553(a)(1) requires the Court to consider both "the nature and circumstances of the offense and the history and characteristics of the defendant; . . . ." This command effectively enlarges the range of factors to which this Court must give substantial weight. The Guidelines tend to stress the "nature and circumstances of the offense," while § 3553(a) requires this Court to give comparable weight to "the history and characteristics of the defendant" without the limitations previously imposed by the Guidelines. *See, e.g., United States v. Ranum,* 353 F.Supp.2d 984 (E.D.Wis. 2005); *United States v. Smith,* 359 F.Supp.2d 771 (E.D.Wis. 2005); *Simon v. United States,* 361 F.Supp.2d 35 (E.D.N.Y. 2005) (all assessing a variety of characteristics of the offender and his circumstances as part of post-*Booker* sentencing). In particular, age, physical condition, family obligations, prior charitable activity and the collateral impact on the defendant – such as loss of job and position – are now either relevant where they were not before, or else may be weighted more heavily than the Guidelines suggested. *See, Ranum, supra* at 990-991 (weighting many of these factors); *cf., Koon v. United States,* 518 U.S. 81 (1996) (acknowledging that career consequences may be a relevant factor pre-*Booker,* but rejecting their use in civil rights cases where such consequences are already taken into account by the Base Offense Level).

Section 3553(a)(3) requires this Court to consider "the kinds of sentences available." As the statutory range is 0 to 5 years, with no mandatory minimum, this mandate includes consideration of home confinement and straight probation.

Subparts (a)(4) and (5) of § 3553 require consideration of the applicable Guideline range after appropriate adjustments, plus any Policy Statements issued by the Sentencing Commission. The further consideration listed in subpart (6), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" is effectively satisfied by the concurrent consideration of the Guidelines in their present advisory function. *See, Smith, supra* at 7.

Lastly, as the PSR observes, there is no specifically identifiable victim in this case and, consequently, no need for restitution.

## II. <u>APPLICATION OF THE LAW</u>

### A. <u>Section 3553(a)(2): The Minimum Sentence Necessary</u>

Turning first to the § 3553(a)(2) factors which define a "sufficient, but not greater than necessary" sentence, defendant suggests that only the first is seriously at issue here: the need for the sentence to reflect the gravity of the offense. Deterrence will be satisfied by the most minimal sentence, even one of probation or home confinement. No rational corporate executive will be encouraged to commit crimes when the result is a criminal sentence. Even the fact of a criminal charge is profoundly injurious to a businessperson's career. A conviction is disastrous.

As for the third factor, public protection from the defendant, Ms. Driscoll presents a threat to no one. The offense at bar disfigures an otherwise honorable career. Given her prosecution, never mind her conviction, Ms. Driscoll will never again work in a responsible position. This factor is irrelevant to the Court's determination.

And, as for the final factor, the need for rehabilitation, this too carries no weight. Nothing in the prison system will in any way provide her with "needed educational or vocational training, medical care, or other correctional treatment ...." Ms. Driscoll is 67 years of age. Upon her release, her life will be centered around home and family.

Turning back therefore to the first factor – the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" – Ms. Driscoll acknowledges that she has been convicted of an exceedingly serious criminal offense. Deprivation of the honest services of a public official requires substantial punishment, as the Guidelines and the PSR both recognize. Ms. Driscoll accepts this reality as the necessary result of the jury's verdict.

As advisory "generalizations," *Jimenez-Beltre, supra* at 518, the Guidelines bear consideration here in assessing the appropriate level of punishment. At the same time, 18 U.S.C. § 1341 authorizes a sentence anywhere from 0 to 5 years. There is no mandatory minimum. By enacting this sentencing range, Congress has embraced the reality that there will be cases of honest services fraud where there should be no incarceration at all, and others where incarceration should be minimal and done in home confinement.

This is one of those cases, not because one particular factor overrides the normative Guidelines sentencing range, but because of an extraordinary confluence of factors, all of which support a sentence of probation or, at the outside, a split sentence consisting of home confinement and probation. Mrs. Driscoll will address these in sequence.

**B. <u>Section 3553(a)(1): The Nature and Circumstances of the Offense</u>**

As noted *supra,* honest services mail fraud is a serious offense. Having said that, there are several circumstances here which militate in favor of a lesser sentence than the range suggested by the Guidelines.

*First,* this offense was not committed for personal gain. This is not a defense to the government's charges, but it is an aspect of Mrs. Driscoll, the woman, which this Court should consider. No allegation has been made that Mrs. Driscoll was seeking to feather her own nest. Rather, she was attempting to assist a non-profit hospital and its provision of health care services.

*Second,* the trial evidence established that Mrs. Driscoll opposed the hiring of John Celona in the first instance. Acting in a subordinate capacity, she acquiesced to his employment against her better judgment. Once again, this is neither a defense to the charge, nor an excuse. But it is a fact which militates in the favor of a sentence below the normative range.

**C. Section 3553(a)(1): The History and Characteristics of the Defendant**

Turning now to the other half of the § 3553(a)(1) calculus – the history and characteristics of the defendant – the *Booker* decision requires that these factors be weighted on their own merits, after due consideration given to the position of the Sentencing Commission.

1. Age and Physical Condition

Mrs. Driscoll is sixty-seven years of age and in poor health. As a practical matter, any sentence will weigh unusually heavily upon her in several ways. First, and most critically, any sentence for one of her age will be inherently unequal to the same sentence for a younger offender, because the sentence will be a greater percentage of the time she is given to live on this earth. *See,* Note, *The Sentencing of Elderly Criminals,* 29 Am.Crim.L.Rev. 1025-44 (1992). Second, the inherent difficulty of prison life weighs uniquely heavily on elderly offenders. *Cf.*, *Koon, supra* (recognizing that confinement for a police officer may be more difficult than ordinary offenders).

Section 5H1.1 of the Guidelines takes the position that "[a]ge . . . is not ordinarily relevant in determining whether a departure is warranted." On the other hand, this same Policy

Statement observes that "[a]ge may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration."

Mrs. Driscoll meets these criteria, and hence could be eligible for a departure even under the original Guidelines system. Now that the Guidelines are advisory only, this Court may assess Mrs. Driscoll's age and physical condition unfettered by the technical language of § 5H1.1. *United States v. Davis,* 458 F.3d 491, 498 (6th Cir. 2006)(post-*Booker,* trial court has "a freer hand to account for the defendant's age"), citing *United States v. Smith,* 445 F.3d 1, 5, (1st Cir. 2006). *Compare, United States v. Doe,* 921 F.2d 340 (1st Cir. 1990) (affirming refusal to depart on the basis of age).

2. Physical Condition

### 3. Impact on Family

Defendant's responsibility for a family member is another factor that the Sentencing Commission has discouraged as a basis for a departure. § 5H1.6. The *Application Note,* however, carves out a subset of cases in which the need for a defendant's caretaking services might warrant a departure under traditional Guidelines law, *i.e.,* where the service of an incarcerative sentence would (1) "cause a substantial, direct and specific loss of essential caretaking . . ."; (2) that "the loss of caretaking . . . substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant"; and (3) "the loss of caretaking . . . is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking . . . irreplaceable to the defendant's family." § 5H1.6 *Commentary, Application Note* (1)(B).[1]

Here too, Mrs. Driscoll meets the letter of these requirements. However, under a scheme where these requirements are advisory only, it is enough that she meets their spirit. Of particular concern is her husband's heart, which has ceased beating and required shock therapy multiple times in the last year. *See, e.g., United States v. Haversat,* 22 F.3d 790 (8th Cir. 1994)(Pre-*Booker,* departure upheld where defendant was needed to keep an eye on his wife's regressions in order to prevent more serious complications).

Mr. and Mrs. Driscoll are a devoted elderly couple. They are mutually dependent upon each other as they face the struggles that old age inevitably brings. No episodic intervention by a home health aid, or even increased visits by their daughter, can possibly replace this relationship.

### 4. Personal Impact

[1] This § 5H1.6 *Note* was added after 1998, but addresses the identical Guideline language that appeared in 1998 version of § 5H1.6.

Mrs. Driscoll has fallen from the apex of Rhode Island's business community, a woman previously respected and admired, to the status of a felon. The obloquy attached to this prosecution is overwhelming. Mrs. Driscoll is very unlikely to work again in a responsible corporate position.

She is not asking for sympathy because of the impact a criminal conviction inevitably has on a professional's life. But this is a fact that sets her apart from someone who might be able to take up their business life again following service of her sentence. Martha Stewart comes to mind.

5. Charitable Endeavors

From her earliest years, Mrs. Driscoll has been active in working for and helping others. Her activity goes far beyond the norm.

Mrs. Driscoll's entire professional career was spent working in public service and for not-for-profit agencies. More importantly, she has worked without remuneration for a wide variety of charitable and civic institutions. These include the March of Dimes of Rhode Island (a member of the Board of Trustees); the Health and Education Leadership for Providence Coalition; the Rhode Island Heart Association (Chair of the Executive Committee); the Northwest Rhode Island Mental Health Association (a member of the Board of Trustees); Leadership Rhode Island; the Health Services Council of the Rhode Island Department of Health (more than ten years of service as a council member); the Rhode Island College Foundation (volunteer for many years and 2001 Alumna of the Year); and the senior citizens advocacy group, Aging 2000 (Trustee and Co-chair of this consortium). Mrs. Driscoll also serves as a lector at St. Philip's Church in Greenville. She has volunteered and taught religious education at St. Philip's for more than 20 years. In addition, for many years, Mrs. Driscoll was a

fixture at the City of Providence's Christmas in April program, where she and many others went out and did hands-on manual labor for those in need.

While many individuals in executive positions talk about the importance of community service, Frances Driscoll has, for decades, made it an integral part of her life.

The Guidelines discounted charitable works as a basis for departure. § 5H1.11. Nevertheless, even before *Booker*, some courts recognized that, where a defendant's community service was unusual, it might serve as a predicate for departure. *See, United States v. Serafini,* 233 F.3d 758 (3rd Cir. 2000); *United States v. Jones,* 158 F.3d 492 (10th Cir. 1998).

With the advent of *Booker,* the weight of this factor has substantially shifted. This shift was exposed in high relief in a series of decisions concerning a defendant named Thurston. Mr. Thurston appeared before the First Circuit in round one, pre-*Booker,* asking the Circuit to uphold a downward departure based on his many good works, including hours of weekly work at his church, tithing his income, and taking needy family members and others into his home. *United States v. Thurston,* 358 F.3d 51, 79-80 (1st Cir. 2004). The First Circuit concluded that he "appears to have lived a creditworthy life" but for his crime. *Id.* at 79. The Court reversed the departure nonetheless, holding that his works were not sufficiently "exceptional" to warrant a departure under the Guidelines.

*Booker* intervened while the case was still pending, and Mr. Thurston's sentence ultimately came back before the First Circuit for post-*Booker* review. The Court reversed field, holding that "under the more flexible [post-*Booker*] approach", Thurson's good works might warrant departure from the Guideline position after all. United *States v. Thurston,* 456 F.3d 211, 219 (1st Cir. 2006).

6. Aberrant Act

No one doubts that this conviction, and the conduct that led to it, is an exception to an otherwise praiseworthy personal and professional life. This conclusion is dictated, not by her complete absence of prior contacts with the law, but by the extraordinary decency and caring which Mrs. Driscoll has exhibited throughout her life for others.

Aberrant behavior has long been a basis for departure under the Guidelines. As of 1998, the date of the Guidelines Manual applicable here, the First Circuit took the position that the determination of whether an offense constituted a single act of aberrant behavior would be determined on "the totality of the circumstances." *United States v. Grandmaison,* 77 F.3d 555 (1st Cir. 1996). District courts were admonished to consider such factors "as pecuniary gain to the defendant, charitable activities, prior good deeds, and efforts to mitigate the effects of the crime in deciding whether a defendant's conduct is aberrant in terms of other crimes." *Id.* (citation omitted). Under *Grandmaison,* a departure for aberrant behavior was not limited to a single spontaneous action, but could apply to a crime which involved a series of discrete acts. *Id.* Mrs. Driscoll's case meets these requirements.

*Grandmaison* was superseded later by cases recognizing that the Sentencing Commission had restricted departures for aberrant behavior to criminal transactions committed without significant planning and of limited duration. *See, United States v. Rivera-Rodriguez,* 318 F.3d 268 (1st Cir. 2003). Even if this change in law were to be applied retrospectively to Mrs. Driscoll, and it should not,[2] the *Booker* decision effectively moots the issue, as these technical requirements for departure are advisory only. *Smith, supra.* Consequently, this Court has both

---

[2] The Guidelines' treatment of a single aberrant act was amended on November 1, 2000 and then again on October 27, 2003. The Circuits are split on whether these amendments were substantive and, hence, on whether they can be applied retroactively without violating the *ex post facto* clause. Compare, *United States v. Alvarez-Pineda,* 258 F.3d 1230 (10th Cir. 2001) and *United States v. Gonzales,* 281 F.3d 38 (2nd Cir. 2002). However, as a technical matter, here the 1998 version of the Guidelines is being used.

the ability and the responsibility, as it sees fit, to consider the anomaly of Mrs. Driscoll's offense conduct as a basis for imposing a sentence which varies from the Guideline range.

## III. CONCLUSION

For these reasons, and those that may appear on further litigation of this matter, Mrs. Driscoll asks this Court to impose a sentence of probation or, in the alternative, a split sentence involving home confinement followed by a period of probation.

Respectfully submitted,
FRANCES P. DRISCOLL
By her attorney,

Kevin Bristow, Esq. (#3984)
76 Westminster Street
Providence, RI 02903
401-521-8000

## CERTIFICATION

I hereby certify that on the ~~24~~ 30th day of January, 2007, the foregoing Sentencing Memorandum of Frances P. Driscoll was filed conventionally with the Court by hand delivery, and served by hand delivery on Louis M. Matos, Assistant United States Attorney, Fleet Center, 8th Floor, 50 Kennedy Plaza, Providence, RI 02903.

Kevin J. Bristow, Esq.