UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CR. No. 06-02-04L |
| | ) | |
| ROBERT A. URCIOLI, | ) | |
| FRANCES P. DRISCOLL, and | ) | |
| ROGER WILLIAMS MEDICAL CENTER | ) | |

**FRANCES P. DRISCOLL'S MOTION TO STRIKE CERTAIN ALLEGATIONS FROM THE INDICTMENT OR, IN THE ALTERNATIVE, TO PRECLUDE SUBMISSION OF THE INDICTMENT TO THE JURY**

Defendant Frances P. Driscoll, by her attorneys, moves pursuant to F.R.Crim.P. 7 and 12(b) to strike certain allegations the Indictment in light of defendant's acquittal of Count I charging mail fraud conspiracy and the decision of the First Circuit Court of Appeals in *United States v. Urciuoli,* 513 F.3d 290 (1st Cir. 2008). In particular, she asks that this Court:

(1) Delete the following paragraphs from the Indictment: ¶¶ 14, 17-20, 22, 23, 25, 28-29, 32, 33, 35-44, 47-49, 51, 53-71, 73, 75, 99, 100, 102;

(2) Delete from ¶ 96 the words "deceit, favoritism, bias, conflict of interest and self-enrichment" and replace them with the words "deceit and bribery."

(3) Delete from ¶ 101 the words "and Chairman of the Senate Corporations Committee";

(4) Delete the cross-reference in ¶ 103 to "overt acts", listed in the conspiracy count;

(5) In the alternative, preclude submission of the Indictment to the jury.

Defendant states her reasons more fully in the accompanying memorandum, which she incorporates herein by reference.

WHEREFORE, defendant asks that her motion be granted.

Respectfully submitted,
Frances P. Driscoll
By her attorneys,

/s/ John A. MacFadyen

John A. MacFadyen (#1209)
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903
401-751-5090

/s/ Kevin Bristow

Kevin Bristow, Esq. (#3984)
76 Westminster Street
Providence, RI 02903
401-521-8000

**CERTIFICATION**

I hereby certify that on the 7th day of May, 2008, a copy of this Motion and Memorandum to Strike Certain Allegations From the Indictment was filed electronically and that it is available for viewing and downloading from the Court's ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ John A. MacFadyen

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CR. No. 06-02-04 (MML) |
| | ) | |
| ROBERT A. URCIOLI, | ) | |
| FRANCES P. DRISCOLL, and | ) | |
| ROGER WILLIAMS MEDICAL CENTER | ) | |

**FRANCES P. DRISCOLL'S MEMORANDUM IN SUPPORT OF HER MOTION TO STRIKE ALLEGATIONS OF THE INDICTMENT AND FOR APPROPRIATE INSTRUCTIONS**

Defendant Frances P. Driscoll has moved pursuant to F.R.Crim.P. 7(d)(e) and 12(b) to strike certain allegations of the Indictment in light of defendant's acquittal of Count I charging mail fraud conspiracy and the decision of the First Circuit Court of Appeals in *United States v. Urciuoli,* 513 F.3d 290 (1st Cir. 2008). *See* Indictment, attached as *App. A.* In the alternative, she requests that the Indictment not be submitted to the jury for use in its deliberations.

## I. Deletion

### A. Acquittal of mail fraud conspiracy

The Double Jeopardy Clause of the United States Constitution and the incorporated doctrine of collateral estoppel mandate that all references to Ms. Driscoll in Count 1 charging mail fraud conspiracy be deleted in light of her acquittal. U.S.Const. Amend. V; *Ashe v. Swenson,* 397 U.S. 436 (1970); *United States v. Henry,* 519 F.3d 68, 2008 U.S.App. LEXIS 5026 *6 (Double Jeopardy "'shields a defendant from second prosecution for the same offense after either a conviction or an acquittal,…" (quoting *United States v. Pacheco,* 434 F.3d 106, 111-112 (1st Cir. 2006)(citation omitted))). This redaction should include not only the base charge in ¶ 14, but also the allegations that she participated in any "Means and Methods of the Conspiracy" or in any "Overt Acts" to carry out the conspiracy.

Driscoll therefore asks that the following paragraphs of the Indictment be either amended to omit any reference to her or deleted entirely:

**Count 1**:

(a) ¶ 14 alleging that Ms. Driscoll conspired to commit mail fraud;

(b) "Means and Methods of the Conspiracy": ¶¶ 17-20 alleging that Driscoll participated in various parts of the conspiracy;

(c) "Overt Acts": ¶¶ 22, 23, 25, 28-29, 32, 33, 35, 37-44, 47-49, 51, 53-71, 73 and 75 alleging that Ms. Driscoll took various actions as "Overt Acts" "in furtherance of the conspiracy and to accomplish its objectives and purposes" (*Indictment* at p. 7).[1]

These last paragraphs are particularly critical. The risk of jury confusion in this case is great. Because Ms. Driscoll is charged with aiding and abetting a fraudulent "scheme" that reads like a twin sister to the conspiracy charge, the jury will be hard pressed to distinguish the acquitted mail fraud conspiracy from the still-viable substantive mail fraud charge.[2] All of the references to Ms. Driscoll in Count I fall under the inculpatory conspiracy monikers like "Overt Acts," which the Indictment describes as acts "in furtherance" of the conspiracy undertaken "to accomplish its objectives and purposes." *Indictment* p. 7. Therefore, even passive allegations (such as ¶ 28, which alleges that Celona began working for RWMC and reporting to Ms. Driscoll) must be excised from the "overt acts" portion of the Indictment.

---

[1] Mr. Sangermano was also acquitted of the conspiracy charge, as well as the mail fraud allegations against him. Consequently, as with Ms. Driscoll, all references in the indictment to Mr. Sangermano should be stricken.

[2] Defendant has filed a concurrent motion for a severance based *inter alia* on the jury's inability to make such distinctions in the context of these charges and this indictment. *See Frances P. Driscoll's Memorandum in Support of Her Motion for Relief from Prejudicial Joinder.*

**<u>Count 2</u>:**

(a) "<u>Means and Methods of the Scheme</u>": ¶¶ 99, 102 alleging that Ms. Driscoll was criminally complicit in creating a consulting agreement with John Celona to provide him money in exchange for political support in a way which was deliberately hidden from the Ethics Commission.

These accusations are word-for-word identical to the conspiracy allegations made in ¶¶ 17 and 20. As discussed more fully in *Frances P. Driscoll's Memorandum in Support of Her Motion For Relief From Prejudicial Joinder,* Ms. Driscoll's acquittal on the conspiracy charge constitutes a determination that she did not "participat[e] in a plan or scheme," Jury Instructions, 10/2/06:176, with Mr. Urciuoli and Mr. Celona to create a no-show job to cover his political activities. In this circumstance, the acquittal on the conspiracy constitutes a bar to a further prosecution for substantive mail fraud except on an aiding and abetting theory which can be premised on different facts, *i.e.,* on Ms. Driscoll's continuing involvement with Mr. Celona *after* his retention by RWMC as a consultant. *See Sealfon v. United States,* 332 U.S. 575 (1948) (acquittal on conspiracy bars prosecution of substantive offense if facts necessary to latter necessarily decided by acquittal); *Ottomano v. United States,* 468 F.2d 269 (1st Cir. 1972), *cert. denied* 409 U.S. 1128 (1973) (finding no bar where substantive charge prosecuted on aiding and abetting theory).

**B. <u>The *Urciuoli* Decision</u>**

The First Circuit's decision in *Urciuoli, supra* has left a number of the Indictment's allegations untenable.

**<u>First</u>**, there are the allegations relevant to the rescue runs, which the First Circuit has held do not constitute any kind of crime. *Urciuoli, supra* at 296. The surviving mail fraud count

against Ms. Driscoll (Count 2) refers to these rescue runs when it incorporates by reference all of the "Overt Acts" listed in the conspiracy count. Indictment ¶ 103. If the government keeps this framework in the amended Indictment, it will have to excise what are now ¶¶ 35-38 in order to eliminate the rescue run allegations.

**Second**, there is the overbroad definition of "honest services." The Indictment charges in Count II that Rhode Island citizens have been deprived of their right to have Celona's services "performed free from deceit, *favoritism, bias, conflict of interest* and self-enrichment." Indictment ¶ 96 (emphasis supplied).[3] According to *Urciuoli, supra* at 299, this language is overbroad and will be confusing to the jury. "[F]avoritism, bias, [and] conflict of interest" are not necessarily antithetical to the honest services due under 18 U.S.C. § 1341 where state law allows, even authorizes, some measure of conflict. *Urciuoli* recognizes that Rhode Island law permits some measure of conflict, *id.* at 245, and that "state law [may] bear on what 'services' are owed by a state legislator," particularly where the government chooses to proceed on a "conflict of interest" theory. *Id.* at 298-299. That theory is what ¶ 96 asserts as it is currently drafted.

Because "the concept of 'honest services' is vague and undefined by statute," *Urciuoli, supra* at 293, it is critical to "cabin[] the statute – a serious crime with severe penalties – lest it embrace every kind of legal or ethical abuse remotely connected to the holding of governmental position." *Id.* at 294, citing *United States v. Sawyer,* 85 F.3d 713, 725 (1st Cir. 1996)(*Sawyer I*).

The language of ¶ 96 of the Indictment does not "cabin" the statute to minimize its vagueness and curtail its overbreadth. To the contrary, it expands the statutory language to

[3] The Indictment makes the same allegation in Count 1 at ¶ 14, which defendant does not discuss here because that Count is no longer applicable to her. It does, however, suffer from the identical defect.

encompass activity (deprivation of a presumed right to conflict-free action by Celona) that is not illegal under state law, is not part of the "honest services" due under 18 U.S.C. § 1341, and apparently is not the activity which the government is charging as criminal.

To address this last first, the government presumably will not proceed on "conflict of interest alone" (*Urciuoli, supra* at 298) in the second trial of this case, *i.e.,* on the theory that Ms. Driscoll deprived Rhode Islanders of Celona's honest services simply by participating in the hiring process and thereby creating a "conflict of interest" between his employment and his duties as a legislator. *Id.* at 298-299. That was not its position at the first trial. As the First Circuit observed: "[T]he government's position throughout was that Celona was being paid for performing official acts – specifically, that the case was one of *quid pro quo* bribery with payments routed through the Village as a disguise." *Id.* at *23.

Nor do Rhode Island citizens have a right under Rhode Island law to have Celona's services performed "free from conflict of interest." To the contrary, Rhode Island operates with a part-time citizen legislature whose members hold outside jobs that necessarily give rise to conflicts of various kinds which state law controls by regulation, not prohibition. As the First Circuit noted, "[u]nder Rhode Island law, apparently Celona as a part-time legislator could have been openly paid by RWMC to advocate with local officials." *Id.* at 295. Any claim that a "conflict of interest alone" could constitute federal honest services fraud is legally incorrect and would be highly problematic in light of *Urciuoli*. *Id.* at 298.

Paragraph 96, however, says that Rhode Island citizens do have a right to services "free" of "conflict" and that Ms. Driscoll is charged with depriving deprived them of that very right. *Urciuoli* is clear that such language has no place in this Indictment, where it will only confuse. The Appeals Court has expressly suggested that "precautions against such possible confusion"

should be taken at retrial. *Id.* at 299. If those precautions are not taken, the First Circuit has indicated that any ensuing verdict may be vulnerable on appeal. *Id.* at 298-299.

In sum, defendant asks that ¶ 96 of the Indictment be amended so that the final clause of that paragraph ("and to have those services provided free from deceit, favoritism, bias, conflict of interest and self-enrichment") reads instead: "… and to have those services performed free from bribery and deceit." This change will have two effects: It will retain the core elements the government is asserting, *i.e.,* bribery (¶ 97) and deceit (¶ 98). And it will eliminate the other loose terminology ("favoritism", "bias", "conflict of interest"), all of which connote lack of "disinterested service", which is what the First Circuit found overbroad, troubling and inconsistent with the government's theory of the case. *Urciuoli, supra* at 299.

**Third**, Driscoll asks that ¶ 100 be deleted. This paragraph is now legally incorrect in a way that is both highly prejudicial to Ms. Driscoll, confusing for the jury and inconsistent with the *Urciuoli* ruling.

Paragraph 100 states that: "It was further part of the scheme that the defendants, URCIUOLI, *DRISCOLL*, SANGERMANO, and RWMC, along with Celona, knowingly and willfully *failed to disclose* to the public that *Celona had an improper conflict of interest which deprived the State of Rhode Island and its citizens of their intangible right to his honest services* in that Celona obtained money from RWMC in exchange for his political support." (emphasis supplied). There are several problems with this allegation.

The first is the same problem limned *supra* in relation to ¶ 96: Paragraph 100 asserts that the thing which "deprived the State of Rhode Island and its citizens" of their right to Celona's honest services is the "improper conflict of interest." The crime thus is not the *failure to disclose* the conflict, but the *conflict itself*. This is legally wrong. For all the reasons

articulated above*,* it is not a deprivation of honest services for Celona to hold a job which gives rise to a conflict of interest. Every employed legislator in Rhode Island is in such a position. Nor was that the government's actual theory of the case in the first trial -- not according to the First Circuit. In order for allegations in this ballpark to amount to honest services fraud, the government must assert that a defendant "fail[ed] to disclose a conflict of interest, resulting in personal gain", *United States v. Woodward,* 149 F.3d 46, 57 (1st Cir. 1998), not that she failed to disclose a conflict where the conflict itself was the condition which constituted the honest services deprivation.

This is the kind of confusion against which the First Circuit cautioned in *Urciuoli.* Instead of precise pleading, the Indictment appears to throw up against the wall whatever words sound good in an effort to see what might stick. Such "wet spaghetti" pleading is not acceptable in light of *Urciuoli.* To the contrary, the First Circuit found this Indictment problematic precisely because it "refer[s] to 'conflict of interest'" in a way that is not appropriately cabined within one of the two available honest services theories. *Urciuoli, supra* at 299.

Second, and equally problematic, is the fact that Ms. Driscoll is a private individual with no duty whatever to disclose Celona's conflict of interest. Only public officials owe such duties. "'[T]he affirmative duty to disclose material information arises out of [the] official's fiduciary relationship to [the public].'" *Sawyer I, supra* at 732, quoting *United States v. Silvano,* 812 F.2d 754, 758 (1st Cir. 1987). The Indictment itself acknowledges this. Indictment at ¶ 10 ("As an elected official of the State, Celona therefore owed the state and its citizens a duty to: … (c) disclose conflicts of interest and other material information in matters over which he exercised influence, authority, and discretion that resulted in his personal gain."). The Indictment does not allege (and cannot allege) that Ms. Driscoll had any equivalent responsibility. She does not. It is

thus a legal impossibility for any "failure to disclose" on Ms. Driscoll's part to be "part of the scheme" as alleged in ¶ 100.

Thus, this paragraph should be stricken for two equally important reasons. First, it is legally incorrect. And, second, it invites even more jury confusion by muddling the difference between Celona's legal responsibilities as a public official and Driscoll's more limited responsibilities as a private party, particularly where disclosure is concerned.

**Fourth**, Ms. Driscoll asks that ¶ 101 be amended to delete the words "and Chairman of the Senate Corporations Committee." This paragraph asserts that Ms. Driscoll "influenced and affected Celona in his official actions as a State Senator *and Chairman of the Senate Corporations Committee* …" The Indictment simultaneously acknowledges, however, that she could not have influenced or affected him in his role as Senate Corporations Committee Chairman, as he assumed that position only after she had left RWMC's employ. Indictment at ¶ 2 (Ms. Driscoll had left RWMC in May of 2000); *id.* at ¶ 6 (Celona became Chairman of the Senate Corporations Committee on January 4, 2001). *See also, Urciuoli, supra* 292 (Driscoll left RWMC in 2000); *id.* at 296 (Celona became chair of powerful health-related committees in 2001 and 2002).

This is no mere minor mistake in detailing. Because the government's sham-job case makes sense only if Celona has enough power to deliver something of value to RWMC in return, Celona's alleged power over health care issues was a centerpiece of the government's case. But Celona had no such power when Ms. Driscoll worked at RWMC. He gained that power only after she had left, when he became Corporations Committee Chairman, as the Indictment itself alleges.

Paragraph 101 disregards this fact. In so doing, it creates an impression that is unfair and indisputably wrong, according to the facts as the government has alleged them in the Indictment and as the evidence at trial confirmed. *Urciuoli, supra* at 292, 296. For these reasons, Ms. Driscoll asks that this Court strike the words "and Chairman of the Senate Corporations Committee" from ¶ 101 of the Indictment.

**Fifth**, Paragraph 103 must be amended to eliminate its cross-reference to ¶¶ 21 to 94 listing the overt acts of the conspiracy which now cannot be constitutionally charged to Ms. Driscoll. At a minimum, any cross-reference to activities allegedly undertaken in furtherance of a conspiracy would be highly confusing to the jury in light of Ms. Driscoll's acquittal of conspiracy. At a maximum, this allegation exposes Ms. Driscoll to relitigation of facts necessarily determined in her favor at the first trial. *See Sealfon, supra*.

Respectfully submitted,
Frances P. Driscoll
By her attorneys,

/s/ John A. MacFadyen

John A. MacFadyen (#1209)
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903
401-751-5090

/s/ Kevin Bristow

Kevin Bristow, Esq. (#3984)
76 Westminster Street
Providence, RI 02903
401-521-8000

**CERTIFICATION**

I hereby certify that on the 7th day of May, 2008, a copy of this Motion and Memorandum to Strike Certain Allegations From the Indictment was filed electronically and that it is available for viewing and downloading from the Court's ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ John A. MacFadyen