*Confidential*
*Attorney-Client Privileged Material*
*DO NOT DISTRIBUTE OR REPRODUCE*

# *ROGER WILLIAMS MEDICAL CENTER, INC.*

## Report to Executive Committee of Board of Trustees

F. Dennis Saylor, IV, Esq.
Eugenia M. Carris, Esq.
Goodwin, Procter & Hoar LLP
Exchange Place
Boston, Massachusetts 02109

A-1

July 2, 1998

*Confidential*
*Attorney-Client Privileged Material*
*DO NOT DISTRIBUTE OR REPRODUCE*

# INTRODUCTION

This report is submitted by Goodwin, Procter & Hoar LLP to the Executive Committee of the Board of Trustees of Roger Williams Medical Center, Inc.

On May 15, 1998, the law firm of Goodwin, Procter & Hoar LLP was engaged by the Executive Committee of the Board of Trustees of Roger Williams Medical Center, Inc., to conduct a review of certain activities of Robert A. Urciuoli, the President and Chief Executive Officer of the Center and its wholly-owned subsidiary, Roger Williams Hospital.[1] The review was undertaken in response to concerns that had been expressed by certain employees of the hospital that Mr. Urciuoli had inappropriately charged personal expenses and undertaken other activities that were detrimental to the interests of the hospital. This report sets forth the results of that review.

The allegations against Mr. Urciuoli may be grouped into four principal categories: (1) alleged abuse of meal and entertainment expenses, including the charging of personal expenses to the hospital; (2) alleged abuse of travel expenses, again including the improper charging of personal expenses; (3) alleged charging of miscellaneous personal expenses to the hospital, including home and office furnishings, personal telephone calls, and charitable contributions; and (4) alleged improper efforts to direct vendor and other contracts to personal friends. In addition, Mr. Urciuoli is alleged to have received improper loans against accrued vacation

[1] For the sake of convenience, Roger Williams Medical Center, Inc., and Roger Williams Hospital will be referred to collectively as "the hospital," unless the context indicates otherwise.

*Confidential*
*Attorney-Client Privileged Material*
*DO NOT DISTRIBUTE OR REPRODUCE*

2. *Operating Room Contract*

We were also asked to investigate the contract to Ernest O. DiSaia of International Construction Management Corp. to be the owner's representative for the construction of the new hospital operating room. Although the operating room committee did not award Mr. DiSaia the contract, it has been alleged that Mr. Urciuoli made certain Mr. DiSaia was given a position as owner's representative because he is a personal friend.

Mr. DiSaia was, in fact, hired as the owner's representative. The letter agreement establishing this arrangement is set forth at Exhibit 16. The agreement calls for the payment of $62,500. Mr. DiSaia is also a personal friend of Mr. Urciuoli's, which Mr. Urciuoli acknowledges.

Mr. DiSaia, who is an executive of a successful construction company, appears qualified for the position. We have not been made aware of any impropriety in the hiring of Mr. DiSaia, other than the possible appearance of impropriety arising out of his friendship with Mr. Urciuoli.

3. *Celona Consulting Contract*

We were asked to investigate the allegation that state Senator John A. Celona (D-North Providence) was given a "no-show" job at the Village at Elmhurst assisted living center as payment for his efforts on behalf of the hospital during the Columbia/HCA matter.

Mr. Celona formerly owned a store in North Providence that sold lawnmowers, snow blowers, and other power equipment. The terms of the contract with Mr. Celona were negotiated by the

*Confidential*
*Attorney-Client Privileged Material*
*DO NOT DISTRIBUTE OR REPRODUCE*

hospital's attorney, James R. McGuirk of the Providence law firm of Edwards & Angell. Mr. McGuirk also obtained an opinion from the State Ethics Commission addressing the ethical issues created by the arrangement.

An article describing the arrangement appeared in the *Providence Journal* on May 1, 1998. As a result, some employees became concerned that Mr. Celona was not qualified for the position and was getting a $30,000 check for doing no work.

Mr. Urciuoli denied that the senator is a "ghost consultant," and stated that he had been active in senior citizen affairs and was qualified for the position. We have reviewed the consulting agreement, the Ethics Commission opinion, and various other materials relating to Mr. Celona's position. Many of these materials are memoranda to Francis P. Driscoll, Senior Vice-President, External Affairs, Corporate Community and Development, dated after the commencement of this investigation and after the May 1, 1998 *Providence Journal* article. However, the records do reflect the performance of work by Mr. Celona in February and March. Under the circumstances, we find no basis for concluding that the contract was illegal or unethical.

4. *McDermott/O'Neill Lobbying Contract*

We were asked to investigate a $30,000 payment to McDermott/O'Neill & Associates, Inc., a lobbying firm in Massachusetts. It was alleged that Mr. Urciuoli's brother-in-law, Joseph R. Paolino, Jr., is a partner at McDermott/O'Neill.

A-4