# ATTACHMENT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COPY

| | |
|---|---|
| * * * * * * * * * * * * | * CRIMINAL ACTION |
| USA | * 06-0002T |
| | * |
| VS. | * AUGUST 24, 2006 |
| | * |
| ROBERT A. URCIUOLI, | * |
| ET AL | * PROVIDENCE, RI |
| * * * * * * * * * * * * | * |

HEARD BEFORE THE HONORABLE ERNEST C. TORRES

CHIEF JUDGE

(MOTIONS)

APPEARANCES:

| | |
|---|---|
| FOR THE GOVERNMENT: | DULCE DONOVAN, ATTY.<br>and LUIS MATOS, ESQ.<br>U.S. Attorney's Office<br>50 Kennedy Plaza<br>Providence, RI 02903<br>(401) 709-5000 |
| FOR THE DEFENDANT<br>Robert A. Urciuoli: | MICHAEL J. CONNOLLY, ESQ.<br>Hinckley, Allen & Snyder, LLP<br>28 State Street<br>Boston, MA 02109<br>(617) 345-9000 |
| FOR THE DEFENDANT<br>Frances P. Driscoll: | KEVIN J. BRISTOW, ESQ.<br>505 Turks Head Building<br>Providence, RI 02903<br>(401) 521-2800 |

APPEARANCES: (Continued)

| | |
|---|---|
| FOR THE DEFENDANT Peter J. Sangermano, Jr.: | A. JOHN PAPPALARDO, ESQ. and JAMES P. REDDING, ESQ. Greenberg Traurig, LLP One International Place Boston, MA 02110 (617) 310-6000 |
| Court Reporter: | Anne M. Clayton, RPR One Exchange Terrace Providence, RI 02903 |

Proceeding reported and produced by computer-aided stenography

THE COURT: Good morning.

THE CLERK: This is criminal action 06-02-01 United States of America versus Robert Urciuoli.

THE COURT: In considering what counsel had to say yesterday and, of course, in reviewing your memos in this matter, it occurs to me that the root of this controversy is the defendant's contention that Roger Williams' decision not to continue paying his legal fees, whether it's based on Roger Williams' belief, whether correct or incorrect, that otherwise, that if they continued to pay the legal fees, the Government would consider that to be a violation of the deferred prosecution agreement rather than an exercise of Roger Williams' independent judgment that either it is prohibited by Rhode Island law from continuing to pay Mr. Urciuoli's legal fees or that it is no longer required to do so and has decided that it's not appropriate to do so.

And it occurs to me that we can at least resolve that issue by my simply asking the Government whether, if Roger Williams should independently decide, if it did independently decide, or if it should independently decide that it wishes to resume paying Mr. Urciuoli's legal fees or it is obligated to pay Mr. Urciuoli's legal fees, whether it's the Government's position that

that would be a violation of the terms of the deferred prosecution agreement. So I'd like to hear what you have to say on that.

MS. DONOVAN: Your Honor, as we stated yesterday, the termination of defendant Urciuoli was not a condition of the deferred prosecution agreement. In addition, the deferred prosecution agreement contains an integration clause, which states that the agreement sets forth the full agreement between the parties, representatives of the Medical Center averred in court that that was, in fact, accurate and that contains the full agreement between the parties.

In addition, back in April of this year, the managing partner of Mr. Connolly's firm acknowledged in communications with counsel for the hospital over the hospital's decision to stop paying fees that, quote, "I find it difficult to believe that the United States Attorney intended the hospital breach its contractual commitment."

And finally, Mr. Sullivan in April of this year, wrote again to the managing partner of Mr. Connolly's firm that the termination of defendant Urciuoli by RWMC was not a condition precedent to the DPA nor a requirement of the DPA. All discussions concerning the defendant's employment status were expressly excluded

from plea negotiations. All discussions concerning Roger Williams Medical Center's decision either to pay or refuse to pay his expenses were expressly excluded from the plea process by the United States Attorney's Office, and the decisions to terminate Mr. Urciuoli for cause and to discontinue paying his legal fees were business and contract decisions made by RWMC without any input from this office.

So the answer to your question is no. If the hospital independently exercised its judgment for whatever reason to continue to pay Mr. Urciuoli's legal fees throughout the continuation of this proceeding or others, the United States would not find that it had violated the terms of the DPA.

THE COURT: All right. Thank you, Ms. Donovan. All right. I'm prepared to decide this matter now.

The question, the specific question before the Court right now is whether -- I suppose there are two questions. One is whether the motion to dismiss ought to be granted, and the other is whether in making that decision the Court ought to conduct an evidentiary hearing.

And there are several legal principles that I think one has to keep in mind here, as in almost every case. One is that it is improper for the Government to

deprive a criminal defendant of resources to which the defendant would be entitled in presenting or preparing his defense.

The second principle is that in deciding whether to enter into a plea agreement or a deferred prosecution agreement with a corporation, it is perfectly proper for the Government to require the corporation to admit wrongdoing by its officers as a condition of entering into the agreement, whether it's a plea agreement or deferred prosecution agreement. Otherwise, there could never be a plea agreement with a corporation, because a corporation acts only through its officers and agents. And if the corporation did not acknowledge wrongdoing on the part of its officers or agents, whether correctly or incorrectly, the corporation's plea agreement could not be accepted. There would not be a factual basis for accepting the corporation's plea.

So that acknowledgment is a sine qua non of the plea, there's nothing wrong with the Government insisting on that if that's, in fact, what happened here.

The third principle is that in deciding whether to enter into a plea agreement or a deferred prosecution agreement with a corporation, it is

perfectly proper for the Government to consider whether the corporation is continuing to condone wrongful conduct by its officers, agents or employees and/or whether the corporation has failed to take corrective action to see that such conduct is eliminated.

The Government doesn't have to ignore or turn a blind eye to a corporation that continues to conduct business as usual and accept or enter into a plea agreement with that corporation.

The fourth principle is, doesn't really bear directly on the criminal matter that is involved in this issue, I suppose, is that a corporation is entitled to decide whether its obligation to pay legal fees on behalf of one of its officers or agents has ceased just as the officer or agent has a right, is entitled to litigate that question, to seek to compel the corporation to continue paying if that individual thinks that the cessation of payment was not justified.

Now, the question is how we apply those principles in this case with respect to this motion. Mr. Urciuoli's -- although they appear to have been somewhat conflated, Mr. Urciuoli's motion, as I stated yesterday, appears to be based on two, what I think, are separate and distinct grounds.

The first is that his allegation is that the

Government has improperly coerced Roger Williams into ceasing payment of his legal fees and thereby depriving him of his Sixth Amendment right to counsel or his right to prepare an adequate defense. And the second ground is that whether or not he's been deprived of any constitutional right, that the Government should be sanctioned because it's engaged in improper or what he claims was improper conduct.

In order to prevail on the first claim, on the first ground, it seems to me that Mr. Urciuoli must show not only that the Government has engaged in some improper conduct, but that such conduct has deprived him of a constitutional right. He cannot have a claim based on an alleged violation of a constitutional right unless you can demonstrate that you have a constitutional right that was violated. And more specifically, it seems to me that Mr. Urciuoli would have to show basically five things.

The first thing he'd have to show is that he is entitled to have his legal fees paid by Roger Williams, because if he doesn't have any such entitlement, then the fact that the fees are no longer being paid cannot possibly constitute any kind of a deprivation.

The second thing he has to show is that the Government, through its conduct, made it clear to Roger

asserted to be material interference with the preparation of his defense or his access to counsel.

To the extent that the motion is based solely on the claim that the Government has engaged in some improper conduct, which independently of any purported violation of Mr. Urciuoli's constitutional rights warrants sanctions, that's a different matter. And in any event, even if that were the case, under these circumstances, even if the sanction were warranted, and I'm certainly not suggesting that it is, even if it were, under these circumstances it would not rise to the level of warranting dismissal of the indictment.

Now, that brings me to the question of whether a hearing is required. And in determining whether an evidentiary hearing should be conducted in order to rule on this motion to dismiss, the Court considers several factors. First and foremost, of course, is whether the defendant has identified any disputed facts that would have to be resolved in order to decide this motion, whether any of the -- whether he has the prospect of presenting or uncovering any evidence that would prove the things that he has to prove in order to establish that the indictment should be dismissed.

Second factor, which certainly takes a back seat to the first, is the timing of this motion. As was

established yesterday, Roger Williams ceased paying Mr. Urciuoli's legal fees in January of this year, but this motion was not filed until a couple of weeks ago, I believe, virtually on the eve of trial. Almost all of the trial preparation has been done, one hundred eighty some odd jurors have been summoned. The trial date has been set. Also the evidence that the defendant proposes to present, obviously, would be lengthy and could well result in another postponement of this trial. Between the evidence that Mr. Urciuoli apparently proposes to present and the likely rebuttal evidence that the Government would probably present, it's certainly possible and well within the realm of possibility that we may be hearing testimony from 15 members of Roger Williams' board, all of the agents and perhaps attorneys who participated in the plea discussions and so forth. So we're talking about a lengthy proceeding. This isn't a brief hearing that's going to resolve any of these questions.

The third factor the Court takes into account is that embarking on this path would put us on a very slippery slope. And again, this is not -- all these points I'm making are subsidiary to the principal question, which is whether a hearing is going to assist or be necessary in resolving the questions underlying

this motion. But I can't ignore the fact that there will be numerous difficulties that are very easy to imagine and I certainly -- I'm sure the list is more exhaustive than some of these points, but for one thing, trying to determine the reason that a 15-member board decided to stop paying Mr. Urciuoli's legal fees would not only be difficult, but it would involve delicate questions of attorney-client privilege and other difficult issues.

And the same can be said, I think, with respect to trying to determine whether the cessation of payment of his legal fees by Roger Williams has materially interfered with the presentation or preparation of his defense. I think we saw a precursor to that yesterday when I asked Mr. Connolly what it is that he is refrained from doing as a result of Roger Williams' position, and he was understandably reluctant to get into that. I don't blame him, but it's a subject we would have to get into in order to resolve this. It would involve questions of attorney-client privilege on the defendant's side.

Another difficulty here is that in order to determine whether Mr. Urciuoli is entitled to have Roger Williams continue paying his legal fees, which is one of the issues, the Court, in effect, would have to

decide whether he is guilty or not guilty of the charges against him, because it's clear under Rhode Island law that if, in fact, he's guilty of this misconduct, that the corporation would have no obligation to continue paying his legal fees.

On the other hand, if he's not, they might well have such an obligation. It's unseemly for the Court and inappropriate, I think, for the Court to be making that kind of a determination, because that's the very question that is ultimately going to be presented to the jury in this case.

So those are the factors that I consider. I'm now going to focus on the five things that have to be shown, the substance of this motion.

First of all, with respect to whether Mr. Urciuoli is entitled to have his legal fees paid by Roger Williams, there are a couple of caveats that one must keep in mind here. First of all, even if he's entitled to have the fees paid, his entitlement would be to have reasonable fees paid, not to have unlimited amounts paid in his defense. And I'm certainly not suggesting that the fees charged by his counsel are unreasonable. I wouldn't suggest that. I'm simply saying that this is not an unqualified right, nor is it an absolute right as, I think, I've indicated.

The employment agreement that Mr. Urciuoli has says that Roger Williams will pay his legal fees to the maximum extent permissible under Rhode Island law. And Rhode Island law, like the law of many states, sets some limitations on the circumstances under which a corporation can properly pay the legal expenses of one of its officers or employees. And the limitations are that the officer must have acted in good faith; that the -- in the case of a criminal proceeding, that the officer had no reasonable cause to believe that his or her conduct was unlawful and so if those circumstances exist, the corporation may not pay the legal fees, is prohibited by law from paying the legal fees.

So the right is not an absolute right. In fact, it would be -- clearly, would be absurd to say, and I'm not suggesting that's the situation in this case, but it would be clearly absurd to say, for example, that a corporate officer who was caught red-handed embezzling funds from the corporation would be entitled to have his legal fees paid by the corporation from which he embezzled the money. I don't think Mr. Connolly would argue that, and, again, I'm not suggesting that that is at all analogous to this particular case.

A corporation has the right to stop payment if it believes that the officer committed an act that

subjected the corporation to criminal liability, and just as I said before, the officer has a right to sue to require the corporation to pay its legal fees if he believes that it has stopped paying without justification.

The difficulty here in determining this question usually arises out of when the corporation's decision should be made. Obviously, there are two alternatives. The corporation can make the decision before an ultimate adjudication is made as to whether the officer has engaged in wrongdoing. And if that's the corporation's decision, then, obviously, the corporation stops paying, the officer may sue the corporation to require it to pay the fees, or to reimburse him for the fees.

The other alternative is the corporation can wait until after the adjudication is made, and if the officer is determined to be guilty or having committed wrongdoing, then in the meantime the corporation pays the fees, and if that determination is made, the corporation has a right to seek reimbursement from the officer or employee.

In civil cases, corporations, obviously, almost always elect the second option. They will almost always choose to continue paying a fee until an

adjudication is made for the very practical reason that if the officer is found guilty of having acted improperly, the corporation is going to be liable for whatever the officer did. So it's in the corporation's interest to see that the officer gets a vigorous defense because that benefits the corporation, too.

In criminal cases, it's more of a mixed bag. In criminal cases, if the corporation is defending, resists and denies the charges, the same principle would apply. It would be in the corporation's best interest to pay the legal fees and hope that the Government is unable to prove its case. On the other hand, if the corporation decides that it's in its best interest to plead, then that's when the problem arises, because if that's the corporation's decision, in order to plead, as I said before, the corporation has to admit wrongdoing, and by necessity the wrongdoing must have been the wrongdoing of the individual officer who's alleged to have committed the wrongful acts for which the corporation is being prosecuted. So in that case, you have a much different situation. It would be nice if in every case the corporation continued paying the legal expenses and then sought reimbursement if the employee was found not to be culpable, but as I say, there are circumstances where it's clear the employee

is culpable and the corporation shouldn't be forced to continue paying, and there are cases in which the corporation has to acknowledge, whether rightfully or wrongfully, culpability in order to enter a plea.

As to the second issue here, whether the Government coerced Roger Williams into ceasing payment of Mr. Urciuoli's legal fees, it's important here, I think, to distinguish between the general pressure on a defendant that is inherent in any criminal prosecution or any plea negotiation where the defendant has to choose between either, A, admitting guilt and perhaps cooperating in exchange for leniency; or B, maintaining its innocence and risking more severe penalties if it's convicted; and on the other hand, a situation where pressure is specifically aimed at forcing the corporation to cease payment of the officer's legal fees that it otherwise would have paid or was obliged to pay.

Now, there's a big difference between those two situations. In the former case, one can't say that the Government is responsible or acted improperly because the corporation felt under some pressure to choose between admitting guilt or going to trial. The latter case is a different matter. When the Government is exerting pressure for the purpose of forcing the

corporation to stop paying legal fees, that may be a different situation.

I should point out that it's not enough here for the -- that Roger Williams may have felt or believed or perceived that it would be in its best interest to stop paying Mr. Urciuoli's legal fees.

The decision, in order to warrant dismissal of an indictment, the decision would have to have been based on something that the Government did that reasonably -- could be reasonably understood as conveying that message. If you don't stop paying this individual's legal fees, then there will be no plea agreement, and you'll be prosecuted.

I recognize that that kind of specific pressure doesn't have to be stated in so many words. It may be expressed, or it may be implied, but it has to be clear that that's the message that's being conveyed. It cannot be a perception that exists only in the mind of the defendant.

Now, in this case, Mr. Connolly candidly acknowledged that he doesn't have any evidence that the Government expressly conditioned this plea agreement or deferred prosecution agreement on Roger Williams stopping payment of Mr. Urciuoli's legal fees. Instead, he relies on two things, as I understand it.

The first is the so-called Thompson memorandum. The contention here is that -- I guess probably a dual contention. One is that the Thompson memorandum somehow prohibits the Government from entering into a plea agreement unless the corporation agreed to stop paying Mr. Urciuoli's legal fees; and the other component of that is that it was mentioned on several occasions during the course of plea negotiations, Roger Williams was reminded of the Thompson memorandum. The argument being, I suppose, that that implied that since the Thompson memorandum makes some reference to a payment of legal fees, that that was communicating the message that if you don't stop paying the fees there will be no plea agreement.

Well, I think both of those arguments are wrong. First of all, I don't read the Thompson memorandum as mandating anything. The only thing that's required of the prosecutor is that the prosecutor consider the various factors enumerated in the Thompson memorandum. It does not, as I read it, preclude the prosecutor from accepting a guilty plea or entering into a deferred prosecution agreement with a corporation if the corporation doesn't agree to stop paying legal fees of the accused officers.

It mentions the payment of fees as one of many

factors to consider, and it mentions that in the context of talking about the factor of whether the corporation has condoned continued wrongdoing or failed to take corrective action including disciplinary action against the alleged wrong-doers.

In fact, the Thompson memorandum specifically recognizes in a footnote that in a case where the corporation is required by law to pay the legal fees that this becomes a non-factor, that that isn't even something that ought to be considered. So I don't believe that either the Thompson memorandum itself or any references that may have been made during plea negotiations to remind the board in Roger Williams what the Thompson memorandum said rise to the level of anything that could be reasonably construed as imposing a condition that Roger Williams stop paying Mr. Urciuoli's legal fees.

The second thing that the defendant relies on is the fact that the plea agreement or the contention, which I will for present purposes accept as a fact, that the plea agreement was not acceptable to the Government unless Roger Williams admitted that Mr. Urciuoli had engaged in wrongdoing.

And essentially, the defendant is asking the Court to infer that requiring an admission of

wrongdoing by Mr. Urciuoli was an indirect way of pressuring Roger Williams to stop paying his legal fees, because the admission of wrongdoing led to the termination, and the termination, in turn, led to the decision to stop paying his legal fees.

There are several flaws, I think, in that argument. First of all, under the employment contract, any obligation that Roger Williams had to indemnify and pay Mr. Urciuoli's legal fees was not affected by his termination. The agreement specifically provides that the duty to indemnify survives termination for any reason.

So while it's true that under the statute, as I said earlier, the obligation to indemnify, in fact, the right to indemnify would terminate if Mr. Urciuoli acted in bad faith or didn't have a reasonable -- had no reason to believe, I'm paraphrasing, that what he did was unlawful, certainly that's disputed, so no question about that, but the point is that it doesn't necessarily follow that because Roger Williams decided to terminate Mr. Urciuoli that, therefore, it could not any longer pay his legal fees or that the two were linked any more than it follows that because it entered into the plea agreement that it had to terminate Mr. Urciuoli.

As I said, the big problem with this argument, I think, is that -- two big problems. One is, as I said, the Thompson memorandum itself recognizes that the payment of legal fees is not a factor that a corporation is required by law to pay them, and I assume the same would apply if the corporation is required by contract to pay those fees. I can't imagine that -- it would be a very untenable position indeed for the Government to take -- that the corporation should be penalized for paying legal fees of an accused officer when it has either a legal -- a statutory or a contractual obligation to do so.

But the big flaw, as I said before, is that there couldn't be any plea agreement or deferred prosecution agreement without an admission by the corporation that the individual who allegedly committed the wrongful acts acted wrongfully. The Court wouldn't have accepted any such plea agreement or any deferred prosecution agreement based on this unless there was that kind of a factual basis for it.

As far as the third point is concerned, the lack of justification, the Government had no justification for allegedly pressuring Roger Williams to stop paying Mr. Urciuoli's legal fees. In deciding whether to enter a plea agreement with a corporation or a

corporate defendant, as I said, the Government is entitled to consider whether the corporation is condoning the continued -- what's alleged to be the wrongful conduct underlying the charges and whether the corporation is taking disciplinary action, including disciplining or terminating the officers deemed responsible. The Government doesn't have to close its eyes to whether that's happening. It can consider that as one of a number of other factors.

Now, there's no question that that becomes somewhat problematic when it focuses specifically on payment of legal fees. It may be, as I said before, that there may be some circumstances where the payment of legal fees for an accused officer may clearly amount to condonation of wrongful conduct or may be inconsistent with the kind of repentance and taking of corrective action that the Government has a right to consider as a factor in deciding whether to enter in the plea agreement. But the problem is that, in many cases, there are many cases in which the corporation's continued payment of an officer's legal fees is not at all inconsistent with the corporation's acceptance of responsibility or its taking corrective action. As I previously stated, the Thompson memorandum itself recognizes that, that a corporation may be required by

law to continue to make such payments. There's also a distinction between a corporation deciding whether an officer should be terminated for what's alleged to be wrongful conduct, which the corporation may believe is wrongful conduct, and the corporation's decision not to continue paying that individual's legal fees at least until there's a final adjudication as to whether, in fact, that individual has engaged in improper conduct.

Everyone under our system is entitled to a presumption of innocence and is entitled to a defense. So those are two entirely different concepts.

The fourth issue relates to Roger Williams' reasons for ceasing payment, whether it stopped these payments because of something it thought, at least, the Government was requiring it to do. If Roger Williams decided to stop paying for reasons unrelated to the Government's alleged insistence that it do so or that it admit wrongdoing by Mr. Urciuoli, then, obviously, any such insistence could not have deprived Mr. Urciuoli of any funds that otherwise would have been available to him. It may be that the decision was wrong, and he has a remedy, of course, if he feels that way, but it certainly has nothing to do with anything the Government may have done.

In any event, as I've indicated, trying to

because of a concern that he might not be paid. And I, frankly, find it very difficult to believe that attorneys of the caliber and stature of Mr. Connolly and Mr. Egbert, having agreed to represent Mr. Urciuoli, would have refrained from doing anything that they thought necessary to vigorously defend Mr. Urciuoli simply because they thought there might be some question as to whether Roger Williams ultimately is going to pay their legal fees.

Also, I note here that there's been no proffer of Mr. Urciuoli's ability or inability to pay counsel pending the ultimate determination as to whether Roger Williams is or is not obliged to pay his fees.

In other words, there's been no showing that Mr. Urciuoli has been deprived of anything to which he would otherwise be entitled. It's clear from what's been presented to the Court, Mr. Urciuoli was a very highly-paid executive officer for many years. That certainly doesn't mean, I don't want to suggest that there should be a different standard for whether a corporation reneges on its obligation to pay legal fees depending on what the financial circumstances of the particular officer are, but it's certainly something that has to be shown in order to determine whether Mr. Urciuoli has been deprived of his ability to

present an adequate defense.

If it's ultimately shown that he's entitled to have his legal fees paid by Roger Williams, then I have no doubt he'll be reimbursed. There'll be some legal action or some resolution reached to this that will result in reimbursement by Roger Williams.

So what we're talking about here is whether in the interim between now and such time that question is resolved, whether Roger Williams' refusal to pay has deprived Mr. Urciuoli or I should say materially interfered with Mr. Urciuoli's ability to present his defense.

Not only has there been no proffer on this subject, but all of the indications that are visible to the Court are to the contrary. Mr. Urciuoli has been represented throughout this matter by a battery of première counsel. He has some of the finest defense counsel around representing him. And not just one. He has Mr. Connolly and his firm, and he has Mr. Egbert.

Secondly, I note that Mr. Egbert was hired after Roger Williams disclaimed any further responsibility for paying Mr. Urciuoli's legal fees. That disclaimer came in January, and Mr. Egbert, I believe, was retained or at least entered an appearance, I believe, in early March.

Also, we have a fact that there has been -- I can't imagine a more vigorous defense having been presented up to this point. Mr. Urciuoli's counsel have filed a multitude of motions on his behalf. They have been tenacious in seeking discovery from the Government, and they've left no stone unturned that I can see in presenting Mr. Urciuoli's defense.

So in conclusion, I find that the Court might have to conduct an evidentiary hearing to determine whether Mr. Urciuoli is entitled to have Roger Williams continue paying his legal fees or why Roger Williams decided to stop paying Mr. Urciuoli's legal fees, what their subjective thought processes were, but there's been no sufficient reason advanced as to what evidence Mr. Urciuoli proposes to present or has any reasonable expectation could be produced that would establish either, one, that the Government coerced Roger Williams into ceasing payment of his legal fees; or, two, that the cessation of payment by Roger Williams has materially interfered with his right to counsel or his ability to prepare and present his defense. And without those two elements, he cannot prevail on his motion to dismiss, and therefore, there is no point to be served by conducting an evidentiary hearing on this matter.

So therefore, I find that no evidentiary hearing is necessary. It would simply needlessly consume time and lead us around in an inconclusive circle. So therefore, I deny the motion to dismiss the indictment. And it's kind of a moot question I suppose now, but the motion to quash is essentially moot since there'll be no evidentiary hearing, but I will, as a pro forma matter, grant the motion to quash.

The Court will be in recess.

(Court concluded at 10:55 a.m.)

## C E R T I F I C A T I O N

I, Anne M. Clayton, RPR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

Anne M. Clayton

Anne M. Clayton, RPR

June 4, 2008

Date