UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CR. No. 06-02-04 (ML) |
| | ) | |
| ROBERT A. URCIOLI, | ) | |
| FRANCES P. DRISCOLL, and | ) | |
| ROGER WILLIAMS MEDICAL CENTER | ) | |

**FRANCES P. DRISCOLL'S MOTION *IN LIMINE* TO PRECLUDE SUGGESTION OR ARGUMENT THAT JOHN CELONA DID NOT PERFORM HIS CONTRACT FOR ELDERLY OUTREACH**

Frances P. Driscoll, by her attorneys, moves *in limine* under F.R.Crim.P. 12 to preclude the government from suggesting or arguing that John Celona did not perform his contract to do elderly outreach on behalf of The Village at Elmhurst, a wholly owned subsidiary of Roger Williams Medical Center. In the previous trial of this matter, John Celona testified that he fully performed his consulting contract to the best of his ability. The government should not be allowed to suggest or argue otherwise, absent presentation of affirmative evidence which disproves this testimony.

Ms. Driscoll states her reasons more thoroughly in the accompanying memorandum, which is hereby incorporated into this motion.

Ms. Driscoll requests brief oral argument on this motion.

Respectfully submitted,
Frances P. Driscoll
By her attorneys,

/s/ John A. MacFadyen

John A. MacFadyen (#1209)
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903
401-751-5090
jam@ridefense.com

Kevin Bristow, Esq. (#3984)
76 Westminster Street
Providence, RI 02903
401-521-8000
kjbristowlaw@verizon.net

Larry Tipton, Esq.
*Pro Hac Vice Counsel*
Law Office of Larry Tipton
One Center Plaza, Suite 220
Boston, MA 02108
617-227-1308
larrytipton@lawofficeoflarrytipton.com

**CERTIFICATION**

I hereby certify that on the 15th day of August, 2008, a copy of this Motion was filed electronically and that it is available for viewing and downloading from the Court's ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ John A. MacFadyen

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CR. No. 06-02-04 (ML) |
| | ) | |
| ROBERT A. URCIOLI, | ) | |
| FRANCES P. DRISCOLL, and | ) | |
| ROGER WILLIAMS MEDICAL CENTER | ) | |

**FRANCES P. DRISCOLL'S MEMORANDUM IN SUPPORT OF HER MOTION *IN LIMINE* TO PRECLUDE SUGGESTION OR ARGUMENT THAT JOHN CELONA DID NOT PERFORM HIS CONTRACT FOR ELDERLY OUTREACH**

Frances P. Driscoll has moved *in limine* to preclude the government from suggesting or arguing that John Celona did not perform his consulting contract to do elderly outreach on behalf of The Village at Elmhurst ("Village"), a wholly owned subsidiary of Roger Williams Medical Center ("RWMC").

The government has recently taken the position before this Court that this is a case of *quid pro quo* bribery. *See United States' Memorandum in Support of Objection to Defendant Frances Driscoll's Motion In Limine For Preliminary Instruction of the Jury.* It has stated that it intends to prove this case without testimony from John Celona, relying instead on his facsimile communications with Ms. Driscoll and her superior officer, Robert A. Urciuoli.

The government may seek to bolster its "bribery" accusation with the suggestions and argument it used during the First Circuit appeal that John Celona's consultancy was a "sham contract," *Consolidated Brief for the Appellee, United States of America,* p. 45, and that defendants gave Celona a "fake job," *id.* at 2, which was no more than a cover for funneling payments to Celona for political activity. Celona, however, testified to the exact opposite during the first trial of this case.

On September 18, 2006, during his cross-examination, John Celona stated as follows:

Q. But [the contract] did tell you to do things for the Village; right?

A. Yes.

Q. And it told you to go out to senior centers; right?

A. Yes.

Q. And you did?

A. I did.

Q. And it told you to learn about assisted living; right?

A. I did.

Q. And you did. It told you to research about assisted living; right?

A. Yes, sir.

Q. And you did?

A. Yes, sir.

Q. And it told you to talk to people about the Village at Elmhurst, and you did; right?

A. Yes.

Q. And it told you to go out and try to promote the Village at Elmhurst among seniors, and you did; right?

A. Yes.

Q. That was what you contracted to do, and that's what you did; right?

* * * *

A. I did, but I wasn't contracted to do things for Roger Williams Medical Center.

Q. We'll get to that. First let's get – but we do agree now at least on this, that you had a contract with the Village and you performed your contract; correct? Right?

A. Yes.

Q. Okay. So – and you did it to the best of your abilities in good faith and honestly; right?

A. Tried.

Q. No question about that?

A. Glad you're calling me honest now.

Q. No question about that; right?

A. Right.

Tr. 9/18/06:148-150
(transcript excerpts attached as *Exhibit A*).[1]

Given this testimony, plus Celona's activity reports memorializing his elderly outreach activity, particularly G-172, the government in closing conceded that Celona did in fact perform his contract with the Village, at least during the period when Ms. Driscoll was still employed by RWMC.[2]

> And look at the activity reports. They corroborate what John Celona said to you. Initially he did a lot of work; and then as time went on, the amount of work decreased.

Tr. 10/2/06:149-150

In sum, the information in the government's possession cannot support the argument that Celona received a "fake job," but only that, in addition to his real job, he also engaged in political activity which benefited RWMC (as opposed to the Village). This occurred particularly in the latter part of his tenure as a consultant. Tr. 9/15/06:206.

---

[1] Celona also observed that he was required to do his elderly outreach on his own without substantial direction, Tr. 9/18/06:150**,** in other words, to be an independent contractor. This he contrasted with his political interactions with Ms. Driscoll and Mr. Urciuoli.

[2] Celona was hired as a consultant in the spring of 1998. Ms. Driscoll left RWMC on May 5, 2000. During this entire period of time, John Celona was a back-bencher with no political clout. All that changed in January, 2001, eight months after Ms. Driscoll left RWMC, when his faction attained the leadership and Celona was given the chair of the Corporations Committee. His consultancy continued until late in 2003.

Notwithstanding this evidence of a real consultancy, the government has apparently chosen to prosecute the retrial of this matter on an extreme theory, *quid pro quo* bribery, that some or all of the consulting payments were not for elderly outreach, but instead were bribes for political action. In so doing, it has eschewed the more modulated allegations of the *Indictment*, which charged only improper influence resulting from the consulting contract. *Indictment* ¶97. Presumably this shift in theory stems from a concern that undue influence comes too close to the conflict of interest theory which the First Circuit repudiated in *United States v. Urciuoli,* 513 F.3d 290 (1st Cir. 2008). The government is of course free to make this tactical choice, and thereby avoid certain legal problems identified by *Urciuoli,* but, in tailoring its cloth, it may not make arguments at odds with the facts as it knows them.

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution, is not that it shall win a case, but that justice shall be done." *Berger v. United States,* 295 U.S. 78, 88 (1935) (finding a Due Process violation in closing argument which misrepresented the facts). Here, there is no evidence that John Celona did not have a real job as an independent contractor to promote elderly outreach. The only question is whether, in addition to this real job, the government has evidence that Celona was also being paid for political activity. This will require proof that Mr. Celona was not simply a part-time public official who had political communications with his employer and acted on legislation in a way which benefited his employer's interests (perfectly legal under Rhode Island law), but that part of his salary was paid for the purpose of obtaining political services. This dichotomy may be difficult to establish in the context of a case where Celona himself has conceded that his elder affairs consultancy was a

real job at which he worked to the best of his ability. But that is the task which the government has shouldered by its newly-minted claim of *quid pro quo* bribery. And it should not be permitted to use Celona's absence from the witness stand to overstate its case.

The motion *in limine* should be granted.

Respectfully submitted,
Frances P. Driscoll
By her attorneys,

/s/ John A. MacFadyen

John A. MacFadyen (#1209)
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903
401-751-5090
jam@ridefense.com

Kevin Bristow, Esq. (#3984)
76 Westminster Street
Providence, RI 02903
401-521-8000
kjbristowlaw@verizon.net

Larry Tipton, Esq.
*Pro Hac Vice Counsel*
Law Office of Larry Tipton
One Center Plaza, Suite 220
Boston, MA 02108
617-227-1308
larrytipton@lawofficeoflarrytipton.com

## CERTIFICATION

I hereby certify that on the 15th day of August, 2008, a copy of this Motion was filed electronically and that it is available for viewing and downloading from the Court's ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ John A. MacFadyen