# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| * * * * * * * * * * * * * * * * | C.R. NO. 06-02T |
| UNITED STATES OF AMERICA * | |
| VS. * | SEPTEMBER 15, 2006<br>8:30 A.M. |
| ROBERT A. URCIUOLI, et al * | |
| * * * * * * * * * * * * * * * * | PROVIDENCE, RI |

BEFORE THE HONORABLE ERNEST C. TORRES,

CHIEF JUDGE

(Jury Trial)

APPEARANCES:

FOR THE GOVERNMENT: LUIS M. MATOS, AUSA
DULCE DONOVAN, AUSA
U.S. Attorney's Office
50 Kennedy Plaza
Providence, RI 02903

FOR THE DEFENDANT, URCIUOLI: MICHAEL J. CONNOLLY, ESQ.
Hinckley, Allen & Snyder, LLP
28 State Street
2nd Floor
Boston, MA 02109

RICHARD M. EGBERT, ESQ.
99 Summer Street
Suite 1800
Boston, MA 02110

# INDEX


| GOVERNMENT WITNESS | PAGE |
|---|---|
| John Celona, Resumes | |
| Continued Direct Examination by Mr. Matos | 28 |
| Cross-Examination by Mr. Egbert | 207 |


# EXHIBITS


| GOVERNMENT | FOR ID | IN FULL |
|---|---|---|
| 2 - 79 | | 201 |
| 254 | | 29 |
| 275 | | 29 |
| 288 | | 41 |
| 290 | | 50 |
| 295 | | 74 |
| 320 | | 59 |
| 326 | | 65 |
| 341 | | 76 |
| 363 | | 79 |
| 364 | | 68 |
| 374 | | 143 |
| 375 | | 143 |
| 383 | | 123 |
| 417 | | 88 |
| 421 | | 54 |
| 430 | | 127 |
| 432 | | 129 |
| 437 | | 134 |
| 469 | | 149 |
| 474 | | 151 |
| 484 | | 159 |
| 488 | | 159 |
| 506 | | 153 |
| 507 | | 163 |
| 522 | | 170 |
| 528 | | 175 |
| 532 | | 195 |
| 536 | | 199 |

| DEFENDANT URCIUOLI | FOR ID | IN FULL |
|---|---|---|
| F | | 212 |
| G | | 215 |
| H | | 231 |

2003, were you paid approximately over $250,000?
A. If that's what it adds up to, yes.
Q. And is that what's represented by the checks that are in front of you?
A. Yes, sir.
Q. And your pay increased over the course of the years; is that correct?
A. Yes.
Q. And as your pay increased, what happened to the amount of work you were doing for the Village at Elmhurst?
A. It decreased.
Q. What happened to the amount of work you were doing for Roger Williams Medical Center?
A. It increased.
Q. When you stopped working -- by the time that your contract was terminated, approximately how much -- if you could give a percentage of work that you did for the Village at Elmhurst vis-a-vis the hospital, what would that be?
A. When I stopped working?
Q. Yes.
A. Probably 90 percent hospital, 10 percent Village, and 10 percent was on my own, most of it.
Q. And, Mr. Celona, the checks that you have in front

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * | * | C.R. NO. 06-02T |
| UNITED STATES OF AMERICA | * | |
| VS. | * | SEPTEMBER 18, 2006<br>9:30 A.M. |
| ROBERT A. URCIUOLI, et al | * | |
| * * * * * * * * * * * * * * * * | * | PROVIDENCE, RI |

BEFORE THE HONORABLE ERNEST C. TORRES,

CHIEF JUDGE

(Jury Trial)

APPEARANCES:

FOR THE GOVERNMENT: LUIS M. MATOS, AUSA
DULCE DONOVAN, AUSA
U.S. Attorney's Office
50 Kennedy Plaza
Providence, RI 02903

FOR THE DEFENDANT, URCIUOLI: MICHAEL J. CONNOLLY, ESQ.
Hinckley, Allen & Snyder, LLP
28 State Street
2nd Floor
Boston, MA 02109

RICHARD M. EGBERT, ESQ.
99 Summer Street
Suite 1800
Boston, MA 02110

# INDEX



| GOVERNMENT WITNESS | PAGE |
|---|---|
| John Celona, Resumes<br>Continued Cross-Examination by Mr. Egbert | 4 |



# EXHIBITS

| GOVERNMENT | FOR ID | IN FULL |
|---|---|---|
| 154 | | 179 |

| DEFENDANT URCIUOLI | FOR ID | IN FULL |
|---|---|---|
| MMMMMM | | 182 |
| NNNNNN | | 189 |
| UUUUUUU | | 21 |
| VVVVVVV | 54 | |
| WWWWWWW | 105 | |
| XXXXXXX | 125 | |

Q. And it's your testimony here that they didn't talk about continuum of care?

A. No.

Q. They didn't?

A. They did not, and I -- the brochures on the Village, I went there myself many times and got them.

Q. Now, when you -- you say you went there by yourself or you did things by yourself; right?

A. Yes, sir.

Q. That's what you were supposed to do; right? That's what your contract called for you to do, didn't it?

A. I'd like to see my contract, but my contract didn't tell me to do things for Roger Williams.

Q. But it did tell you to do things for the Village; right?

A. Yes.

Q. And it told you to go out to senior centers; right?

A. Yes.

Q. And you did?

A. I did.

Q. And it told you to learn about assisted living; right?

A. I did.

Q. And you did. It told you to research about assisted living; right?
A. Yes, sir.
Q. And you did?
A. Yes, sir.
Q. And it told you to talk to people about the Village at Elmhurst, and you did; right?
A. Yes.
Q. And it told you to go out and try to promote the Village at Elmhurst among seniors, and you did; right?
A. Yes.
Q. That was what you contracted to do, and that's what you did; right?
MR. MATOS: Objection, your Honor.
THE COURT: Overruled.
A. Can I --
THE COURT: Overruled. You may answer.
A. I did, but I wasn't contracted to do things for Roger Williams Medical Center.
Q. We'll get to that. First let's get -- but we do agree now at least on this, that you had a contract with the Village and you performed your contract; correct? Right?
A. Yes.
Q. Okay. So -- and you did it to the best of your

abilities in good faith and honestly; right?
A. Tried.
Q. No question about that?
A. Glad you're calling me honest now.
Q. No question about that; right?
A. Right.
Q. And so with regard to all this stuff we heard for three days about I did it on my own, I did it on my own, I did it on my own, what you did is perform under the contract as agreed; right?
MR. MATOS: Objection, your Honor.
THE COURT: Overruled. If that's not right, you can say so.
A. That's not right. I did it with no direction, independent research, independent visits, independent requests to get people to come to places, to speak about the Village without any request whatsoever or guidance or even an official first day regarding my employment with the Village at Elmhurst.
MR. EGBERT: Your Honor, I'm going to just put my copy on for now, if I may, of the contract.
Can I have the ELMO, please. Thank you.
Q. Your responsibilities on the contract that you signed began with that you were to become knowledgeable with all aspects of the quality of care provided by

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * * * * * C.R. NO. 06-02T

UNITED STATES OF AMERICA *

VS. * OCTOBER 2, 2006
9:30 A.M.

ROBERT A. URCIUOLI, et al *

* * * * * * * * * * * * * * * * * PROVIDENCE, RI

BEFORE THE HONORABLE ERNEST C. TORRES,

CHIEF JUDGE

(Jury Trial)

APPEARANCES:

FOR THE GOVERNMENT: LUIS M. MATOS, AUSA
DULCE DONOVAN, AUSA
U.S. Attorney's Office
50 Kennedy Plaza
Providence, RI 02903

FOR THE DEFENDANT, URCIUOLI: MICHAEL J. CONNOLLY, ESQ.
Hinckley, Allen & Snyder, LLP
28 State Street
2nd Floor
Boston, MA 02109

RICHARD M. EGBERT, ESQ.
99 Summer Street
Suite 1800
Boston, MA 02110

was going on. The board minutes that are in evidence do not reflect that the board was told what was going on with John Celona.

Jim McGuirk testified. And when he testified, he told you that he didn't remember Robert Urciuoli telling the board that John Celona had been hired to carry out these things.

So when you look at that, what was disclosed, what was not, when you put all the evidence together, you'll see that what wasn't disclosed was the key, what he was doing, their legislative bidding.

The report that Frances Driscoll sent to the PR committee that Mr. Bristow told you about, FFFFF through MMMMM, OOOOO through TTTTT, I believe, not one of those reports disclosed what John Celona is doing on legislative issues.

And if you look at the activity reports, Mr. Bristow wants you to believe that when he was communicating about legislation, it was as a legislator, ladies and gentlemen. The activity reports outline everything, Village work, legislative work, everything. Why is it all on the activity reports?

And look at the activity reports. They corroborate what John Celona said to you. Initially he did a lot of work; and then as time went on, the amount

of work decreased. And as I explained to you during my first comments to you, if you look at the evidence, 2000, 2001, 2002, 2003, the Government's exhibits are primarily arranged in chronological order, you'll see what kind of work he was doing, a couple TV shows, showing up at a summer barbecue, a couple pizza wars. That's the consulting agreement? And then compare that to what he was doing in order to earn his keep.

All the defense attorneys focused a good amount of time on John Celona, as they should; but, ladies and gentlemen, I told you from the initial time that I addressed you at the beginning of the trial that John Celona had lied in the past.

And, ladies and gentlemen, you also know from Judge Torres who has explained to you and will explain to you again that the ultimate sentencing decision is Judge Torres'. We will make a recommendation to the judge, but it's your job to determine whether John Celona and every other witness who appeared before you was credible.

And, ladies and gentlemen, we have made no bones about who John Celona is to you, but -- and the reason that we went through so many of the documents during his testimony is because the one thing that John Celona said to you that you can probably all agree with, the