UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CR. No. 06-02-04 (ML) |
| | ) | |
| ROBERT A. URCIOLI, | ) | |
| FRANCES P. DRISCOLL, and | ) | |
| ROGER WILLIAMS MEDICAL CENTER | ) | |

**FRANCES P. DRISCOLL'S MOTION *IN LIMINE* FOR LIMITING INSTRUCTION ON MAIL FRAUD AND ON CONSPIRACY EVIDENCE**

Frances P. Driscoll, by her attorneys, moves *in limine* under F.R.Crim.P. 12 for an instruction to the jury which limits its consideration of Count 2 to the accusation that Ms. Driscoll aided and abetted the execution of a scheme or artifice to defraud, and which excludes from the jury's consideration all facts which were necessarily decided in her favor by the jury which acquitted her of Count 1 charging conspiracy. She attaches a proposed instruction as *Exhibit A*.

Ms. Driscoll states her reasons more thoroughly in the accompanying memorandum, which is hereby incorporated into this motion.

Ms. Driscoll requests brief oral argument on this motion.

Respectfully submitted,
Frances P. Driscoll
By her attorneys,

/s/ John A. MacFadyen

John A. MacFadyen (#1209)
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903
401-751-5090
jam@ridefense.com

Kevin Bristow, Esq. (#3984)
76 Westminster Street
Providence, RI 02903
401-521-8000
kjbristowlaw@verizon.net

Larry Tipton, Esq.
*Pro Hac Vice Counsel*
Law Office of Larry Tipton
One Center Plaza, Suite 220
Boston, MA 02108
617-227-1308
larrytipton@lawofficeoflarrytipton.com

**CERTIFICATION**

I hereby certify that on the 15th day of August, 2008, a copy of this Motion was filed electronically and that it is available for viewing and downloading from the Court's ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ John A. MacFadyen

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CR. No. 06-02-04 (ML) |
| | ) | |
| ROBERT A. URCIOLI, | ) | |
| FRANCES P. DRISCOLL, and | ) | |
| ROGER WILLIAMS MEDICAL CENTER | ) | |

**FRANCES P. DRISCOLL'S MEMORANDUM IN SUPPORT OF HER MOTION *IN LIMINE* FOR LIMITING INSTRUCTION ON MAIL FRAUD AND ON CONSPIRACY EVIDENCE**

**Introduction**

Ms. Driscoll has a right, guaranteed by U.S. Const. Amend. V, not to be twice placed in jeopardy of the same offense. The first jury that heard this case acquitted her of Count 1, charging conspiracy to commit mail fraud. Since the government framed its conspiracy and mail fraud charges in virtually identical terms, acquittal on the conspiracy precludes retrial on the substantive mail fraud, except insofar as this latter offense is prosecuted on an aiding and abetting theory premised on facts not necessarily decided in defendant's favor at the former trial.

**The Law**

The Fifth Amendment to the Constitution of the United States provides in part that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb . . . ." The federal courts have long recognized that the commission of a substantive offense and a conspiracy to commit that same offense are separate and distinct offenses. *See Pinkerton v. United States,* 328 U.S. 640, 643 (1996). Nevertheless, the Supreme Court has held that, in certain instances, an acquittal on a conspiracy allegation will preclude retrial of the underlying substantive offense, specifically when facts essential to the latter offense were necessarily decided in the defendant's favor in the trial on the conspiracy charge.

The leading case is *Sealfon v. United States,* 332 U.S. 575 (1948). There, the defendant was charged with a conspiracy to defraud the United States predicated on the presentation of false invoices to a federal rationing board. The defendant was also charged with uttering and publishing as true the same false invoices. Following an acquittal on the conspiracy charge, the Court concluded that the defendant could not be brought to trial on the substantive offense because the conspiracy acquittal necessarily resolved facts essential to the substantive offense in defendant's favor.

The First Circuit addressed the same issue in *Ottomano v. United States,* 468 F.2d 269 (1st Cir. 1972), *cert. denied,* 93 S.Ct. 948 (1973). There, the defendant had been acquitted of a narcotics conspiracy but found guilty of the underlying substantive offense of selling cocaine. Unlike *Sealfon,* in *Ottomano* the conspiracy acquittal was due to a variance between the facts alleged in the indictment (a conspiracy lasting for several months) and the proof offered at trial, which showed defendant's participation only on a single date. *Id.* at 272. Hence, acquittal on the conspiracy charge could not be viewed as resolving facts necessary to the substantive offense in defendant's favor, particularly when it was prosecuted as an aiding and abetting theory.

Based on these precedents, the question to be resolved here is whether Ms. Driscoll's acquittal on Count 1 charging conspiracy necessarily resolves certain facts in her favor which cannot form the basis of a second prosecution for mail fraud. In order to resolve this question, the Court must review the terms of the *Indictment* which define the offenses considered and decided by the first jury.

**The Indictment**

Count 1 of the *Indictment*, charging conspiracy, and Count 2, charging mail fraud, are framed in virtually identical terms. The following table illustrates the key language of each offense.

| Conspiracy | Mail Fraud |
|---|---|
| ¶14. From in or about August of 1997, and continuing until on or about January 8, 2004, in the District of Rhode Island, defendants, URCIUOLI, DRISCOLL, SANGERMANO and RWMC, knowingly, willfully, and unlawfully combined, conspired, confederated, and agreed with each other, and with Celona, to commit an offense against the United States, specifically, having devised and intending to devise a scheme and artifice to defraud the State of Rhode Island and its citizens of their intangible right to the honest services of John Celona and to have those services performed free from deceit, favoritism, bias, conflict of interest and self-enrichment and for the purpose of executing that scheme and artifice, to knowingly and willfully cause to be place[d] in an authorized depository for mail, according to the directions thereon, to the person to whom it was addressed, matter to be delivered by the United States Postal Service, in violation of 18 U.S.C. §§ 1341 and 1346. | ¶96. The Grand Jury further charges that from in or about August 1997, through in or about January 8, 2004, defendants, URCIUOLI, DRISCOLL, SANGERMANO and RWMC, devised and intended to devise a scheme and artifice to defraud the State of Rhode Island and its citizens of their intangible right to the honest services of John Celona and to have those services performed free from deceit, favoritism, bias, conflict of interest and self-enrichment. |
| ¶15. It was the object of the conspiracy to pay money to Celona, pursuant to a consulting agreement, so as to improperly influence and affect the official actions of Celona, specifically, to cause him to use his influence, power, and authority as a State Senator to benefit the political and financial interests of RWMC and its affiliates. | ¶97. It was the object of the scheme to pay money to Celona, pursuant to a consulting agreement, so as to improperly influence and affect the official actions of Celona, specifically, to cause him to use his influence, power, and authority as a State Senator to benefit the political and financial interests of RWMC and its affiliates. |
| ¶16. It was further an object of the conspiracy to deceive the State of Rhode Island and its citizens concerning Celona's relationship with RWMC in order for Celona to continue to promote the political interests of RWMC and its affiliates. | ¶98. It was further an object of the scheme to deceive the State of Rhode Island and its citizens concerning Celona's relationship with RWMC in order for Celona to continue to promote the political interests of RWMC and its affiliates. |
| ¶17. It was part of the conspiracy that defendants, URCIUOLI, DRISCOLL, SANGERMANO and RWMC, caused the Village to enter into a consulting agreement with Celona in order to provide him money in exchange for his political support, to include | ¶99. It was part of the scheme that defendants, URCIUOLI, DRISCOLL, SANGERMANO and RWMC, caused the Village to enter into a consulting agreement with Celona, in order to provide him money in exchange for his political support, to include support for |

| Conspiracy | Mail Fraud |
|---|---|
| support for matters in which RWMC and the Village had an interest, which were pending before the Rhode Island General Assembly and the Senate Corporations Committee. | legislative matters in which RWMC and the Village had an interest and which were pending before the Rhode Island General Assembly and the Senate Corporations Committee. |
| ¶18. It was further part of the conspiracy that defendants, URCIUOLI, DRISCOLL, SANGERMANO and RWMC, along with Celona, knowingly and willfully failed to disclose to the public that Celona had an improper conflict of interest which deprived the State of Rhode Island and its citizens of their intangible right to his honest services in that Celona obtained money from RWMC in exchange for his political support. | ¶100. It was further part of the scheme that defendants, URCIUOLI, DRISCOLL, SANGERMANO and RWMC, along with Celona, knowingly and willfully failed to disclose to the public that Celona had an improper conflict of interest which deprived the State of Rhode Island and its citizens of their intangible right to his honest services in that Celona obtained money from RWMC in exchange for his political support. |
| ¶19. It was further part of the conspiracy that defendants, URCIUOLI, DRISCOLL, SANGERMANO and RWMC, influenced and affected Celona in his official actions as a State Senator and Chairman of the Senate Corporations Committee in a manner which benefited RWMC and its affiliates, including but not limited to directing Celona to use his influence, power and authority:<br>a. to take official action and refrain from taking official actions all to benefit RWMC and its affiliates;<br>b. to influence other legislators to act or fail to act in such a way as to benefit RWMC and its affiliates;<br>c. to provide information, acquired in the course of and by reason of his official duties, to RWMC and its affiliates;<br>d. to influence people and companies who had interests before the Rhode Island General Assembly and were doing business with RWMC and its affiliates in a manner intended to financially benefit RWMC and its affiliates. | ¶101. It was further part of the scheme that defendants, URCIUOLI, DRISCOLL, SANGERMANO and RWMC, influenced and affected Celona in his official actions as a State Senator and Chairman of the Senate Corporations Committee in a manner which benefited RWMC and its affiliates, including but not limited to directing Celona to use his influence, power and authority:<br>a. to take official action and refrain from taking official actions all to benefit RWMC and its affiliates;<br>b. to influence other legislators to act or fail to act in such a way as to benefit RWMC and its affiliates;<br>c. to provide information, acquired in the course of and by reason of his official duties, to RWMC and its affiliates;<br>d. to influence people and companies who had interests before the Rhode Island General Assembly and were doing business with RWMC and its affiliates in a manner intended to financially benefit RWMC and its affiliates. |
| ¶20. It was further part of the conspiracy that defendants, URCIUOLI, DRISCOLL, | ¶102. It was further part of the scheme that defendants, URCIUOLI, DRISCOLL, |

| Conspiracy | Mail Fraud |
|---|---|
| SANGERMANO and RWMC, and Celona deceived the State of Rhode Island and its citizens concerning his relationship with RWMC by, among other things:<br>a. disguising the nature of Celona's relationship with RWMC by having the Village hire and pay Celona;<br>b. failing to disclose Celona's conflict of interest, including to the Ethics Commission;<br>c. providing false and misleading information to the Ethics Commission;<br>d. seeking an advisory opinion from the Ethics Commission based on false, misleading, and incomplete information. | SANGERMANO and RWMC, and Celona deceived the State of Rhode Island and its citizens concerning his relationship with RWMC by, among other things:<br>a. disguising the nature of Celona's relationship with RWMC by having the Village hire and pay Celona;<br>b. failing to disclose Celona's conflict of interest, including to the Ethics Commission;<br>c. providing false and misleading information to the Ethics Commission;<br>d. seeking an advisory opinion from the Ethics Commission based on false, misleading, and incomplete information. |

The accusations of the conspiracy charge contained in Column 1 define as a matter of law what it is that the jury decided. The mail fraud accusations contained in Column 2 reflect the facts essential to a conviction on that charge. Plainly they are word for word identical with the conspiracy accusations. The gravamen of each offense is that Ms. Driscoll agreed with her co-defendants to pay Celona for political activity under the guise of a consulting contract and to conceal this fact through misleading representations to the Ethics Commission.

The trial evidence showed that Ms. Driscoll was involved in the creation of the consultancy, even though she opposed Celona's hire. She participated in the drafting of Celona's contract, which identified his employer as the Village at Elmhurst ("Village"), not Roger Williams Medical Center ("RWMC"). In particular, she eliminated language from the draft consulting agreement which would have discussed the "continuum of care" concept which linked all the Roger Williams entities to each other. Tr. 9/21/06:8 (transcript excerpts attached as *Exhibit B*). This evidence applied equally to Counts 1 and 2.

There is, however, one big difference between Counts 1 and 2: unlike Count 1, Count 2, charging mail fraud, accuses Ms. Driscoll not only as a principal, but as an aider and abettor under 18 U.S.C. § 2. *Indictment* ¶104. As the First Circuit observed in *United States v. Urciuoli,* 513 F.3d 290 (1st Cir. 2008), Ms. Driscoll "was convicted of a single count of mail fraud *on the theory that she aided and abetted Urciuoli.*" *Id.* at 293 (emphasis supplied). Such a conviction stands separate and apart from the facts necessary to prove guilt as a principal. *Cf., Ottomano, supra* (allowing prosecution of substantive offense on aiding and abetting theory to survive acquittal on conspiracy).

**The Law Applied**

As the First Circuit has suggested, *Urciuoli, supra* at 293, the only way to make sense of Ms. Driscoll's acquittal on the conspiracy charge and her conviction on the wire fraud count is that the jury found her guilty of the latter on an aiding and abetting theory. The accusations against her as a principal on mail fraud are word for word identical with the accusations against her in the conspiracy count. They are premised on the same factual allegation that Ms. Driscoll and others deliberately drafted and then employed a consulting agreement to funnel money to Celona for his political activities while disguising this fact from the Ethics Commission by claiming he was working for the Village as a consultant on elderly affairs (when in fact he was performing a political function for RWMC). In returning a verdict of not guilty on Count 1, the first jury that heard this case necessarily found that Ms. Driscoll did not enter an agreement with her co-defendants to use a consulting contract to provide Celona with money in exchange for his political support and to conceal this agreement from the Rhode Island public.[1]

[1] The evidentiary basis for this conclusion is clear. Ms. Driscoll, along with Mr. McGuirk, opposed the hiring of Celona as a consultant to do community outreach. Tr. 9/12/06:32; Tr. 9/20/06:205; Tr. 9/21/06:179. At the first trial, McGuirk recalled discussing with Driscoll their mutual hope that the Ethics Commission might issue a narrow decision which would eliminate

The facts of *Sealfon* are instructive here. Sealfon was charged with conspiring with Greenberg to defraud the United States by the presentation of false invoices for the sales of sugar products. The invoices were generated and presented by Greenberg. Sealfon's contribution was to write a letter to Greenberg stating that some of his syrup was being sold at the Brooklyn Navy Yard, an arguably inaccurate representation. On these facts, the Supreme Court concluded that the jury's acquittal of Sealfon on conspiracy required the conclusion "that petitioner, who concededly wrote and sent the letter, did not so pursuant to an agreement with Greenberg to defraud." *Id.* at 580.

The parallels to the current case are striking. Ms. Driscoll, like Sealfon, is not alleged to have been a central actor in the charged conspiracy/scheme. The evidence is unrebutted that she opposed Celona's hire, but that she did edit his consulting contract in a manner which the government has since claimed was misleading. As in *Sealfon,* Ms. Driscoll's acquittal on conspiracy demands the conclusion that the jury found that her actions in preparing the consulting contract and the ensuing submission of an ethics advisory request were not "pursuant to an agreement with [Urciuoli and Celona] to defraud." *Sealfon, supra* at 580.

Count 2, charging Ms. Driscoll with aiding and abetting a scheme to defraud, has as its operative date May 4, 2000 (when a consultancy check, number 1054, was mailed to John Celona for his activities for the month of April 2000). *Indictment* ¶104. Given this date, nearly three years after the alleged inception of the conspiracy/scheme, the jury must have concluded that, while Ms. Driscoll was not complicit in an original agreement to create a fraudulent conspiracy/scheme to defraud the citizens of Rhode Island, she ultimately did aid and abet others in the execution of the scheme when she continued to interact with him on political matters.

---

Celona's consultancy. He thought she might have said something to the effect that "maybe they'll only let him go to Bingo nights." Tr. 9/21/06:181.

Celona gave additional support to this conclusion insofar as he testified that his job morphed over time, with the work for RWMC increasing as his elderly outreach for The Village at Elmhurst decreased. *See* Tr. 9/15/06:206.

In these circumstances, this Court should restrict the second jury's consideration to the charge of aiding and abetting the alleged mail fraud. Further, it should employ limiting instructions to insure that the facts decided favorably to Ms. Driscoll in the first trial are not used to convict her in the second. This means that, in addition to cabining the jury's consideration to the aiding and abetting allegation, the Court must give a limiting instruction at the time the Ethics Commission evidence is presented that Ms. Driscoll is not charged with conspiracy and that she is not guilty of conspiring to deprive the public of the honest services of John Celona by creating a consulting agreement which would be used to finance political activity on behalf of RWMC. The jury must be told that it may consider the Ethics Commission evidence only on the question of whether other persons created a scheme or artifice to defraud, and that this evidence may not be used to establish Ms. Driscoll's participation in that scheme. Only in this way can this Court insure that Ms. Driscoll will not be twice placed in jeopardy in violation of U.S. Const. Amend. V.

**Conclusion**

The motion *in limine* should be granted and this Court should instruct the jury in accordance with *Exhibit A* to the motion.

Respectfully submitted,
Frances P. Driscoll
By her attorneys,

/s/ John A. MacFadyen
John A. MacFadyen (#1209)
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903
401-751-5090
jam@ridefense.com

Kevin Bristow, Esq. (#3984)
76 Westminster Street
Providence, RI 02903
401-521-8000
kjbristowlaw@verizon.net

Larry Tipton, Esq.
*Pro Hac Vice Counsel*
Law Office of Larry Tipton
One Center Plaza, Suite 220
Boston, MA 02108
617-227-1308
larrytipton@lawofficeoflarrytipton.com

**CERTIFICATION**

I hereby certify that on the 15th day of August, 2008, a copy of this Motion was filed electronically and that it is available for viewing and downloading from the Court's ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ John A. MacFadyen