# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| * * * * * * * * * * * * * * * * * | C.R. NO. 06-02T |
| UNITED STATES OF AMERICA * | |
| VS. * | SEPTEMBER 12, 2006<br>9:15 A.M. |
| ROBERT A. URCIUOLI, et al * | |
| * * * * * * * * * * * * * * * * * | PROVIDENCE, RI |

BEFORE THE HONORABLE ERNEST C. TORRES,

CHIEF JUDGE

(Jury Trial)

APPEARANCES:

| | |
|---|---|
| FOR THE GOVERNMENT: | LUIS M. MATOS, AUSA<br>DULCE DONOVAN, AUSA<br>U.S. Attorney's Office<br>50 Kennedy Plaza<br>Providence, RI 02903 |
| FOR THE DEFENDANT, URCIUOLI: | MICHAEL J. CONNOLLY, ESQ.<br>Hinckley, Allen & Snyder, LLP<br>28 State Street<br>2nd Floor<br>Boston, MA 02109 |
| | RICHARD M. EGBERT, ESQ.<br>99 Summer Street<br>Suite 1800<br>Boston, MA 02110 |

# I N D E X


| GOVERNMENT WITNESS | PAGE |
|---|---|
| Sheila Capobianco | |
| Direct Examination by Ms. Donovan | 17 |
| Cross-Examination by Mr. Connolly | 80 |
| Cross-Examination by Mr. Bristow | 99 |
| Redirect Examination by Ms. Donovan | 108 |
| Katherine D'Arezzo | |
| Direct Examination by Ms. Donovan | 112 |
| Cross-Examination by Mr. Egbert | 148 |


# E X H I B I T S


| GOVERNMENT | FOR ID | IN FULL |
|---|---|---|
| 144 | | 41 |
| 149 | | 119 |
| 155 | | 77 |
| 159 | | 133 |
| 162 | | 141 |
| 163-A | | 145 |
| 165 | | 44 |
| 185 | | 77 |
| 196 | | 77 |
| 199 | | 77 |
| 219 | | 59 |
| 224 | | 59 |
| 227 | | 77 |
| 229 | | 77 |
| 234 | | 69 |
| 240 | | 72 |
| 262 | | 77 |
| 266 | | 73 |
| 278 | | 77 |
| 294 | | 77 |
| 303 | | 77 |
| 354 | | 77 |
| 373 | | 77 |
| 377 | | 77 |
| 385 | | 77 |

adjudicate individuals who have been alleged to have violated those statutory or regulatory provisions.

Q. Can you describe for us, please, the procedure as it existed in early 1998 as to how an individual could seek an advisory opinion.

A. Well, pursuant to both Commission Regulation 1024 and Rhode Island General Laws 36-14-11, any individual who is subject to the code of ethics or any individual who is a public employee or a public official, both on the state or municipal side, can request an advisory opinion by submitting in writing a request to the commission questioning the propriety of their prospective conduct under the code of ethics.

Advisory opinions only relate to future conduct, and the commission cannot opine as to past conduct. That would only be addressed in terms of an enforcement or complaint proceeding.

Advisory opinions issued by the commission must be approved by a majority of the members of the commission. We have nine members on the commission, so five affirmative votes are needed to issue an advisory opinion.

Once issued by the commission, unless an advisory opinion is amended or revoked by a majority vote of the commission, that advisory opinion is

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| * * * * * * * * * * * * * * * * | C.R. NO. 06-02T |
| UNITED STATES OF AMERICA * | |
| VS. * | OCTOBER 2, 2006<br>9:30 A.M. |
| ROBERT A. URCIUOLI, et al * | |
| * * * * * * * * * * * * * * * * | PROVIDENCE, RI |

BEFORE THE HONORABLE ERNEST C. TORRES,

CHIEF JUDGE

(Jury Trial)

APPEARANCES:

FOR THE GOVERNMENT: LUIS M. MATOS, AUSA
DULCE DONOVAN, AUSA
U.S. Attorney's Office
50 Kennedy Plaza
Providence, RI 02903

FOR THE DEFENDANT, URCIUOLI: MICHAEL J. CONNOLLY, ESQ.
Hinckley, Allen & Snyder, LLP
28 State Street
2nd Floor
Boston, MA 02109

RICHARD M. EGBERT, ESQ.
99 Summer Street
Suite 1800
Boston, MA 02110

also explain something else to you. This version of the contract, as you know, did not survive. Frances Driscoll told Jim McGuirk to take that portion out. She also told him to take out the portion that said continuum of care, and she explained to Jim McGuirk that the reason that was being taken out was because Peter Sangermano and John Celona had not signed on to the continuum of care theory. That's not what they were going to do.

But, ladies and gentlemen, even if this version had survived, if they engaged in the same conduct that the evidence has shown that they engaged, we'd still all be sitting here today, ladies and gentlemen, because that consulting agreement, likewise, did not disclose what John Celona was going to do because Jim McGuirk had no idea what John Celona was going to do.

Jim McGuirk testified about why he didn't ask about legislation, about rescue runs. And he told you something, ladies and gentlemen, that you should consider during this -- during your deliberations. He said, I didn't think about it. It didn't occur to me.

He was his friend. He was his golfing partner. It didn't occur to him to ask the question, ladies and gentlemen, because he hadn't been told anything about that. He had been told he's going to work on senior

was an individual who was in the hierarchy. And Robert Urciuoli was having trouble arranging meetings with Ron Battista. Sheila Capobianco told you that, Jim McGuirk, Kim O'Connell.

And Jim McGuirk and Kim O'Connell also told you that they cautioned against meeting with Ron Battista. Robert Urciuoli told Jim McGuirk, It's all set up. He told Kim O'Connell, Well, I'm going to do it anyway.

Kim O'Connell told you that she asked about whether it was going to be about negotiations. Well, let me tell you a little bit about this issue regarding advice of counsel, ladies and gentlemen. Ladies and gentlemen, you may have heard the term garbage in, garbage out. When these individuals were talking with their lawyers, they never told them what was going on.

So when they were talking to them and expressing their reservations, Steve Rosenbaum wasn't told by Peter Sangermano that John Celona was working on Alzheimer's legislation. He wasn't told that he was already getting paid in March of 1998 when Rosenbaum was holding out for the letter.

Jim McGuirk wasn't told about the rescue runs. Jim McGuirk wasn't told about the legislation. Jim McGuirk wasn't told when they were talking about the Ron Battista meeting that Robert Urciuoli had already

used John Celona with Lynne Urbani, with Tom Lynch, that he exchanged e-mails about getting cranked around.

Kim O'Connell wasn't told when she first revised the contract that John Celona had been working on those issues. She wasn't told that John Celona had previously worked on moratorium issues. When she talked to him in 2002, she wasn't told that John Celona had worked on issues regarding Blue Cross.

And none of them, after they would express their reservations, were told that John Celona was going to be setting up a meeting with United because Robert Urciuoli did not go to those individuals for their advice. They went to him because they thought he was about to get in trouble, ladies and gentlemen.

And he brushed them aside, and he wasn't fully truthful with them, ladies and gentlemen. He wasn't truthful at all because he didn't tell them what was going on. Garbage in, garbage out.

The advice of counsel, ladies and gentlemen, how about avoidance of counsel, ladies and gentlemen, because he knew what was going on.

Ladies and gentlemen, you saw that in regards to Blue Cross it paid off. He met with Battista. He got $3.6 million. There were other negotiations going on. Sure enough, ladies and gentlemen, there were other

political arena. She knew. When you look at the documents here and say what was Frances Driscoll thinking, you need John Celona in order to explain it?

You don't need anyone to explain to you what a document means when it says, I'm working to kill the legislation. You don't need a document when Frances Driscoll writes back, Work to subtly check out what's going on with the Cancer Council. That's her words, ladies and gentlemen, her direction.

When she says, Work to defeat Care New England/Lifespan merger, work to defeat it, her words, not John Celona's.

Look at all the evidence, ladies and gentlemen. Put it all together. Some documents were sent to some of the vice presidents. Look at those documents, ladies and gentlemen, the ones about killing legislation, the e-mails between Robert Urciuoli and John Celona about cranking people around, the e-mail from John Celona to Robert Urciuoli about raising the offer to United. Was that distributed to anyone, ladies and gentlemen?

And with regards to what was told, Robert Urciuoli worked for the hospital. It was everyone outside the hospital, ladies and gentlemen, that came through here and let you know wasn't told about what

was going on. The board minutes that are in evidence do not reflect that the board was told what was going on with John Celona.

Jim McGuirk testified. And when he testified, he told you that he didn't remember Robert Urciuoli telling the board that John Celona had been hired to carry out these things.

So when you look at that, what was disclosed, what was not, when you put all the evidence together, you'll see that what wasn't disclosed was the key, what he was doing, their legislative bidding.

The report that Frances Driscoll sent to the PR committee that Mr. Bristow told you about, FFFFF through MMMMM, OOOOO through TTTTT, I believe, not one of those reports disclosed what John Celona is doing on legislative issues.

And if you look at the activity reports, Mr. Bristow wants you to believe that when he was communicating about legislation, it was as a legislator, ladies and gentlemen. The activity reports outline everything, Village work, legislative work, everything. Why is it all on the activity reports?

And look at the activity reports. They corroborate what John Celona said to you. Initially he did a lot of work; and then as time went on, the amount

friend, surely his good friend wouldn't sell him out, ladies and gentlemen.

Jim McGuirk wouldn't take the fall for them, ladies and gentlemen. That's what they said to you. And, ladies and gentlemen, that's what Robert Urciuoli in meeting with Jim McGuirk was trying to set up.

And then they got all the lawyers together, get Jim McGuirk in a room and see if we can get the right answer. And Jim McGuirk, when he was before Magistrate Martin, testified and he testified before you and he testified in the grand jury under oath, ladies and gentlemen, and Jim McGuirk wouldn't take the fall for them.

The videotape. Look at that videotape. Mr. Egbert's correct. It's telling. What's telling about it is, in essence, it's a Tony Robbins infomercial puff piece.

But if you look at it, the relationship, what John Celona is doing for Robert Urciuoli is never disclosed. Richard Gamache is on the show. John Celona's asking Richard Gamache about Elmhurst Extended Care like he doesn't know anything about it. Meanwhile, he's got a consulting agreement that says he's a consultant to Elmhurst Extended Care.

Rick Gamache is sitting right next to Robert