IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COPY

| | |
|---|---|
| USA | CRIMINAL ACTION 06-00002T |
| VS. | JULY 19, 2006 |
| ROBERT A. URCIUOLI, ET AL | PROVIDENCE, RI |

HEARD BEFORE THE HONORABLE ERNEST C. TORRES

CHIEF JUDGE

(MOTIONS)

APPEARANCES:

| | |
|---|---|
| FOR THE GOVERNMENT: | DULCE DONOVAN, ATTY.<br>and LUIS MATOS, ESQ.<br>U.S. Attorney's Office<br>50 Kennedy Plaza<br>Providence, RI 02903<br>(401) 709-5000 |
| FOR THE DEFENDANT Robert A. Urciuoli: | MICHAEL J. CONNOLLY, ESQ.<br>Hinckley, Allen & Snyder, LLP<br>28 State Street<br>Boston, MA 02109<br>(617) 345-9000 |
| | RICHARD EGBERT, ESQ.<br>99 Summer Street<br>Suite 1800<br>Boston, MA 02110<br>(617) 737-8222 |
| FOR THE DEFENDANT Frances P. Driscoll: | KEVIN J. BRISTOW, ESQ.<br>505 Turks Head Building<br>Providence, RI 02903<br>(401) 521-2800 |

Mr. Sangermano if this statement turns out to be as incriminating as apparently counsel was concerned that it may be, but I can't on the basis on what's before me right now say that the statement clearly falls within the Bruton rule. It just doesn't seem to be.

As far as -- and we haven't yet addressed the question, and it's not really before the Court right now, but I haven't excluded the possibility, the Court might very well direct the Government to disclose the statement or to say whether it intends to offer the statement. That's not a question before the Court right now.

As far as Ms. Driscoll's motion to sever is concerned, again, putting aside the issue of possible antagonistic defenses, as far as it's based on the Saylor Report, the possibility that because Mr. Urciuoli is a defendant in the case that the Saylor Report or portions of it, everything other than the conclusion or finding by Judge Saylor would be excluded from evidence, that the argument is that since the balance of the report contains information that would be exculpatory of Ms. Driscoll, I reject that argument for a couple of reasons.

First of all, it's premised on what seemed to me to be rather dubious premises. The first premise is

that the balance of the Saylor Report would be admissible in the trial. And as I say, I think that's a rather dubious premise on which to rest the argument. But secondly, and perhaps even more to the point, is that I don't accept the notion that the balance of the report is exculpatory of Ms. Driscoll. The rest of the report deals with Judge Saylor's findings about other conduct allegedly engaged in by Mr. Urciuoli that would have been abuses of expense accounts and things of that nature.

I don't see how those findings are possibly exculpatory of Ms. Driscoll. I understand the argument that I think Mr. Bristow is making is that somehow this conveys to the jury the idea that this was a hard-hitting report, but it seems to me that falls far short of the mark if the notion is that it's somehow exculpating -- it reinforces what is argued to be that the conclusion that the conduct engaged in or the retention of Senator Celona was proper. And as another, I think, point that's relevant here is the point that Ms. Donovan made that the report wasn't issued until after many of the events that are the subject of the indictment occurred, not all, but certainly many.

That brings us to the question of antagonistic

this case, and, again, I accept Mr. Egbert's representation that he was interviewed at some length by the Government, I will again require the prosecutors to examine the agents' notes of their interviews with Mr. Celona and to interview the agents who conducted the interviews to determine whether there is any Brady material contained either within those notes or that was otherwise communicated to the agents.

And that review shall be completed and any exculpatory materials that are found in the course of that review, or may otherwise be found, shall be provided to the defendants within two weeks.

Otherwise, the common failing in the motion is that there's been nothing provided to the Court that provides, that furnishes any good reason to believe that the prosecutors have been amiss in not fully complying with their Brady obligations, and so the motions are otherwise denied.

That brings us to the next motion, which is Mr. Urciuoli's motion in limine regarding the Saylor Report.

MR. CONNOLLY: Your Honor, the Court has already had occasion to discuss the Saylor Report, but just to recap what it is, it was a, by virtue of what is disclosed in the report itself, it was a limited review

of allegations that were made by certain Roger Williams executives in the early to mid part of 1998 which resulted in a written report that was submitted to the Executive Committee of Roger Williams Board of Trustees.

So the first thing that can be said about that report is that it is hearsay. It is hearsay that, to my understanding of the Rules of Evidence, falls under no exception to the hearsay rule, and, therefore, it cannot be offered into evidence in this case for the truth of the matter asserted. And I think that's a problem with many of the arguments the Government asserts here.

By way of footnote, the reason that Urciuoli wants to have the one-page excerpt that pertains to John Celona and his contract admitted into evidence is not for purposes of offering it for the truth of the matter asserted. It's offered for the purposes of showing the effect on the listener, and that is it substantiates the fact that Mr. Urciuoli proceeded throughout his relationship with John Celona as a consultant to the Village at Elmhurst and Roger Williams affiliates in the good faith belief that there was nothing wrong with that engagement, because that is exactly what now Judge Saylor advised in written form

at the time, among other people.

But before we get into the specific arguments that have been raised by the Government, I think it's important for the Court to take into account in assessing what possible reliability there might be to the other allegations in the report which the Government is contending that it seeks to offer into evidence, what is the reliability of those allegations.

Your Honor, they come from two former executives of Roger Williams, who were antagonists, to say the least, of Mr. Urciuoli, then the CEO of the hospital, and who were essentially seeking to oust him and to take over leadership of the hospital.

Now, the Government has taken the position that it would be premature at this point for the Court to make any ruling as to the Saylor Report because the Court is not in a position to know or assess any testimony that might come from Mr. Urciuoli, which the Government contends is the only way that this report could come into evidence.

I submit that that is inaccurate for the reason that in that the defense seeks to offer the Celona excerpt for its impact on Mr. Urciuoli's state of mind, that can be brought into evidence by virtue of any number of witnesses who may have conferred with

Mr. Urciuoli at the time, other members of management at Roger Williams, members of the Board of Trustees, legal counsel who may have discussed with Mr. Urciuoli at the time the contents of the report and, specifically, the conclusions that pertain to Celona and that that would be a perfectly viable way of offering that excerpt into evidence at this time. So it is not premature for the Court to make the ruling.

The Government also contends that Judge Saylor's findings are not exculpatory. The position that the Government contends, or that they take in support of that argument is that Judge Saylor's opinion is limited to whether the contract between Celona and the Village at Elmhurst was legal or ethical, but it didn't look at the underlying conduct.

Well, your Honor, I submit that that's a fairly shallow argument in light of the fact that it is widely recognized that Judge Saylor is an accomplished attorney with a keen legal mind. And as of 1998, it was bedrock law in Rhode Island and across the United States that if a contract has an unlawful purpose to it, it is an illegal contract. That is established in the Rhode Island Supreme Court decision of <u>City of Warwick versus Boeng Corp</u>. It is also set forth in Williston, Corbin and the Restatement of Contracts at

Section 559(1)(A) and (2).

There can be no doubt, your Honor, that if Judge Saylor, who was at a minimum familiar with basic principles of contract law, concluded that the purpose of that contract was an unlawful objective that he would not have concluded it is neither illegal nor unethical, as he did conclude.

THE COURT: The Government in their memo, Mr. Connolly, says that -- Judge Saylor's charge was solely to determine whether Mr. Celona was actually performing services under the contract or whether this was just a phantom arrangement. What do you have to say about that?

MR. CONNOLLY: Your Honor, at the outset, one of the allegations, and there are a host of allegations that were levied by Dr. O'Dowd and Maureen McNamara, the former executive with the hospital. One of them was that this was a no-show job in return for a position that Celona had taken historically on legislation that impacted the hospital. That is one of the allegations. But it is an undisputed fact that there are other allegations that came from Dr. O'Dowd, including the fact that he was taking positions on legislation that favored the hospital before the General Assembly without disclosing his interest, his

economic tie to Roger Williams; that the true nature of the payment scheme between Roger Williams Medical Center and John Celona was not disclosed. And these are all allegations that go beyond the no-show job and that lie at the heart of the Government's case here. Moreover, and perhaps more importantly, Judge Saylor didn't conclude simply in his written report that "I have found that John Celona does not have a no-show job." He cast a far broader net than that, and somebody of his stature at a law firm with the prestige of Goodwin, Procter is not going to make a sweeping conclusion of law when they only intend to address a narrow fact.

What he concluded was that under the circumstances, in his words, the contract between Celona and the Village at Elmhurst was neither unlawful nor illegal.

Now, I submit that the Court should take note of the attachments to Attorney Bristow's submission on behalf of Defendant Driscoll, that include documents that were reviewed by Judge Saylor, and there's no dispute from the Government that these documents were reviewed by Judge Saylor when he conducted his review. They include documents showing that John Celona was actively involved in trying to increase the number of

ambulance runs from North Providence and East Providence to the hospital. And he was doing so at the request of Roger Williams.

There's also reference to a fax between Senator Celona on the one hand and Fran Driscoll, then a vice-president of the hospital, where Celona says that he's working to defeat a piece of legislation that he had previously been advised the hospital opposed.

There's no dispute that Judge Saylor had those documents and reviewed them. Now, if those are evidence, and those are allegations that are squarely in the indictment, if Judge Saylor, a former federal prosecutor and partner at Goodwin, Procter had concluded that there was even the hint of an honest services fraud violation based upon John Celona's conduct in that regard, is it conceivable he would have concluded in writing that the contract was neither illegal nor unethical?

Your Honor, he went beyond the higher standard of illegality to the far broader standard of finding no ethical obligation. And if that was the conclusion of Judge Saylor, what is a lay person in the position of Mr. Urciuoli, or Ms. Driscoll, or anybody else who read the report at the time to conclude when they know that they submitted documents to Goodwin, Procter

documenting the fact that Celona was involved in ambulance runs and consulting about legislation and was fully apprised of the payroll mechanism being used to compensate him, and Saylor concludes that there's nothing illegal or unethical about that. Are they to conclude that he must have gotten it wrong? Your Honor, that's absurd. The only conclusion --

THE COURT: Mr. Connolly, I'm getting a little bit confused here. I understand and understood your argument to be in support of a motion to exclude from evidence the balance of the Saylor Report. Are you now arguing also to have the Court admit the conclusion portion?

MR. CONNOLLY: Your Honor, I was perhaps getting carried away with the point that the Government takes the position that it's not exculpatory, that the Celona excerpt is not exculpatory.

Moving on to the other arguments raised by the Government, they contend that the other 86 pages of this report are, in fact, relevant to the allegations in this case. It's a bedrock principle of evidentiary law under the Federal Rules found in 404 and other places that propensity evidence is inadmissible.

Now, what the Government articulates in its brief as a reason for finding the travel and expenses

to be relevant is they state that based upon the fact that the board did not fire Mr. Urciuoli despite Saylor's findings, that could have emboldened Mr. Urciuoli to commit additional acts of fraud. Your Honor, that is a clear-cut acknowledgment on the part of the Government that the purpose they seek to achieve by offering the rest of the report is propensity evidence.

The Government also contends that the remainder of the report should come in under the Rule of Completeness. The Rule of Completeness, as this Court is well aware, is designed to prevent statements from being offered into evidence out of context. Your Honor, there's no contextual significance to the conclusions regarding Saylor that are provided by the various findings, which are all over the map, in regard to all of the other allegations, in addition to the fact the report remains hearsay without any exception.

The final two points that the Government raises are under two rules of the Federal Rules of Evidence, 608(b) and 404(b). Under 608, the Government contends that the Court, in its discretion, should allow inquiry into the specific allegations that are set forth in the other 86 pages.

Your Honor, that is an act that is clearly

vested in the discretion of the trial court, but the Court under First Circuit law, is to look at various factors, including the reliability of the statements, the similarity of the conduct at issue to the other allegations, the remoteness in time, and the likelihood that the prior event happened.

Your Honor, looking at each one of those factors, these are eight-year-old allegations. They're being made by people who have a vendetta against Mr. Urciuoli. The statements themselves are the result of an incomplete investigation. And if they are injected into this case, which is already a factually and legally complex case, I submit the Court will be inviting a whole world of complexity and confusion, which is not going to add to the jury's understanding of whether or not Mr. Urciuoli, Ms. Driscoll or Mr. Sangermano are guilty or innocent in this case, and the Court should clearly exercise its discretion against allowing it under that rule. And I submit the Court should do so at this time because it's such a clear evidentiary call, and it's going to have a heavy bearing on how the defendants formulate their entire presentation at trial, starting with opening statements, running through the cross-examination of all the Government's witnesses, which would be long

before we get to any 608 determination.

Lastly, your Honor, I would just say that the only argument that was made under Rule 404(b) was that the other 86 pages bear upon Mr. Urciuoli's motive contending that Mr. Urciuoli may have hired Celona to act as an advocate to protect the hospital's interests and protect Mr. Urciuoli's ability to continue defrauding the hospital of travel and entertainment expenses is an argument that seems to say that we should be allowed to bring those 86 pages in to show that Urciuoli intended to continue doing it during the period of this conspiracy. Doing it is uncharged conduct. That's a circuitous argument, your Honor, that I submit should have no merit with the Court.

Your Honor, we think the Court is in a position at this time to make a ruling not only as to the inadmissibility of the 86 pages that don't relate to John Celona, but also to enter an order prohibiting the Government from making any reference to those allegations at any point during the trial including during the cross-examination of Mr. Urciuoli, if he were to take the stand during the trial. Thank you.

THE COURT: All right. Ms. Donovan?

MS. DONOVAN: Your Honor, all we're saying is that, if the defendants want to introduce a selected

portion of the report, that we necessarily must be permitted some reasonable amount of leeway in challenging the assertions that they are making in relation to Mr. Urciuoli's reliance on the report itself. Whether the report comes in through Mr. Urciuoli taking the stand and testifying that he read it and relied on it, or whether the report comes in, the limited portion that they want to introduce, whether that comes in through the testimony of other people who may have had conversations with Mr. Urciuoli, we need to be permitted a certain amount of opportunity to challenge his assertion that he relied on it, whether in fact that --

THE COURT: How does the balance of the report help you do that?

MS. DONOVAN: Let me also clarify that we don't understand the defendants to be asking that the mere remainder of the report itself, the physical remainder of the report, but that they are also asking the Court to prohibit us from asking anything about the report's creation, Mr. Urciuoli's participation in the reviews with Judge Saylor. For example --

THE COURT: Let's clear that up right now. Is that what you're asking, Mr. Connolly?

MR. CONNOLLY: Any evidence offered at the trial

that relates to the other 86 pages in this report, we intend to object to.

THE COURT: Ms. Donovan has expressed a concern that you're seeking to include in this prohibition any questions that she might ask on cross-examination about whether he was interviewed by Judge Saylor and that type of thing. Are you seeking to exclude that as well?

MR. CONNOLLY: We seek to exclude any such questioning to the extent that it veers beyond the Celona issue, yes.

THE COURT: All right. Continue, Ms. Donovan.

MS. DONOVAN: Your Honor, an example of the way, in our opinion, the remainder of the report is relevant to an assessment of whether Mr. Urciuoli's statement of proposed testimony that he viewed that portion of the report, he viewed it as highly relevant and he relied on it in his further actions with Mr. Celona is this, in the memo that they have submitted to the Court on this issue they make a distinction. The portion on Celona, legitimate. Written by an esteemed member of the Bar, now a judge. The findings in that are worthy of the utmost credence, and, therefore, I relied on them and I took them to heart, and I felt that everything that I was doing with respect to Mr. Celona

was appropriate.

The remaining eighty some odd pages, totally bogus. Despite the fact same esteemed member of the Bar, now a judge, former federal prosecutor. We certainly should be allowed to, at least, cast doubt on the credibility of Mr. Urciuoli's claim that he found the Celona portion at the time to be extremely relevant by highlighting the fact that he, for some reason, thinks that the remaining pages were worthy of no attention or regard whatsoever.

We have argued that we should be permitted -- we've argued before the Court previously when we were addressing this issue with Ms. Driscoll, first and foremost, that the report itself, the Celona section, we don't believe is exculpatory, and certainly we should be permitted to, at least, present some evidence, certain lines of questioning in order to be able to expose and flesh out arguments on that point.

This issue of whether, for instance, the language in the report is significant, that Judge Saylor -- the scope of review was limited to whether the contract itself was legal or whether it was, in fact, in place as a result of Mr. Celona's prior assistance to the hospital and he had been given a no-show job; the fact that that's what the

investigation was limited to, whether Mr. Urciuoli knew that is certainly relevant to his testimony, what he might say about the sort of wide-ranging interpretation that he took away from that limited section of the report.

THE COURT: How does that bear on the admissibility of the balance of the report?

MS. DONOVAN: Well, again, and I may have read this, I may have read the motion more expansively, but I do understand or I am supposing that what they are asking that we are not allowed to ask, that their asking the Court that we be prohibited from presenting evidence and asking questions that go to the creation of the report itself; the limitations that were placed on Judge Saylor; the fact, for instance, that the report that he was charged with investigating many, many, allegations against Mr. Urciuoli in a very limited time frame certainly is relevant to whether he had, arguably, sufficient time to address all of the issues that the defendants say are addressed in the Celona portion of the report.

One of the things that this highlights, and we've alluded to, is that it's very difficult sitting here today without hearing the testimony, without understanding the interpretations that they are going

to urge Mr. Urciuoli took away from reading the report, how the remainder of the report, how evidence relating to its creation, how evidence relating to Mr. Urciuoli's own conduct in connection with Judge Saylor's investigation into the allegations, how all of that is relevant.

THE COURT: How do you respond to Mr. Connolly's argument that this is hearsay?

MS. DONOVAN: I agree that it's hearsay. I absolutely agree that the report is hearsay. There's no question about that. But, for instance, that doesn't prohibit us under the Rule 608(b) from cross-examining him regarding allegations or acts either contained in the report, and I mean asking him about the underlying acts, not the conclusion that the report reaches, but certainly --

THE COURT: You agree then that the balance of the report would not be admissible except for purposes of possibly cross-examining Mr. Urciuoli, is that what you're saying?

MS. DONOVAN: And I also do think we have an argument with respect to 404(b). Again, I don't know that that necessarily means that the report itself, the conclusions reached, but certainly some of the acts which are alleged, I believe we certainly might be able

to present some of the underlying evidence relating to Mr. Urciuoli's own admissions regarding his bad judgment in submitting a certain amount of false expenditures to the hospital. I certainly think that we should be able to ask him about and possibly present evidence on the question of whether he was truthful with Judge Saylor with respect to one particular trip in particular, Mr. Urciuoli's trip to Scottsdale, Arizona. We've highlighted that in our memo.

THE COURT: Are you finished?

MS. DONOVAN: Certainly, your Honor, unless you have any other questions.

THE COURT: No, I don't.

The question before the Court is whether the, what I'll call the balance of the Saylor Report, that is to say everything other than the conclusion that he reached, and I'm reluctant to try to summarize it because I suppose that's a matter that's disputed as to exactly what he's concluding, but everything other than the conclusion should be excluded, and it seems to me pretty clear that at least the Government should be prohibited from introducing the balance of the report as part of its case-in-chief for a number of reasons. I don't know where to begin here.

First of all, it's hearsay, as Ms. Donovan has

just conceded. It's pure hearsay. It cannot be offered certainly to prove the truth of the matters asserted in the report, that is to say whether Mr. Urciuoli abused his expense account or any of the other things that the report finds.

Second, it doesn't have much probative value, if any. There are no dispositive determinations. It reaches some conclusions about Mr. Urciuoli's conduct with respect to expense accounts. There's no action, as I understand it, taken against Mr. Urciuoli, and he disputes the findings.

Third, this also appears to me to be propensity evidence that would be prohibited by Rule 404. And it does not, despite the Government's valiant attempt to stretch 404(b) to cover this, I think that is exactly that, a stretch to say that this evidence is relevant to a common scheme or plan or whatever.

The Government draws an analogy between abusing the trust placed in one by their employer by misusing expense accounts and causing a public official to abuse the trust placed in a public official. I think that stretches 404(b) beyond what it is intended to cover.

And, if that weren't enough, it seems to me that introducing this evidence would be unfairly prejudicial to Mr. Urciuoli, the balance of the report does not

deal with any conduct having anything to do with this case. It's an entirely separate series of acts. It has no relationship to what this indictment charges him with. It would be highly prejudicial. It has the potential to confuse the jury as to what the issues are in this case, whether Mr. Urciuoli is being charged with abusing his expense account or whether he's being charged with trying to -- conspiring to induce a public official to breach his public trust.

And finally, this obviously would lead to an entirely separate trial. I was going to say a mini-trial, but I don't really think there would be much of a mini-trial. We'd end up trying all of the alleged expense account abuses and everything else charged in the report, because if that report comes in, Mr. Urciuoli is entitled to present evidence to rebut or explain it, and we would find ourselves sinking into a bottomless pit here, and the indictment would become just a side issue in the trial.

So for all of those reasons -- I should also mention I think the Government in their memo said something about the Rule of Completeness. I don't see how the Rule of Completeness applies here. The Rule of Completeness is designed to ensure that if a portion of a document is to be introduced into evidence, that all

parts of the document that might be necessary to understand the significance of the part that's introduced also come in. You don't want to mislead a finder of fact by showing them only one part of a document that's not truly representative of what it purports to be. That's not the case here, because we're talking about two separate things. We're talking about the charges against Mr. Urciuoli in this case as opposed to the charges, if you will, that he abused his expense account at Roger Williams Medical Center.

So for all those reasons, I will grant the motion in limine to the extent that the Government may not present the balance of the Saylor Report as part of its case-in-chief, nor as part of its case-in-chief may it refer to what is in the balance of the report, that is to say the allegations about abuse of expense account.

Now, I am not, by granting the motion to that extent, passing any judgment on whether the conclusion portion is admissible. That remains to be seen. There's a lot of evidence that can bear on that determination, such as what was the nature and purpose of the Saylor Report if, as the Government has suggested in its brief, the Saylor Report was simply, insofar as the Celona agreement was concerned, was

simply to determine whether, in fact, Mr. Celona was providing some services to the Village, it may not be relevant, Judge Saylor's conclusions may not be relevant if that's the question he was looking at.

Also, another factor here would be, as Ms. Donovan said, whether Mr. Urciuoli testifies that he read and relied on Judge Saylor's conclusion, because if he never read the report, then, obviously, it could not have any impact on his intent, knowledge or state of mind, or if he didn't read it until long after the acts referred to in the indictment were committed, it wouldn't be relevant.

So I don't pass any judgment on whether the conclusion part is admissible, nor do I preclude, at this point anyway, the Government from possibly using the report for purposes of impeachment if Mr. Urciuoli testifies. I'm not familiar enough with the facts in this case to know whether he may have lied in what he told Judge Saylor and whether that may come in as impeachment evidence. And I'm not barring the Government, at least at this point, or at any point for that matter, if reference is made to the Saylor Report, from asking questions about how the report was prepared. And I think I need to explain that. When I say how the report was prepared, as I've already

stated, it would be very relevant for the finder of fact to know what Judge Saylor was investigating and what he relied on in reaching the conclusion that there was no violation regarding the Celona agreement.

So the Government certainly is entitled to inquire into that. What the Government would not be entitled to inquire into, unless, as I say, there's some other basis for allowing it such as impeachment, what the Government would not be entitled to refer to is the alleged expense account abuses. That is something separate and distinct from the manner in which the report was prepared or the subject of Judge Saylor's opinion.

So as I said, the motion in limine is granted to the extent I have said, and I do not reach the questions that I have just described.

That brings us to the final motion, which is Mr. Urciuoli's motion to postpone the trial. Mr. Egbert?

MR. EGBERT: Thank you. Your Honor, I think you know the history of Mr. Urciuoli's search for lawyers, his retention of lawyers, loss of Judge Flanders, basically, because of his nomination and the like. I won't go into much --

THE COURT: That's one of the questions I was